IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

McNEIL NUTRITIONALS, LLC,  )
                     Plaintiff,  )  Civil Action No. 04-2291 (JP)
                     v.  )
MERISANT COMPANY,  )
                     Defendant.  )

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff McNeil Nutritionals, LLC, formerly a division of McNeil-PPC, Inc. (collectively "McNeil"), for its Complaint, respectfully alleges as follows:

**Introduction**

1. This is an action for declaratory judgment that McNeil's packaging and advertising for its best selling no-calorie sweetener Splenda® is neither "false" nor "misleading" to consumers, and does not violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125 (a).

2. In July 2004, this Court (Hon. Jay A. Garcia-Gregory) entered a preliminary injunction, preventing defendant Merisant Company ("Merisant") from selling a no-calorie sweetener in packaging confusingly similar to that of Splenda. In recent weeks, Merisant has retaliated by instituting a sweeping challenge to the advertising and marketing claims that McNeil makes for Splenda, on the Splenda package and elsewhere. Merisant's challenge, which was filed in a non-judicial forum, alleges that promotional claims that have been made for the Splenda brand since its inception – including the claim that Splenda is "made from sugar, so it tastes like sugar" –are literally false and misleading to consumers. These allegations are

unfounded. Splenda is, in fact, made from sugar, and derives its sugar-like taste from the remarkable structural similarity between sugar (sucrose) and sucralose, the sweetening ingredient in Splenda.

3. Merisant's challenge was filed in a voluntary forum that provides for accelerated review of advertising and promotional claims, with no opportunity for discovery or cross-examination of witnesses. Equitable defenses – such as Merisant's own adjudicated misconduct and unconscionable *four-year delay* in bringing its challenge – are not recognized.

4. McNeil is fully prepared to defend the truthfulness of its advertising claims for Splenda. However, especially in view of Merisant's lengthy delay, McNeil is unwilling to forego the procedural and substantive protections accorded to parties in Lanham Act litigation, and has decided to decline to participate in the challenge proceeding instituted by Merisant.

5. McNeil believes that Merisant is committed to pursuing its allegations, however, and that, in view of McNeil's decision, Merisant will promptly commence suit against McNeil to obtain the ruling that it seeks. McNeil therefore invokes the jurisdiction of this Court and seeks a declaration that its advertising and packaging claims for Splenda (i) are truthful, (ii) do not mislead consumers, and (iii) do not violate the Lanham Act.

### The Parties

6. Plaintiff McNeil Nutritionals, LLC is a Delaware limited liability company with its principal place of business in Fort Washington, Pennsylvania. McNeil Nutritionals, LLC was formed in June 2004. At that time, McNeil-PPC, Inc. transferred all assets relating to the Splenda business from its McNeil Nutritionals division to McNeil

Nutritionals, LLC. McNeil Nutritionals, LLC and McNeil-PPC, Inc. are collectively referred to herein as "McNeil."

7. McNeil is engaged in the business of marketing innovative nutritional products, including the no-calorie sweetener sucralose, which it markets under the brand name Splenda. McNeil is a wholly-owned subsidiary of Johnson & Johnson.

8. Upon information and belief, defendant Merisant is a Delaware corporation with offices in Illinois and Missouri. Merisant is a manufacturer and worldwide leader in sales of no-calorie sweeteners.

## Jurisdiction and Venue

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 1338(b) and 2201. As set forth in greater detail below, an actual controversy exists between McNeil and Merisant regarding the literal truthfulness and messages conveyed by McNeil's advertising and packaging for Splenda. Merisant has filed an extensive challenge to this advertising in a non-judicial forum, alleging that McNeil's claims are false and misleading to consumers. In fact, the claims are true, and consumers are not misled by any of McNeil's packaging and advertising.

10. Venue in this District is proper pursuant to 28 U.S.C. §§ 1391(b) and (c), in that defendant resides in this District and is subject to personal jurisdiction in this District. In addition, a substantial part of the events giving rise to the claims asserted herein occurred in this District, in that (a) the subject advertising and packaging has been widely disseminated in this District, and (b) the litigation between the parties that preceded this action took place (and continues to take place) in this District.

3

## Facts

11. This case is an outgrowth of another action pending in this Court between the same parties. On February 5, 2004, McNeil filed a Complaint and Motion for a Preliminary Injunction to prevent Merisant from selling in Puerto Rico a no-calorie sweetener in packaging confusingly similar to that of Splenda. An evidentiary hearing on McNeil's motion was held on February 26, February 27 and March 2, 2004, and arguments of counsel were heard on March 3, 2004. At the Court's request, both parties filed extensive post-hearing Proposed Findings of Fact and Conclusions of Law.

12. On July 29, 2004, this Court entered its Memorandum, Findings of Fact and Conclusions of Law Granting Preliminary Injunctive Relief. A copy of this opinion (hereinafter the "July 29 Opinion") is attached hereto as Exhibit A.

13. The same day, the Court entered an Order for Preliminary Injunction that restrained Merisant from "manufacturing, distributing, importing, advertising, marketing or selling a no-calorie sweetener in packaging that is confusingly similar in appearance to any packaging used by plaintiffs for their Splenda® product, including, without limitation, the packaging used for Merisant's new Same® product depicted in Exhibit C to the Complaint ('Yellow Same')." The Order further stated that "Merisant shall immediately recall from distribution all Yellow Same products, and shall remove or cause the removal of all Yellow Same products from store shelves in Puerto Rico." A copy of this Order is attached hereto as Exhibit B.

14. Many of the background facts pertinent to this action have already been established and are set forth in the Court's July 29 Opinion.

*The Market for No-Calorie Sweeteners*

15. Each year, American consumers spend more than $500 million on artificial sweeteners – products that take the place of sugar but have no calories. The market for no-calorie sweeteners is comprised almost entirely of products that contain one of three sweetening ingredients: saccharin, aspartame and sucralose. Exh. A (July 29 Opinion), ¶ 1.

16. The first artificial sweetener to be sold in the United States was saccharin, which was introduced in roughly 1957 and is the ingredient found in Sweet'N Low®, the leading saccharin brand. Exh. A, ¶ 2.

17. In 1981 an alternative to saccharin – aspartame – was approved by the U.S. Food and Drug Administration ("FDA") for sale in the United States. Aspartame is the main sweetening ingredient found in a variety of no-calorie sweetener products, including Equal®, the best selling aspartame brand. Exh. A, ¶ 3.

18. McNeil sells a third type of no-calorie sweetener called sucralose. Sucralose has a different taste from aspartame. Sucralose is also more heat resistant than aspartame, which loses its taste at high temperatures, so sucralose (and not aspartame) can be used for cooking and baking. Splenda is marketed to consumers not only in single-serving packets but also in granular form. Exh. A, ¶ 4.

19. Splenda is the first and only no-calorie sweetener made from sucralose. First introduced in Canada in 1991, Splenda is currently available in a dozen countries around the world. McNeil first offered Splenda for sale in the United States via the Internet in 1999. In September 2000, McNeil launched Splenda in retail stores in the United States. The retail launch of Splenda in Puerto Rico occurred in November 2000. Exh. A, ¶ 5.

20. Splenda has been a noteworthy success. Within one year of its introduction, Splenda captured nearly 14 percent of the U.S. dollar market for no-calorie

sweeteners. By January 2004, Splenda's dollar share of the U.S. market had risen to 45.2 percent – more than Equal and Sweet'N Low combined. Annual sales of Splenda have soared from about $32 million in 2001 to more than $200 million in 2003. Exh. A, ¶ 6.

21. In Puerto Rico, Splenda currently enjoys roughly a 35% market share and is the retail market leader based on dollar sales. Annual sales of Splenda have risen from about $1.7 million in 2001 to almost $5 million in 2003, and the number of cases sold has increased from roughly 30,000 to more than 200,000 over the same time period. Exh. A, ¶ 7.

***Packaging and Advertising for Splenda***

22. Since its U.S. market introduction, Splenda has been sold in now-familiar yellow packaging that distinguishes Splenda from its competitors and supplies consumers with basic information about the product.

23. For example, on all Splenda products, "[t]he trade name 'Splenda' appears within a white, oval-shaped 'cloud,' and is printed in blue, cursive-like letters that dim from light to dark blue." Exh. A, ¶ 10. Directly beneath the trade name, within the referenced "cloud," is a statement that Splenda is a "No Calorie Sweetener."

24. The packaging for the Splenda granular product also states that the product "Measures Cup for Cup Like Sugar" and is "Great for Cooking & Baking." A copy of the packaging for Splenda in granular form is attached as Exhibit C. A copy of the exterior packaging for Splenda packets, which was the primary focus of the Court's July 29 Opinion, is attached as Exhibit D.

25. Another prominent feature of the Splenda trade dress, which was noted in the Court's July 29 Opinion, is a circular logo that appears in the bottom left corner of the front panel of all Splenda products. The logo reads, "made from sugar, tastes like sugar." Exh. A. ¶ 10; *see* Exhs. C and D.

1123050v1

26. Consistent with this logo, much of the advertising for Splenda that has been disseminated since the product's introduction has included the slogan, "made from sugar, so it tastes like sugar." McNeil has expended substantial sums to educate consumers that Splenda is made from sugar, and derives its sugar-like taste from its sugar origin.

*The Made From Sugar/Tastes Like Sugar Logo and Related Advertising Claims Are True*

27. Sucralose, the sweetening ingredient in Splenda, is made by a patented process that starts with sucrose or table sugar. Three hydrogen-oxygen groups on the sugar (sucrose) molecule are replaced by three tightly (covalently) bound chlorine atoms. The following diagram shows the similarity in chemical structure between sucrose (sugar) and sucralose (Splenda):



Figure 1 - Structures of sucrose and sucralose.

28. Unlike sucrose, sucralose is not metabolized (broken down) by the body, so it has no calories. In addition, the body does not recognize sucralose as a carbohydrate.

29. The taste profile of sucralose has been extensively studied by independent research organizations. Analyses show that sucralose and sugar have very similar flavor profiles. Study results indicate that sucralose tastes like sugar and has no unpleasant aftertaste. The following figure summarizes the research comparing the taste of sugar with that of sucralose (Splenda):



Figure 2 - Taste profiles of sugar and SPLENDA® Brand Sweetener (sucralose)

30. The fact that sucrose and sucralose are closely correlated, both in terms of chemical structure and taste, is no mere coincidence. Scientists believe that sucralose retains the stereochemical arrangement of the portion of the sucrose molecule responsible for its sweet taste. Based upon published research, scientists have concluded that the taste qualities of sucralose stem from its parent molecule, sucrose. In other words, there is a direct connection between the fact that Splenda is "made from sugar" and the fact that Splenda "tastes like sugar." In short, the advertising slogan that Splenda is "made from sugar, so it tastes like sugar" is true.

***Merisant's NAD Challenge***

31. On or about October 22, 2004, Merisant filed a lengthy challenge to McNeil's advertising and packaging for Splenda with the National Advertising Division of the Council of Better Business Bureaus ("NAD"). Founded in 1971, NAD is an industry self-regulatory body whose "mission is to review national advertising for truthfulness and accuracy and foster public confidence in the credibility of advertising." *See* NAD website at www.nadreview.org.

32. NAD describes itself as a "low-cost alternative to litigation" that "adheres to a strict timetable, providing a written decision within 60 days" after a challenge is commenced. *See id.* A copy of NAD's Rules and Procedures is attached hereto as Exhibit E.

33. NAD rules allow for no discovery, no evidentiary hearing and no confrontation or cross-examination of opposing witnesses. Rather, the advertiser is invited to submit a written statement "that provides substantiation for any advertising claims or representations challenged" within 15 business days after receipt of the complaint. Exh. E, NAD Rule 2.5. Thereafter, the challenger may submit, within 10 business days, a written reply, and the advertiser may submit a "final reply" within 10 business days of the challenger's reply (if any). *Id.,* NAD Rules 2.6 and 2.7. NAD may, in its discretion, request additional information and/or meet with the parties on an ex parte basis. *Id.,* NAD Rule 2.8. NAD must render a decision within 15 days of receipt of the last document authorized to be filed under its rules. *Id.,* NAD Rule 2.9.

34. Participation in NAD proceedings is voluntary. However, once an advertiser agrees to subject its claims to NAD review, there is a strong incentive for the advertiser to adhere to NAD's ruling. Failure to comply results in a referral to "the appropriate government agency" – typically the Federal Trade Commission. *See id.,* NAD Rule 4.1.B.

35. Equitable defenses generally available to litigants in court, such as laches and unclean hands, are not recognized in NAD proceedings.

36. Merisant's NAD challenge to Splenda packaging and advertising is approximately four inches thick. It consists of:

- A 13-page, single-spaced letter from outside counsel summarizing Merisant's arguments;

9

- A 10-page, single-spaced "Scientific Analysis of Claim that Splenda Is "Made from Sugar So It Tastes Like Sugar," signed by a professor of biochemistry and molecular biology and citing 31 published references;

- A survey of the messages allegedly communicated by the packaging for Splenda packets, among 236 respondents;

- A survey of the messages allegedly communicated by the packaging for the Splenda granular product, among 235 respondents; and

- Numerous additional exhibits, including advertisements, articles, website printouts and United States Patents.

The submission attacks promotional claims that have appeared on all Splenda packaging, and in substantially all Splenda advertising, since the product's inception. The claims challenged include the circular "made from sugar, tastes like sugar" logo on the front panel of the Splenda box, as well as the advertising slogan that Splenda is "made from sugar, so it tastes like sugar."

37. According to Merisant, these claims are "literally false" because, *inter alia*, Splenda is made from sucralose, not from sugar, and because there allegedly is no causal connection between the fact that sucralose is made from sugar and has a sugar-like taste. In addition, Merisant argues that the McNeil's packaging and advertising for Splenda are "misleading" because, even if they are literally true, they falsely imply that (a) Splenda contains real sugar, and (b) Splenda is a "natural" product.

38. By letter dated October 28, 2004, NAD transmitted Merisant's challenge to McNeil, and requested that McNeil file its substantive response to Merisant's evidence and arguments by November 19, 2004. NAD's letter requests that McNeil "provide substantiation for your claims and address *all* of the issues and concerns raised by the challenger" (emphasis in original). A copy of NAD's letter to McNeil is attached hereto as Exhibit F.

39. McNeil frequently participates in NAD proceedings, both as an advertiser and a challenger, and is a strong supporter of the NAD self-regulatory process. Typically, a

10

1123050v1

NAD challenge concerns a new claim for a product that recently appeared in a television commercial or print advertisement. If NAD finds the claim to be unsubstantiated, the advertiser generally can revise or discontinue the claim without major repercussions for its business.

40.  Here, Merisant's NAD challenge is directed at advertising and marketing claims that have appeared on the Splenda package and in other promotional materials since its introduction. Merisant has been aware of these claims at least since Splenda was first launched in the United States in 2000. Similar claims have been made in other countries where the parties have competed for more than a decade. Yet Merisant waited until October 2004 to bring any challenge to these claims. Only after McNeil spent years popularizing the Splenda "made from sugar, tastes like sugar" positioning did Merisant seek any ruling – let alone an expeditious one – that these claims are false or misleading. An adverse ruling at this late juncture could require McNeil promptly to alter its longstanding packaging and advertising claims, and thereby have a material adverse impact on McNeil's Splenda franchise.

41.  Particularly in view of the apparent retaliatory nature of Merisant's action – which comes on the heels of McNeil's procurement of a preliminary injunction and product recall against Merisant in this Court – McNeil believes that Merisant's challenge is a misuse of the NAD process. For these reasons, McNeil has chosen not to subject its Splenda packaging and promotional claims to voluntary NAD review.

***Request for Declaratory Judgment***

42.  McNeil's decision to decline to participate in Merisant's NAD challenge does not mean that McNeil's advertising will go untested or unchallenged in any forum. As is evident from the form and content of the materials it filed with NAD, Merisant has invested substantial time and resources in the preparation of its case. Among other things, it has retained

scientific and market research experts, and has commissioned consumer research of the type typically used to support a cause of action in court for false advertising under the Lanham Act.

43. Indeed, Merisant's challenge letter reads much like a Lanham Act brief: it cites numerous federal court Lanham Act cases; it attaches the same types of scientific and market research evidence typically offered by a party in Lanham Act litigation; and it argues the same points as would a plaintiff in a Lanham Act case. Merisant is represented in its NAD challenge by experienced Lanham Act counsel from Kirkland & Ellis LLP.

44. Based upon the totality of circumstances, McNeil believes that Merisant plans to commence an action against McNeil for false advertising under Section 43(a) of the Lanham Act if McNeil does not voluntarily submit to NAD review of its claims, which McNeil has decided not to do.

### First Claim For Relief – Declaratory Judgment

45. McNeil repeats, realleges and incorporates the allegations of paragraphs 1 through 44 above as if fully set forth herein.

46. An actual controversy has arisen and now exists between McNeil, on the one hand, and Merisant, on the other hand, with respect to the literal truth of McNeil's advertising and packaging for Splenda, and with respect to whether certain messages are implied by McNeil's advertising, as set forth above. McNeil is informed and believes and on such information and belief alleges that Merisant contends that McNeil's advertising for Splenda is false and misleading and thereby violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). McNeil contends that this advertising is neither false nor misleading, and does not violate the Lanham Act.

47. McNeil, therefore, respectfully seeks judgment as hereinafter set forth.

1123050v1

WHEREFORE, McNeil prays for relief as follows:

(1) For a declaration that McNeil's advertising for Splenda, including the "Made from Sugar, Tastes Like Sugar" logo on all Splenda packaging and the "made from sugar so it tastes like sugar" advertising slogan, is neither false nor misleading within the meaning of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

(2) For a declaration that this case is "exceptional" under 15 U.S.C. § 1117 and an award of attorneys' fees and costs; and

(3) For an award of such other and further relief as this Court deems just and proper.

In San Juan, Puerto Rico, this 18th day of November, 2004.

RESPECTFULLY SUBMITTED.

> **PATTERSON, BELKNAP,**
> **WEBB & TYLER LLP**
> Steven A. Zalesin
> Richard J. McCormick
> Jennifer L. Higgins
> 1133 Avenue of the Americas
> New York, New York 10036-6710
> Tel.: (212) 336-2000
> -and-
> **McCONNELL VALDÉS**
> P.O. Box 364225
> San Juan, Puerto Rico 00936-4225
> Telephone (787) 250-5657
> Fax (787) 759-2798
> dmp@mcvpr.com
>
> By: _____
> Dora M. Peñagarícano
> USDC-PR No. 203202

Of Counsel:
  Donna Malin, Esq.
  Johnson & Johnson