# THE ADVERTISING INDUSTRY'S PROCESS OF VOLUNTARY SELF-REGULATION

Policies and Procedures by
**The National Advertising Review Council
(NARC)**

Administered by
**The Council of Better Business Bureaus
(CBBB)**

*Effective*

August 1, 2004

Procedures for:
**The National Advertising Division
(NAD)**

**The Children's Advertising Review Unit
(CARU)**

**The National Advertising Review Board
(NARB)**




NARC PARTNERS

   

**1.1 Definitions**

**A.** The term "national advertising" shall include any paid commercial message, in any medium (including labeling), if it has the purpose of inducing a sale or other commercial transaction or persuading the audience of the value or usefulness of a company, product or service; if it is disseminated nationally or to a substantial portion of the United States, or is test market advertising prepared for national campaigns; and if the content is controlled by the advertiser.

**B.** The term "advertiser" shall mean any person or other legal entity that engages in "national advertising."

**C.** The term "advertising agency" shall mean any organization engaged in the creation and/or placement of "national advertising."

**D.** The term "public or non-industry member" shall mean any person who has a reputation for achievements in the public interest.

**2.1 NAD/CARU**

*A. Function and Policies*

The National Advertising Division of the Council of Better Business Bureaus (hereinafter NAD), and the Children's Advertising Review Unit (CARU), shall be responsible for receiving or initiating, evaluating, investigating, analyzing (in conjunction with outside experts, if warranted, and upon notice to the parties), and holding negotiations with an advertiser, and resolving complaints or questions from any source involving the truth or accuracy of national advertising, or consistency with CARU's Self-Regulatory Guidelines for Children's Advertising.

*B. Advertising Monitoring*

NAD and CARU are charged with independent responsibility for monitoring and reviewing national advertising for truthfulness, accuracy and, in the case of CARU, consistency with CARU's Self-Regulatory Guidelines for Children's Advertising.

*C. Case Reports*

The Council of Better Business Bureaus shall publish at least ten times each year the Case Reports, which will include the final case decisions of NAD, CARU and NARB, and summaries of any other matters concluded since the previous issue. Each final NAD, CARU and NARB case decision shall identify the advertiser, challenger, advertising agency, product or service, and subject matter reviewed. It shall also include a summary of each party's position, NAD, CARU or the NARB's decision and its rationale, and a concise Advertiser's Statement, if any. (See Section 2.9).CARU shall publish in the Case Reports a summary of CARU's actions, other than formal cases, during the preceding month. Included in this Activity Report, shall be the following:

   **(i)** Inquiries—summaries of informal inquiries under CARU's Expedited Procedures (see Section 2.12 below);
   **(ii)** Pre-Screening/Submissions—summaries of story-boards or videotapes of proposed advertising submitted to CARU for prescreening; and
   **(iii)** Commentaries—information, either news or policy, which CARU believes is appropriate to disseminate to its readership.

*D. Confidentiality of NAD/CARU Proceedings*

It is the policy of the National Advertising Division of the Council of Better Business Bureaus and the Children's Advertising Review Unit not to endorse any company, product, or service, and a decision of "Advertising Substantiated" (see Section 2.8) should not be construed as such. Correspondingly, an advertiser's voluntary modification of advertising, in cooperation with NAD/ CARU's self-regulatory efforts, is not to be construed as an admission of any impropriety. To ensure the integrity and cooperative nature of the review process, parties to NAD/CARU proceedings must agree: 1) to keep the proceedings confidential throughout the review process (See Section 2.2 (B) (vii)); and 2) not to subpoena any witnesses or documents from NAD/CARU/NARB regarding the review proceeding in any future court or other proceeding (except for the purpose of authentication of a final, published case decision by a staff member) and to pay attorneys fees and costs if such a subpoena is attempted and successfully resisted; and, 3) after a decision has been published, not to

issue a press release regarding the decision or mischaracterize any NAD/CARU/NARB case decision or use and/or disseminate any NAD/CARU/NARB case decision for any advertising and/or promotional purposes. NAD/CARU may issue a public statement, for clarification purposes, if any party violates any of the provisions of this Section.

*E. Referrals to Law Enforcement Agencies*

When NAD/CARU commences a review pursuant Section 2.2 of these Procedures, and the advertiser elects not to participate in the self-regulatory process, NAD/CARU shall prepare a review of the facts with relevant exhibits and forward them to the appropriate federal or state law enforcement agency. Reports of such referrals shall be included in the Case Reports.

**2.2 Filing a Complaint**

**A.** Any person or legal entity, including NAD/CARU as part of their monitoring responsibility pursuant to Section 2.1 (B) of these Procedures, may submit to NAD/CARU any complaint regarding national advertising, regardless of whether it is addressed to consumers, to professionals or to business entities. All complaints (except those submitted by consumers), including any supporting documentation, must be submitted in duplicate hard copy and in an electronic format (including evidentiary exhibits when possible.) To help ensure a timely review, challengers should strive to limit the length of their submissions to 8 double-spaced typewritten pages (excluding evidentiary exhibits) and limit the number of issues raised in a challenge to those that are the most significant. A challenger may further expedite the review of the contested advertising by waiving its right to reply (see Section 2.6 B) or by requesting an "Expedited Review" pursuant to Section 2.11 of these Proceedings.

> **(i) Filing Fee**- All competitive challenges shall be filed together with a check, made payable to the Council of Better Business Bureaus, Inc., in the amount of $1,500 (for CBBB members and CARU Supporters) or $2,500 (for non-members), as a filing fee to help defray some of the administrative costs associated with the advertising review process. The President of the National Advertising Review Council (NARC) shall have the discretion to waive the fee for any challenger who can demonstrate economic hardship.

**B.** Upon receipt of any complaint, NAD/CARU shall promptly acknowledge receipt of the complaint and, in addition, shall take the following actions:

> **(i)** If, at the commencement or during the course of an advertising review proceeding, NAD/CARU concludes that the advertising claims complained of are : (a) not national in character; (b) the subject of pending litigation or an order by a court; (c) the subject of a federal government agency consent decree or order; (d) permanently withdrawn from use prior to the date of the complaint and NAD/CARU receives the advertiser's assurance, in writing, that the representation(s) at issue will not be used by the advertiser in any future advertising for the product or service; (e) of such technical character that NAD/CARU could not conduct a meaningful analysis of the issues; or (f) without sufficient merit to warrant the expenditure of NAD/CARU's resources, NAD/CARU shall advise the challenger that the complaint is not, or is no longer, appropriate for formal investigation in this forum. Upon making such a determination, NAD/CARU shall advise the challenger that a case will not be opened, or in the event that an advertising review proceeding has already been commenced, shall administratively close the case file and report this action in the next issue of the Case Reports. When it can, NAD/CARU shall provide the challenger with the name and address of any agency or group with jurisdiction over the complaint.

> **(ii)** If the complaint relates to matters other than the truth or accuracy of the advertising, or consistency with CARU's Self-Regulatory Guidelines for Children's Advertising, NAD/CARU shall so advise the challenger, as provided above, and where a significant national advertising issue is raised, shall forward a copy of the complaint to the NARC President who, in consultation with the NARB Chair, shall consider whether the complaint is appropriate for a consultive panel.

> **(iii)** If, in its discretion, NAD/CARU determines that a complaint is too broad or

3

includes too many issues or claims to make resolution within the time constraints proscribed by these Procedures feasible, NAD/CARU may request that the challenger limit the issues or claims to be considered in the review proceeding, or, in the alternative, advise the challenger that the matter will require an extended schedule for review.

**(iv)** If a complaint challenges advertising for more than one product (or product line) NAD/CARU may return the complaint to the challenger and request that separate complaints be submitted for each of the advertised products.

**(v)** If the complaint relates to the truth or accuracy of a national advertisement, or consistency with CARU's Self-Regulatory Guidelines for Children's Advertising, NAD/CARU shall promptly forward the complaint by facsimile, overnight, or electronic mail to the advertiser for its response.

**(vi)** Complaints regarding, specific language in an advertisement, or on product packaging or labels, when that language is mandated or expressly approved by federal law or regulation; political and issue advertising, and questions of taste and morality (unless raising questions under CARU's Self-Regulatory Guidelines for Children's Advertising), are not within NAD/CARU's mandate. If the complaint, in part, relates to matters other than the truth and accuracy of the advertising, or consistency with CARU's Self-Regulatory Guidelines for Children's Advertising, NAD/ CARU shall so advise the challenger.

**(vii)** NAD/CARU reserves the right to refuse to open or to continue to handle a case where a party to an NAD/ CARU proceeding publicizes, or otherwise announces, to third parties not directly related to the case the fact that specific advertising will be, is being, or has been, referred to NAD/CARU for resolution. The purpose of this right of refusal is to maintain a professional, unbiased atmosphere in which NAD/CARU can affect a timely and lasting resolution to a case in the spirit of furthering voluntary self-regulation of advertising and the voluntary cooperation of the parties involved.

**C.** Complaints originating with NAD shall be considered only after the General Counsel of the NARB has reviewed the proposed complaint and has determined that there is a sufficient basis to proceed. This provision shall not apply to complaints originating from CARU's monitoring efforts.

**D.** In all cases, the identity of the challenger must be disclosed to NAD/CARU who shall advise the advertiser of the identity of the challenger.

## 2.3 Parties to NAD/CARU/NARB Proceedings

The parties to the proceeding are (i) NAD/CARU acting in the public interest, (ii) the advertiser acting in its own interest, and (iii) the challenger(s), whose respective rights and obligations in an NAD/CARU/NARB proceeding are defined in sections 2.2, 2.4, 2.5, 2.6, 2.7, 2.8, 2.9, 2.10, 2.11, 2.12, 3.1, 3.2, 3.3, 3.5, and 4.1 of these Procedures.

## 2.4 Information in NAD/CARU Proceedings

**A.** All information submitted to NAD/CARU by the challenger and the advertiser, pursuant to Sections 2.4 through 2.11 of these Procedures, shall be submitted in duplicate hard copy and in an electronic format (including evidentiary exhibits when possible). Upon receipt of a filing by any party, NAD/CARU shall forward a copy to the other party by messenger, facsimile, electronic or overnight mail. All transmittals by NAD/CARU during the course of an advertising review proceeding shall be paid for by the challenger, unless the challenger is a consumer or otherwise demonstrates economic hardship, in which case all transmittals shall be paid for by NAD/CARU.

**B.** Time periods for all submissions to NAD, CARU and NARB shall commence on and include the first day of business following the date of delivery of the triggering document and shall not include Saturdays, Sundays or Federal holidays.

**C.** NAD/CARU shall not consider any data submitted by a challenger that has not been made available to the advertiser, and any materials

4

submitted by a challenger on condition that they not be shown to the advertiser shall promptly be returned. In the case of studies, tests, polls and other forms of research, the data provided should be sufficiently complete to permit expert evaluation of such study, poll, test or other research. NAD/CARU shall be the sole judge of whether the data are sufficiently complete to permit expert evaluation. If a party initially submits incomplete records of data that is then in its possession, and later seeks to supplement the record, NAD/CARU may decline to accept the additional data if it determines that the party's failure to submit complete information in the first instance was without reasonable justification.

**D.** An advertiser may submit trade secrets and/or proprietary information or data (excluding any consumer perception communications data regarding the advertising in question) to NAD/CARU with the request that such data not be made available to the challenger, provided it shall: (i) clearly identify those portions of the submission that it is requesting be kept confidential in the copy submitted for NAD/CARU's review; and (ii) redact any confidential portions from the duplicate copy submitted to NAD/CARU for NAD/CARU to forward to the challenger; (iii) provide a written statement setting forth the basis for the request for confidentiality; (iv) affirm that the information for which confidentiality is claimed is not publicly available and consists of trade secrets and/or proprietary information or data; and (v) attach as an exhibit to NAD/CARU's and the complainant's copy of the submission a comprehensive summary of the proprietary information and data (including as much non-confidential information as possible about the methodology employed and the results obtained) and the principal arguments submitted by the advertiser in its rebuttal of the challenge. Failure of the advertiser to provide this information will be considered significant grounds for appeal of a decision by a challenger. (See Section 3.1)

**E.** Prior to the transfer of data to the advertiser or challenger, NAD/CARU shall obtain assurances that the recipients agree that the materials are provided exclusively for the purpose of furthering NAD/CARU's inquiry; circulation should be restricted to persons directly involved in the inquiry, and recipients are required to honor a request at the completion of the inquiry that all copies be returned.

**2.5 The Advertiser's Substantive Written Response**

The advertiser may, within 15 business days after receipt of the complaint, submit to NAD/CARU, in duplicate hard copy and an electronic format (including exhibits when possible), a written response that provides substantiation for any advertising claims or representations challenged, any objections it may have to the proceedings on jurisdictional grounds, as defined in Sections 2.2(B)(i)-(v), together with copies of all advertising, in any medium, that is related to the campaign that includes the challenged advertising. The advertiser may not include a counter challenge (i.e., a request that NAD/CARU review advertising claims made by the challenger) in its response. Such a request must be filed as a separate complaint as described in Section 2.2 of these Procedures. To help ensure a timely review, advertisers should strive to limit the length of their submissions to 8 double-spaced typewritten pages (excluding evidentiary exhibits). Advertiser responses addressed to the issue of NAD/CARU jurisdiction, should be submitted as soon as possible after receipt of the complaint, but in any event, must be submitted no later than 15 business days after the advertiser receives the initial complaint. (See also Section 2.10 Failure to Respond.)

**2.6 The Challenger's Reply**

**A.** If the advertiser submits a written response, NAD/CARU shall promptly forward the copy of that response prepared by the advertiser for the challenger, that shall have any material designated as confidential redacted, and shall include, as an exhibit, a comprehensive summary of the redacted information in the manner set forth in Section 2.4 above. Within ten business days of receipt of the advertiser's response, the challenger shall submit in duplicate hard copy and an electronic format (including exhibits when possible) its reply, if any, to NAD/CARU. To help ensure a timely review, challengers should strive to limit the length of their reply to 8 double-spaced typewritten pages (excluding evidentiary exhibits). This reply should include a short Executive Summary summarizing the key points in the challenger's position on the case and cite to the supporting evidence in the record. If the challenger does not submit a reply, NAD/CARU shall proceed to decide the challenge upon the expiration of the complainant's time to

5

reply, subject to a request by NAD/CARU for additional comments or data under Section 2.8 (A)

**B.** *Expediting Review by Waiving the Reply –*

After the challenger has reviewed the Advertiser's first substantive written response; the challenger may notify NAD/CARU in writing that it elects to waive its right to add to the record thereby expediting the proceeding. In the event that a challenger waives its right to reply, additional information from either party may be submitted only upon request from NAD/CARU and shall be treated in the same manner as requests for additional comments or data under Section 2.8(A) of these procedures and any meetings with the parties will be held at the discretion of the NAD/CARU.

**2.7 Advertiser's Final Response**

If the challenger submits a reply, NAD/CARU shall promptly forward a copy of that reply to the advertiser. Within ten business days after receipt of the complainant's reply, the advertiser shall submit a response, if any, in duplicate hard copy and an electronic format (including exhibits when possible). To help ensure a timely review, advertisers should strive to limit the length of their response to 8 double-spaced typewritten pages (excluding evidentiary exhibits). This response should include a short Executive Summary summarizing the key points in the advertiser's position on the case and cite to the supporting evidence in the record.

**2.8 Additional Information and Meetings with the Parties**

**A.** In the event that NAD/CARU deems it necessary and request further comments or data from an advertiser or challenger, the written response must be submitted within six business days of the request. NAD/CARU will immediately forward the additional response to the advertiser or challenger, who will be afforded six business days to submit its own response to the submission. Unless NAD/CARU requests further comments or data under this paragraph, no additional submissions will be accepted as part of the case record, and any unsolicited submissions received by NAD/CARU will be returned.

**B.** NAD/CARU, in its discretion, may, in addition to accepting written responses, participate in a meeting, either in person or via teleconference, with either or both parties. In the event that NAD/CARU participates in a meeting in which only one party participates, NAD/CARU shall notify the other party that a teleconference or meeting has been scheduled to take place and after the meeting shall summarize the substance of the information exchanged for the other party (or have such a summary provided by the attending party). Where feasible, upon request, an advertiser shall be afforded the opportunity to schedule its meeting with NAD/CARU after the date of challenger's meeting. All meetings with the parties shall be held within 15 business days of NAD's receipt of the Advertiser's Final Response (Section 2.7).

**C.** Except upon request by NAD, as provided in Section 2.8(A) of these procedures, no new evidence may be submitted for inclusion in the record at these meetings. Any non-requested information provided during a meeting that is not already in the submissions of the party (including visual demonstrations, summaries and other documentary evidence) will not be included in the record and will not be considered by NAD/CARU in making its decision or by an NARB Panel in reviewing NAD's decision on appeal.

**D.** The period of time available for all communications, including meetings and written submissions, shall not exceed the time limits set forth in Sections 2.4 through 2.8 above except upon agreement of NAD/CARU and the parties.

**2.9 Decision**

*A. The Final Case Decision*

Within 15 business days of its receipt of the last document authorized by Rules 2.5 to 2.8, above, NAD/CARU will formulate its decision on the truth and accuracy of the claims at issue, or consistency with CARU's Self-Regulatory Guidelines for Children's Advertising; prepare the "final case decision;" provide a copy to the advertiser and invite the advertiser to add an Advertiser's Statement within five business days of receipt.

*B. Advertiser's Statement*

In the event that NAD/CARU decides some or all of the advertising claims at issue are not substantiated, the advertiser shall, within five business days of receipt of the decision, submit an Advertiser's Statement stating whether the

advertiser agrees to modify or discontinue the advertising or chooses to take the issues to appeal, as specified in Section 3.1. The Advertiser's Statement should be concise and may not exceed one double spaced page in length. Whether an advertiser intends to comply or appeal, an advertiser may include in this statement an explanation of why it disagrees with NAD/CARU. However, this is not the venue to reargue the merits of the case, bring in new facts, or restate or summarize NAD/CARU's conclusions. NAD/CARU reserves the right, following consultation with the advertiser, to edit for length or inappropriate material. In the event that the advertiser fails to submit an Advertiser's Statement as required by this Section, NAD/CARU may refer the matter to an appropriate government agency for review and possible law enforcement action.

*C. Publication of the Decision*

Upon receipt of the final version of the Advertiser's Statement, NAD/CARU shall provide copies of the "final case decision" to the advertiser and the challenger, by facsimile, electronic or overnight mail or messenger, and make the decision available to the public through press announcements and publication of the decision in the next Case Reports.

*D. Case Report Headings*

NAD/CARU's decisions in the Case Reports shall be published under the headings:
- Advertising Substantiated
- Advertising Referred to NARB
- Advertising Modified or Discontinued
- Administrative Closing
- Advertising Referred to Government Agency
- No Substantiation Received
- Compliance

**E.** Annual Summary
The first issue of the Case Reports each calendar year shall include a summary, prepared by NAD/CARU, which includes the number, source and disposition of all complaints received and cases published by NAD/CARU during the prior year.

**2.10 Failure to Respond**

**A.** If an advertiser fails to file a substantive written response within the period provided in Section 2.5 above, NAD/ CARU shall release to the press and the public a "notice" summarizing the advertising claims challenged in the complaint, and noting the advertiser's failure to substantively respond.

**B.** If the advertiser fails to file a substantive written response within an additional 15 business days, NAD/CARU, may refer the file to the appropriate government agency and release information regarding the referral to the press, the public, and the media in which the advertising at issue has appeared, and shall report the referral in the next issue of the Case Reports.

**C.** If a challenger fails to file a reply within the time provided by Rule 2.6, or an advertiser fails to file a response within the time provided in Rule 2.7, the untimely document shall not be considered by NAD/CARU, or by any panel of the NARB.

**2.11 Expedited Proceeding**

A challenger may, with the consent of the advertiser, request that the NAD/CARU engage in an expedited review of the contested advertising. This request must be made in the challenger's initial challenge letter to NAD/CARU, which shall not exceed four double-spaced typewritten pages. Based on the complexity of the challenge, NAD/CARU shall determine whether the matter is appropriate for an expedited review. If a challenger's request for an expedited proceeding is accepted, the challenger automatically waives its right to reply to the Advertiser's substantive written response. The advertiser will have 15 business days in which to respond to NAD/CARU's inquiry. NAD/CARU will forward the advertiser's response to the challenger. Thereafter, NAD/CARU may, in its discretion, request additional information from either party. NAD/CARU will issue a summary decision within 15 business days after the close of the evidentiary record. If NAD/CARU determines that the advertising should be modified or discontinued, the advertiser may then request a full review (with any additional submissions permitted by these Procedures) and a detailed decision. In such a case, the advertiser will be required to discontinue the challenged advertising until the final decision is issued. In an expedited proceeding, the parties' rights to appeal (as described in Sections 3.1A and 3.1B of these Procedures) attach only in the event that the advertiser requests a full review and after a detailed decision is issued on the merits.

7

**2.12 CARU Expedited Procedure**

Notwithstanding 2.2 through 2.11 above, if the advertiser responds within five business days of receipt of an inquiry regarding non-compliance with CARU's Guidelines and the advertising is substantiated, or if within an additional five business days the advertising is modified to comply with CARU's Guidelines, no formal case will be opened, and the results will be published in the CARU Activity Report.

**3.1 Appeal**

**A.** When an advertiser does not agree to comply with NAD/CARU's decision on one or more issues involved in a case, the advertiser shall be entitled to panel review by the NARB. To appeal an NAD/CARU decision, an advertiser shall make a request for a referral to the NARB and specify any and all issues for its appeal in the Advertiser's Statement it prepares in response to NAD/CARU's decision pursuant to Section 2.8(A). All advertiser requests for an appeal to NARB shall be submitted together with a check made payable to the Council of Better Business Bureaus, Inc. in the amount of $500 (for CBBB Members) or $1000 (for non-members).  In such cases, NAD/CARU shall publish its decision and the Advertiser's Statement in the next Case Reports, under the heading "Advertising Referred to NARB".

**B.** Within ten business days after the date of receipt of a copy of NAD/CARU's final case decision, the challenger may request review by the NARB by filing a letter, not to exceed 20 double spaced pages plus any relevant attachments from the NAD/CARU case record, explaining its reasons for seeking review. The letter should be addressed to the Chair, NARB, Attention:  NARB Director, 70 West 36th Street, 13th Floor, New York, NY 10018. All Challenger request for permission to appeal shall be filed together with a check made payable to the Council of Better Business Bureaus, Inc. in the amount of $500. The challenger shall send a copy of this letter to the advertiser and to NAD/CARU. Within ten business days after receipt of the copy of the request for review, the advertiser may and NAD/CARU shall submit a response to the NARB Chair, not to exceed 20 double spaced pages plus any relevant attachments from the NAD/CARU case record. A copy of the advertiser's and NAD/CARU's responses shall be sent by the advertiser and NAD/CARU, respectively, to the other parties, except that portions of the case record that were submitted to NAD/CARU on a confidential basis shall not be sent to the challenger unless the advertiser consents. No other submissions shall be made to the NARB Chair. These letters, together with the relevant sections of the case record provided by the parties, will be reviewed by the NARB Chair, who within ten business days after the time for the last submission under this rule has expired shall (1) determine if there is no substantial likelihood that a panel would reach a decision different from NAD/ CARU's decision; or (2) proceed to appoint a review panel as outlined in Section 3.2. The NARB Chair shall return the record to NAD/CARU after (s)he makes his or her determination. With the exception of the time period within which a challenger must file a request for NARB review of an NAD/CARU decision, the NARB Chair reserves the right to extend the time intervals provided in this Section for good cause, notifying all interested parties of such extension.

**C.**  When an advertiser appeals to the NARB pursuant to Section 3.1(A), or if the NARB Chair grants a complainant's request for NARB review pursuant to Section 3.1(B), the appellant shall pay a filing fee by check made payable to the Council of Better Business Bureaus, Inc. in the amount of $500 (for a CBBB member) or $1000 (for a non-member). NAD/CARU shall prepare the relevant portions of the case record and forward them to the NARB within five business days of the issuance of the press release. The NARB shall thereafter make copies of and mail the case record to the parties, except that portions of the case record that were submitted to NAD/CARU on a confidential basis shall not be sent to the challenger unless the advertiser consents. The appellant shall pay for all NARB copying and transmittal costs incurred as a result of an appeal or request for appeal, pursuant to Sections 3.1 through 3.6 of these Procedures. Where the advertiser and the challenger both appeal, these costs shall be divided equally between them. In any event, NARB shall pay these costs for any party that can demonstrate economic hardship. The party appealing shall, within ten business days of receipt of the case record prepared by NAD/CARU, submit to the NARB Chair, addressed as indicated in Section 3.1(B), a letter not to exceed 30 double spaced pages explaining its position. The appellant shall send a copy of the letter to the opposing party and NAD/CARU who shall each have ten business days of receipt of which to submit a response, not to exceed 30 double spaced pages,

8

to the NARB Chair, with copies to the other parties. No other submissions shall be made.

**D.** In the event that the advertiser shall exercise its right to an appeal under Section 3.1(A), the challenger shall have the right to appeal any additional issues considered by the NAD/CARU that have not been appealed by the advertiser. In the event that a challenger's request to appeal is granted by the NARB Chair under Section 3.1(B), the advertiser may appeal any additional issues considered by the NAD/CARU that have not been appealed by the challenger, notwithstanding that its time to file an appeal as of right has expired. The challenger or advertiser may exercise the right to appeal under this paragraph by submitting a letter to the NARB at the address listed in Section 3.1(B), requesting the appeal and specifying the additional issues it wishes to appeal. The cross-appellant shall also pay a filing fee by check made payable to the Council of Better Business Bureaus, Inc. in the amount of $500 (for a CBBB member) or $1000 (for a non-member). In the case of the challenger, the letter shall be due within five business days of receipt of the final case decision with the advertiser's statement indicating the advertiser's election to appeal; in the case of the advertiser, the letter is due within five business days of the date of receipt of the NARB Chair's determination granting the challenger's request to appeal. Copies of these letters shall be sent by the issuing party to all of the other parties. The advertiser shall be deemed thereafter to be the appellant for purposes of the order of submissions.

**3.2 Content of Submissions to NARB**

The written submissions to NARB may not contain any factual evidence, arguments or issues that are not in the case record forwarded to NARB pursuant to Section 3.1 C of these Procedures. In the event that the NARB Chair, after consultation with the parties, determines that a party has included evidence, facts or arguments outside this record in its submission to NARB the NARB Chair, may in his/her discretion:

    (a) return the brief to the party with a request that it redact any information that NARB has identified as outside the record and resubmit its brief within 3 business days. If the party fails to submit a properly redacted brief within 3 business days it shall be deemed to have defaulted on its appeal; or

    (b) remand the matter to NAD/CARU for a determination on whether the additional information constitutes "newly discovered evidence" sufficient to warrant NAD's reopening of the case under the "extraordinary circumstances" provisions of Section 3.8 of these Procedures. If NAD/CARU determines that it is not appropriate to reopen the case, NAD/CARU shall return the brief to the NARB Chair who shall handle any information outside the record in the manner provided by Section 3.2 (a) above.

**3.3 Appointment of Review Panel**

The Chair, upon receipt of an appeal by an advertiser, or upon granting a request to appeal by a challenger, shall appoint a panel of qualified NARB members and designate the panel member who will serve as panel Chair.

**3.4 Eligibility of Panelists**

An "advertiser" NARB member will be considered as not qualified to sit on a particular panel if his/her employing company manufactures or sells a product or service which directly competes with a product or service sold by the advertiser involved in the proceeding. An "agency" NARB member will be considered as not qualified if his/her employing advertising agency represents a client which sells a product or service which directly competes with the product or service involved in the proceeding. A NARB member, including a non-industry member, shall disqualify himself/herself if for any reason arising out of past or present employment or affiliation (s)he believes that (s)he cannot reach a completely unbiased decision. In addition, the Executive Director shall inform the advertiser, challenger, and the Director of NAD/CARU of their right to object, for cause, to the inclusion of individual panel members, and to request that replacement members be appointed. Requests will be subject to approval by the NARB Chair. If the NARB Chair is unable to appoint a qualified panel, (s)he shall complete the panel by appointing one or more alternate NARB member(s).

**3.5 Composition of Review Panel**

Each panel shall be composed of one "public" member, one "advertising agency" member, and

three "advertiser" members. Alternates may be used where required. The panel will meet at the call of its chair, who will preside over its meetings, hearings and deliberations. A majority of the panel will constitute a quorum, but the concurring vote of three members is required to decide any substantive question before the panel. Any panel member may write a separate concurring or dissenting opinion, which will be published with the majority opinion.

### 3.6 Procedure of Review Panel

**A.** As soon as the panel has been selected, the Executive Director will inform all parties as to the identity of the panel members. At the same time, (s)he will mail copies of all submissions under Section 3.1(C) to each of the panel members, and will, in like manner, send them any response or request submitted by any other party or parties. Within ten days after receiving copies of the appeal, the panel members shall confer and fix the time schedule that they will follow in resolving the matter.

**B.** The panel, under the direction of its chair, should proceed with informality and speed. If any party to the dispute before NAD/CARU requests an opportunity to participate in the proceedings before the panel, (s)he shall be accommodated. All parties to a matter before the panel shall be given ten days notice of any meeting at which the matter is to be presented to the panel. Such notice shall set out the date and place of the meeting, and the procedure to be followed.

**C.** The case record in NAD, CARU and/or NARB proceedings shall be considered closed upon the publication of the "final case decision" as described in Section 2.8. No factual evidence, arguments or issues will be considered within the case record if they are introduced after that date.

**D.** The decision of the panel will be based upon the portion of the record before NAD/CARU which it has forwarded to the panel, the submissions under Section 3.1 (C), and any summaries of the record facts and arguments based thereon which are presented to the panel during its meeting with the parties. A party may present representatives to summarize facts and arguments that were presented to NAD/CARU, and members of the panel may question these persons. If the advertiser has declined to share any of its substantiation with the challenger, the panel will honor its request for confidentiality, even though the challenger may have instituted the appeal. The challenger will therefore be excluded from the meeting during the time when such confidential substantiation is being discussed by the panel with NAD/CARU and the advertiser. The panel will consider no facts or arguments if they are outside the facts presented to, or inconsistent with the arguments made before, NAD/CARU.

### 3.7 Timing and Reporting of Panel Decisions

When the panel has reached a decision, it shall notify the NARB Chair of its decision and the rationale behind it in writing and shall endeavor to do so within 15 business days. The Chair, upon receipt of a panel's decision, shall transmit such decision and rationale to NAD/CARU and then to the advertiser. The advertiser then has five business days to respond indicating its acceptance, rejection or any comments it may wish to make on the panel's decision and shall state whether or not it will comply with the panel's decision. Thereafter, the Chair shall notify other parties to the case of the panel's decision, incorporating therein the response from the advertiser, and make such report public. In the event that a panel has determined that an advertising claim has not been substantiated or is untruthful and/ or inaccurate, and the advertiser fails to indicate that the specific advertisement(s) will be either withdrawn or modified in accordance with the panel's findings within a time period appropriate to the circumstances of the case, the Chair will issue a Notice of Intent to the advertiser that the full record on the case will be referred to the appropriate government agency. If the advertiser fails to respond or does not agree in writing to comply with the decision of the panel within ten days of the issuance of the Notice of Intent, the Chair shall so inform the appropriate government agency by letter, shall offer the complete NARB file upon request to such government agency, and shall publicly release his/her letter. The Chair and/or Executive Director of the NARB shall report to the NARB at its annual meeting on, among other things, the number, source and disposition of all appeals received by the NARB.

### 3.8 Closing a Case

When a case has been concluded with the publication of a NAD/CARU decision or, when a panel has turned over a decision to the Chair, and when the Chair has executed the procedures in Section 3.6 of these "Procedures," the case will be

closed and, absent extraordinary circumstances, no further materially similar complaints on the claim(s) in question shall be accepted by NAD/CARU, except as provided for in Section 4.1.

**3.9 Confidentiality of Panel Procedures**

All panels, through the NARB Director, shall maintain a record of their proceedings, but a verbatim record is not required. All deliberations, meetings, proceedings and writings of a panel other than the written statement of its conclusions and the rationales behind them shall be confidential, with the sole exception of those which the Chair of the NARB determines must be made available to an agency of the government. A published NAD/CARU decision and an NARB Panel Report, in those cases referred to a panel, are the only permanent records required to be kept as to the basis of an inquiry, the issues defined, the facts and data presented, and the conclusions reached by NAD/ CARU and a NARB Panel, if one has been involved in the process.

**4.1 Compliance**

**A.** After an NAD, CARU or NARB panel decision requesting that advertising be "Modified or Discontinued" is published, together with an Advertiser's Statement indicating the advertiser's willingness to comply with NAD, CARU or the NARB panel's recommendations, or an advertiser agrees to modify or discontinue advertising pursuant to §2.12 CARU Expedited Procedure, NAD/CARU, either on its own or at the behest of a challenger or a third party, may request that the advertiser report back, within five (5) business days, on the status of the advertising at issue and explain the steps it has taken to bring the advertising into compliance with the decision. Any evidence that NAD/CARU relies on as a basis for its request for a report on compliance shall be forwarded to the advertiser together with the request for a status report.

**B.** If, after reviewing the advertiser's response to a request for a status report on compliance, pursuant to Section 4.1, or, if the advertiser fails to respond, after NAD/CARU independently reviews the current advertising, NAD/ CARU determines that the advertiser, after a reasonable amount of time, has not made a bona fide attempt to bring its advertising into compliance with NAD, CARU or the NARB panel's recommendations and/or the representations with respect to compliance made in its Advertiser's Statement, NAD/CARU may refer the file to the appropriate government agency and release information regarding the referral to the press, the public, and to the media in which the advertising at issue has appeared, and shall report the referral in the next issue of the *Case Reports*. The amount of time considered reasonable will vary depending on the advertising medium involved.

**C.** If NAD/CARU determines that the advertiser has made a reasonable attempt to comply with an NAD, CARU or NARB panel decision, but remains concerned about the truthfulness and accuracy of the advertising, as modified, NAD/CARU will notify the advertiser, in writing, detailing these concerns. The advertiser will have ten business days after receipt of NAD/CARU's notice to respond, unless NAD/CARU expressly agrees to extend the advertiser's time to answer. Within 15 days of receipt of the advertiser's response, NAD/CARU will make a determination regarding the advertiser's compliance, and:

**(i)** if NAD/CARU concludes that the advertising is in compliance with NAD, CARU or the NARB panel's decision, NAD/CARU will notify the advertiser and close the compliance inquiry;

**(ii)** if NAD/CARU recommends that further modifications be made, to bring the advertisement into compliance with NAD, CARU or the NARB panel's original decision, NAD/CARU will notify the advertiser of its findings and any further recommendations for compliance.

> (a) If the advertiser accepts NAD/CARU's compliance findings, and agrees to discontinue the advertising at issue until it makes the further modifications recommended by NAD/CARU, NAD/CARU shall report this in the next issue of the Case Reports and shall continue to monitor for compliance.

> (b) If the advertiser indicates that it disagrees with NAD/CARU's compliance findings and refuses to make the further modifications recommended by NAD/CARU, the advertiser may, within five business days of receiving NAD/CARU's letter, submit a statement documenting its disagreement. Upon receipt of such statement, or in the event an advertiser fails to respond within five days, NAD/CARU:

(1) shall, where compliance with an NARB panel decision is at issue, refer the matter to the NARB Chair for review under Section 3.6 above; and

(2) may, where compliance with an NAD/CARU decision is at issue, refer the matter to the appropriate government agency and report this action to the press, the public, and any medium in which the advertising at issue appeared; and shall report its findings in the next issue of NAD Case Report.

**GENERAL PROVISIONS**

**5.1 Amendment of Standards**
Any proposals to amend any advertising standards which may be adopted by NARB may be acted on by a majority vote of the entire membership of the NARB at any special or regular meeting, or by written ballot distributed through the United States mails, provided that the text of the proposed amendment shall have been given to the members 30 days in advance of the voting date Once NARB voting is completed and tallied, the NARC President shall take it to the NARC Board of Directors for their approval.

**5.2 Use of Consultive Panels for Matters Other Than Truth and Accuracy, or Consistency with CARU's Self-Regulatory Guidelines for Children's Advertising**

From time to time, NARB may be asked to consider the content of advertising messages in controversy for reasons other than truth and accuracy, or consistency with CARU's Self-Regulatory Guidelines for Children's Advertising, or the NARC or the NARB may conclude that a question as to social issues relative to advertising should be studied. In such cases the following procedures shall be employed to deal with such issues:

**5.3 Consultive Panels**

The NARB Chair may consult regularly with the NARC President, the NARC Board of Directors or with the NARB to determine whether any complaints have been received, or any questions as to the social role and responsibility of advertising have been identified, which should be studied and possibly acted upon. If so, a consultive panel of five NARB members shall be appointed, in the same proportions as specified for adjudicatory panels in Section 3.4 above.

**5.4 Panel Procedures**

Consultive panels shall review all matters referred to them by the Chair and may consult other sources to develop data to assist in the evaluation of the broad questions under consideration. No formal inquiry should be directed at individual advertisers.

**5.5 Confidentiality**

All panel investigations, consultations and inquiries shall be conducted in complete confidence.

**5.6 Position Paper**

If a consultive panel concludes that a position paper should be prepared to summarize its findings and conclusions for presentation to the full NARB, the paper shall be written by one or more members of the panel, or by someone else under its direction. The contents of the paper should reflect the thinking of the entire panel, if possible, but any panel member may write a separate concurring or dissenting opinion, which will be published with the panel report, if it is published.

**5.7 Voting on Publication**

Any such report prepared by a consultive panel will be submitted to the NARB Chair, who will distribute copies to the full NARB for its consideration and possible action. The members of the NARB will be given three weeks from the date of such distribution within which to vote whether to publish the report or not. Their votes will be returned to the Executive Director of the NARB If a majority of the NARB members vote for its publication the report will be distributed to NARC for its review and will be published only if a majority of NARC vote for its publication.

**5.8 Publication**

If a majority of the NARB and NARC vote for publication, the paper will be published promptly with appropriate publicity.