**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

|  |  |  |
|---|---|---|
| MCNEIL NUTRITIONALS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 04-2291 (JP) |
| v. | ) | |
| | ) | |
| MERISANT COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
ANTICIPATORY DECLARATORY JUDGMENT ACTION**

Salvador Antonetti-Zequeira
USDC-PR No. 113910
Heriberto J. Burgos-Pérez
USDC-PR No. 204809
Jorge Roig-Colón
USDC-PR No. 220706
FIDDLER, GONZÁLEZ & RODRÍGUEZ, P.S.C.
254 Muñoz Rivera Avenue, 6th Floor
Hato Rey, Puerto Rico 00918
Telephone: (787) 759-3150
Facsimile: (787) 759-3109

Gregg F. LoCascio
*Pro Hac Vice Admission Request Pending*
KIRKLAND & ELLIS LLP
655 15th Street, NW
Washington, DC 20005
Telephone: (202) 879-5290
Facsimile: (202) 879-5200

***Attorneys for Defendant
Merisant Company***

# TABLE OF CONTENTS

FACTUAL AND PROCEDURAL BACKGROUND.................................................................3

ARGUMENT ...........................................................................................................................8

I.   The Federal Courts Lack Jurisdiction Over McNeil's Speculative and Unripe
     Claim for Declaratory Judgment and McNeil Was Without Standing to Assert this
     Purely Speculative Claim...............................................................................................8

II.  McNeil's Anticipatory Declaratory Judgment Action Is a Classic Instance of Bad-
     Faith Forum Shopping Which Should Be Dismissed. .......................................................11

III. At a Minimum, Transfer of this Action to the Eastern District of Pennsylvania Is
     Appropriate. ..................................................................................................................17

CONCLUSION.......................................................................................................................22

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Wright,*
  468 U.S. 737 (1984) ........................................................................................... 9

*Alphatronix, Inc. v. Pinnacle Micro, Inc.,*
  814 F. Supp. 455 (M.D.N.C. 1993) ............................................................. 14, 15

*Atari v. United Parcel Serv., Inc.,*
  211 F. Supp. 2d 360 (D. Mass. 2002) ......................................................... 19, 20

*Aviles v. Cantieri Di Baia-Mericraft S.P.A.,*
  943 F. Supp. 154 (D.P.R. 1996) ...................................................................... 17

*Bayer Bioscience N.V. v. Monsanto Co.,*
  No. C.A. 03-023 GMS, 2003 WL 1565864 (D. Del. Mar. 25, 2003) .............. 18

*Continental Ins. Co. v. Wickes Co.,*
  No-Civ 8215 (KMW), 1991 WL 183771 (S.D.N.Y. Sept. 6, 1991) ................. 21

*Crown Cork & Seal Co. v. Borden, Inc.,*
  779 F. Supp. 33 (E.D. Pa. 1991) ..................................................................... 13

*Davox Corp. v. Digital Sys. Int'l, Inc.,*
  846 F. Supp. 144 (D. Mass. 1993) ......................................................... 9, 10, 16

*Dunson v. McNeil-PPC, Inc.,*
  No. Civ.A. 04-2020, 2004 WL 2600631 (E.D. Pa. Nov. 16, 2004) ........... 12, 17

*Dupont Pharms. Co. v. Sonus Pharms., Inc.,*
  122 F. Supp. 2d 230 (D. Mass 2000) ............................................................... 17

*Elbalah v. Republic Ins. Co.,*
  879 F. Supp. 3 (D.R.I. 1995) ...................................................................... 18, 20

*EMC Corp. v. Roland,*
  916 F. Supp. 51 (D. Mass. 1996) ............................................................. passim

*Ernst & Young v. Depositors Econ. Prot. Corp.,*
  45 F.3d 530 (1st Cir. 1995) ..................................................................... 9, 10, 11

*F.A.I. Elecs. Corp. v. Chambers,*
  944 F. Supp. 77 (D. Mass. 1996) .................................................................... 18

*Federal Ins. Co. v. May Dep't Stores Co.,*
  808 F. Supp. 347 (S.D.N.Y. 1992) ............................................................. 13, 17

*FPC Corp. v. Uniplast Inc.*,
    964 F. Supp. 1212 (N.D. Ill. 1997) ............................................................... 13

*G. Heileman Brewing Co. v. Anheuser-Busch, Inc.*,
    873 F.2d 985 (7th Cir. 1989) ....................................................................... 11

*Great Am. Ins. Co. v. Houston Gen. Ins. Co.*,
    735 F. Supp. 581 (S.D.N.Y. 1990) ......................................................... 14, 15

*Institute for Studies Abroad, Inc. v. International Studies Abroad Inc.*,
    263 F. Supp. 2d 1154 (S.D. Ind. 2001) ....................................................... 13

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ...................................................................................... 9

*McEvily v. Sunbeam-Oster Co.*,
    878 F. Supp. 337 (D.R.I. 1994) ............................................................. 17, 19

*McInnis-Misenor v. Maine Med. Ctr.*,
    319 F.3d 63 (1st Cir. 2003) ................................................................ 9, 10, 16

*Mill Creek Press Inc. v. The Thomas Kinkade Co.*,
    No. CIVA.03:-CV-1213-G, 2004 WL 2607987 (N.D. Tex. Nov. 16, 2004)............. 13, 14

*Nortek, Inc. v. Molnar*,
    36 F. Supp. 2d 63 (D.R.I. 1999) ........................................................... passim

*NSI Corp. v. Showco, Inc.*,
    843 F. Supp. 642 (D. Or. 1994) .................................................................. 14

*Outek Caribbean Distribs., Inc. v. Echo, Inc.*,
    206 F. Supp. 2d 263 (D.P.R. 2002).............................................................. 17

*Recoton Corp. v. Allsop, Inc.*,
    999 F. Supp 574 (S.D.N.Y. 1998) ............................................................... 18

*Ricoh Co., v. Aeroflex Inc.*,
    279 F. Supp. 2d 554 (D. Del. 2003)............................................................. 18

*Riviera Trading Corp. v. Oakley, Inc.*,
    944 F. Supp. 1150 (S.D.N.Y. 1996)............................................................. 18

*S & S Candies, Inc. v. Hershey Foods Corp.*,
    No. 00 Civ 5243 (DLC), 2000 WL 1425092 (S.D.N.Y. Sept. 26 2000) ........................ 14

*Solna Web Inc. v. Printed Media Servs., Inc.*,
    No. 90-0433-cv-W-6, 1990 WL 357918 (W.D. Mo. Aug. 31, 1990)............................ 14

*Subaru of New England, Inc. v. Subaru of Augusta, Inc.*,
    121 F.R.D. 1 (D. Mass. 1988) .................................................................................. 18, 19

*Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*,
    819 F.2d 746 (7th Cir. 1987) ...................................................................................... 13

*Unique Indus., Inc. v. Lisa Frank, Inc.*,
    No. 93 Civ. 8037 (LAP), 1994 WL 525041 (S.D.N.Y. Sept. 23, 1994) .......................... 21

**Statutes**

28 U.S.C. § 1404(a) ................................................................................................... 17

28 U.S.C. § 1407 .......................................................................................................... 4

**Other Authorities**

10B James Alan Wright, *et al.*,
    *Federal Practice and Procedure: Civil 3d* § 2757 ........................................................ 15

12 *Moore's Federal Practice,* § 57.22(2)(c) (Matthew Bender 3d. ed.) ........................................ 9

12 *Moore's Federal Practice*, § 57.42(3) (Matthew Bender 3d ed.) ............................................ 15

http: //www.uscourts.gov/ cfapps/ webnovada/ CF_FB_301/
    index.cfm?fuseaction=Reports.ViewConfirmations ......................................................... 19

http:// www.uscourts.gov/ cgi-bin/ cmsd2003.pl ....................................................................... 19

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

---

|  |  |
|---|---|
| **MCNEIL NUTRITIONALS, LLC,** | ) |
| | ) |
| **Plaintiff,** | ) |
| **v.** | ) |
| | ) |
| **MERISANT COMPANY,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

Civil Action No.: 04-2291 (JP)

---

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**
**ANTICIPATORY DECLARATORY JUDGMENT ACTION**

This case is an unripe, jurisdictionally-improper misuse of the Declaratory Judgment Act that should be dismissed. This suit – which seeks exclusively declaratory relief by a company that has been falsely and misleadingly advertising to the public – was filed by a Pennsylvania company (McNeil) against an Illinois company (Merisant) seeking to preempt a Pennsylvania district court from reviewing McNeil's false and misleading advertising campaign. In fact, McNeil's Splenda® advertising campaign was conceived of, developed in, and implemented from McNeil's headquarters in Fort Washington, Pennsylvania, and none of the conduct at issue in this case took place here in Puerto Rico. Nor are there any parties or witnesses located in Puerto Rico. McNeil's failure to even suggest otherwise in its complaint confirms that this declaratory judgment action is nothing more than tactical forum shopping that should not be countenanced.

The true litigation over Splenda's false advertising currently rests in Philadelphia, in the pending case of *Merisant Co. v. McNeil Nutritionals LLC & McNeil-PPC, Inc*., No. 04-CV-5504, in the Eastern District of Pennsylvania. This action should be dismissed in favor of

that case or, at a minimum, transferred to the Pennsylvania district court addressing Splenda's false and misleading advertising in full, for the following reasons:

- ***Merisant sought to resolve this dispute through ADR, but McNeil evaded it*** – Almost two months ago, Merisant filed the first complaint in this dispute, bringing a challenge to Splenda's false and misleading advertising campaign at the Better Business Bureaus' well-respected, industry alternative dispute resolution body known as the National Advertising Division ("NAD").  Recognizing the misleading tendency of McNeil's Splenda advertising campaign, the NAD opened an investigation, and asked McNeil to provide substantiation for the claim that Splenda is "made from sugar so it tastes like sugar," and explain why McNeil is leading consumers to believe that Splenda contains sugar or is natural – both of which are false.  In a striking show of bad faith, McNeil led both Merisant and the Better Business Bureaus to believe McNeil was participating in the NAD's ADR process, only to file this purely-anticipatory declaratory judgment action on the eve of McNeil's NAD response deadline.  In this way, McNeil intentionally evaded that ADR process, burdening both the public and the judicial system with this dispute and setting a horrible precedent undermining alternative dispute resolution.

- ***McNeil's tactical decision to file its declaratory action in Puerto Rico is blatant forum shopping*** – McNeil sneaked off from the NAD, filing this case when and where it did, for a reason:  so that its false Splenda advertising campaign would not be promptly addressed by the advertising experts at the NAD – an ADR process McNeil itself "frequently" uses as "a challenger" to ***other*** company's advertising (Compl. ¶ 39) – or referred by the NAD to the Federal Trade Commission for McNeil's failure to substantiate or alter its misleading campaign.  Worse still, McNeil tactically filed this anticipatory suit in an attempt to strip Merisant of the forum of its choice absent ADR, the Eastern District of Pennsylvania – the location of McNeil's headquarters, management, and the very advertising and marketing personnel involved in the conduct at issue.  Whether because McNeil wants to hide its deceptive conduct from its hometown consumers in Pennsylvania, or because it seeks to intentionally create unnecessary litigation costs for Merisant and third-party witnesses, McNeil's tactical forum shopping should not be tolerated.

- ***McNeil's unripe declaratory judgment action is jurisdictionally improper*** – McNeil filed this suit without a reasonable apprehension of imminent litigation and, thus, its complaint fails to satisfy the jurisdictional requirements of Article III and the Declaratory Judgment Act.  Moreover, McNeil's complaint is nothing more than an effort to preempt this dispute from being heard in a more apt forum selected by the true plaintiff in this case, Merisant.  As other courts in this Circuit have held, McNeil's 'race to the courthouse' was a "misuse of the Declaratory Judgment Act to gain procedural advantage and preempt the forum choice of the plaintiff [and thus] militates in favor of dismissing

the declaratory judgment action." *EMC Corp. v. Roland*, 916 F. Supp. 51, 54 (D. Mass. 1996).

- ***The conduct at issue took place and the parties and witnesses involved in this dispute are largely in Pennsylvania, and none are in Puerto Rico*** – The design and implementation of the Splenda marketing campaign at issue, as well as the witnesses and documents to be involved in this case, are largely at or near McNeil's headquarters in Pennsylvania.  Notably, none of them are in Puerto Rico, and McNeil's complaint tellingly does not contend otherwise.  Trial of this action in Pennsylvania will be more convenient to all parties and witnesses, and will not burden this Court with a dispute not properly before it or in Puerto Rico at all.  These facts not only support dismissal, but counsel in favor of, at a minimum, a transfer of this action to the Eastern District of Pennsylvania – the district that is home to McNeil's headquarters and the pending affirmative suit by Merisant against McNeil over Splenda's false advertising.

For these reasons and those set forth herein, McNeil's declaratory judgment complaint should be dismissed or, at a minimum, transferred in favor of the pending suit in the Eastern District of Pennsylvania.

## FACTUAL AND PROCEDURAL BACKGROUND

### McNeil's False and Misleading Advertising for Splenda[®]

McNeil Nutritionals, LLC and its predecessor and parent McNeil-PPC, Inc. (collectively, "McNeil") manufacture and distribute an artificial sweetener product in the United States under the brand name Splenda.  To promote this artificial sweetener, McNeil has created an entire advertising campaign designed to convey to consumers that Splenda – flavored with the synthetic sweetening compound 4-chloro-4-deoxy-$\alpha$-D-galactopyranosyl-1,6dichloro-1,6-dideoxy-$\beta$-D-fructofuranoside (which McNeil and its partners prefer to call "sucralose") – is nothing more than real sugar without the calories.  McNeil delivers that message consistently through statements, representations, and depictions on Splenda's packaging, in print, television, radio, Internet, and point-of-sale advertising, and in sales presentations and communications to individuals in the health and medical fields.  These statements and representations are both literally and impliedly false and mislead consumers.  For that reason, Splenda's false advertising is now subject to ***multiple*** challenges and lawsuits for misleading the public by both ***consumers*** and ***multiple*** competitors.  *See Patton v. McNeil Nutritionals, LLC*, No. 1-04-cv-031807 (Cal.

Super. Ct. Santa Clara filed Dec. 6, 2004)(consumer class action complaint) (Exh. 9)[1]; *The Sugar Ass'n, Inc. v. McNeil-PPC, Inc.*, No. CV 04-10077 DJF (C.D. Cal. filed Dec. 10, 2004)(competitor suit)(Exh. 8); *Merisant Co. v. McNeil Nutritionals, LLC*, No. 04-cv-5504 (E.D. Pa. filed Nov. 26, 2004)(affirmative suit between these parties)(Exh. 7).[2]

Merisant's affirmative lawsuit challenges McNeil's use of the Splenda "Sugar Logo," featuring the phrase "Made From Sugar," and the Splenda "Tagline," that claims that Splenda is "Made From Sugar So It Tastes Like Sugar." (E.D. Pa. ¶¶ 12-15.)[3]  Neither of these statements is true.  As McNeil itself sheepishly admits in the fine print on the side of its packaging, Splenda is not made from sugar.  Splenda is made from "dextrose" and "maltodextrin" – two fillers or 'bulking agents' to affect its appearance to consumers – and the synthetic sweetening compound 4-chloro-4-deoxy-α-D-galactopyranosyl-1,6dichloro-1,6-dideoxy-β-D-fructofuranoside.  (E.D. Pa. ¶¶ 16-18.)  McNeil and its affiliates prefer to use the consumer-oriented name "sucralose" to refer to this synthetic chemical ingredient, most certainly because it was designed to sound like 'sucrose,' the scientific term for real sugar.  But sucralose is *not* sugar.  In fact, sucralose is over 600 times sweeter than sugar.  In addition, there is no scientific connection between the taste of Splenda, and the taste of sugar.  (E.D. Pa. ¶¶ 19-20.)  Besides these literally false claims, McNeil uses these "sugar" slogans in context with other images in its advertising campaign to create the false impression that Splenda is or contains real sugar, and that Splenda is natural.  (E.D. Pa. ¶¶ 21-25.)

---

[1]    Unless otherwise noted, the exhibits cited herein are attached to the December 10, 2004 Declaration of Jonathan D. Brightbill in Support of Merisant Company's Motion to Dismiss Anticipatory Declaratory Judgment Action, filed concurrently herewith.

[2]    Indeed, in light of three related cases against McNeil pending in different federal district courts and at least one consumer class action (that McNeil may attempt to remove to federal court) – as well as the potential for others due to the breadth of McNeil's misleading Splenda campaign – Merisant has petitioned for the federal Judicial Panel on Multidistrict Litigation to transfer these related cases, including this declaratory judgment action if not dismissed, to a single district court for centralized pre-trial proceedings pursuant to 28 U.S.C. § 1407.

[3]    Citations to Merisant Company's Complaint to the United States District Court for the Eastern District of Pennsylvania (Exh. 7), which lays out in detail the false and misleading advertising scheme of McNeil, are designated herein as "E.D. Pa. ¶ __."

**Because Consumers and Health Professionals Are Confused and Misled By
McNeil, Merisant Challenged Splenda's Advertising in the Alternative
Dispute Resolution Forum Provided by the Better Business Bureaus**

McNeil's false and misleading advertising campaign has now taken hold, resulting in actual consumer confusion and injury to competitors (such as Merisant).  Further reflecting this disturbing trend, the impact of McNeil's deceptive messaging now extends beyond average consumers, and is powerful enough to mislead doctors, nutritionists, and other industry personnel and health professionals.  Merisant cited just some of the many such examples of this confusion in its complaint to the United States District Court for the Eastern District of Pennsylvania, where McNeil has its principal place of business.  (E.D. Pa. ¶¶ 30-37.)

In response to McNeil's misleading advertising campaign, on October 22, 2004, and well before McNeil's action in this Court, McNeil concedes Merisant first "***filed a lengthy challenge to McNeil's advertising*** and package for Splenda with the National Advertising Division of the Council of Better Business Bureaus ("NAD")."[4]  (Compl. ¶ 31.)  The Better Business Bureaus' NAD is a highly-respected, alternative dispute resolution forum, used by businesses and advertisers to provide an efficient and self-regulated solution to advertising disputes.  (Compl. ¶ 32.)  This privately-funded forum helps conserve judicial resources for the public and achieve the fair and speedy administration of justice.  (Compl. ¶ 31.)  Indeed, ***except for this case***, "McNeil frequently participates in" and uses the NAD when it is the "challenger," and McNeil concedes to being "a strong supporter of the NAD self-regulatory process."  (Compl. ¶ 39.)  Proceedings before the NAD are kept confidential until the NAD's experienced staff completes its investigation.  NAD Procedural Rule 2.1.E (Exh. 5).  In addition, in order to utilize the NAD's self-regulatory procedures, NAD's rules require that a challenger such as Merisant ***must forgo the opportunity to challenge the advertising in question in a court of law*** while the NAD process is underway.  *See* NAD Rule 2.2.B (providing that the NAD will discontinue its investigation if advertising disputes are subject to judicial proceedings).

---

[4]        Hereinafter, all emphasis to citations is added unless otherwise noted.

**Although There Was No Prospect of Litigation, McNeil Undermined**
**Alternative Dispute Resolution and Filed this Speculative and**
**Contingent Declaratory Judgment Action to Avoid NAD Scrutiny**

Although participation before the Better Business Bureaus is voluntary, contrary to McNeil's assertions, McNeil did not politely "decline to participate in Merisant's NAD challenge." (Compl. ¶ 42.) Rather, on October 28, 2004, the NAD informed McNeil that the challenge Merisant filed was substantial enough to warrant investigation by the NAD, and requested that McNeil substantiate its advertising claims. (Compl. ¶ 38.) While McNeil could have "decline[d] to participate" in the NAD process pursuant to NAD Rule 2.1.E (Compl. ¶ 42), McNeil did not do so, as it suggests. The reason McNeil did not is because such a refusal to participate and substantiate its advertising would have led the NAD to report McNeil's false and misleading advertising to the Federal Trade Commission ("FTC"). *See* NAD Rule 2.1.E.

Instead, aware of the inaccuracies in its Splenda advertising campaign and eager to stymie and delay an investigation by either the NAD or the FTC, McNeil filed this declaratory judgment action against Merisant. In doing so, McNeil waited until the eve of the deadline for its NAD submission, and filed this action without *any* prior notice to Merisant or the NAD.[5] McNeil then disingenuously informed the NAD not that McNeil had decided "to decline to participate," as McNeil has represented to this Court (Compl. ¶ 42), but that the NAD was *required* to "close this challenge on an administrative basis pursuant to [NAD] Rule 2.2B(i)(b) because the advertising claims at issue are the subject of pending litigation." (Letter from Zalesin to NAD (Exh. 4)) (citing NAD Rule 2.2.B(i)(b)). Thus, by filing this declaratory judgment action, McNeil forum-shopped this dispute right out of the NAD – and by not formally declining to participate, McNeil prevented the NAD from reporting McNeil's false and misleading advertising to the FTC, as NAD rules provide. Indeed, despite McNeil's "frequent"

---

[5] Indeed, even for several days *after* McNeil had filed its anticipatory complaint in this Court, McNeil led Merisant to believe that it intended to and would participate in the NAD's self-regulatory process. To that end, McNeil sought and obtained from Merisant an extended briefing schedule before the NAD based upon McNeil's purported need for more time to prepare a response and coordinate their witnesses' and expert consultants' holiday schedules. Acting in good faith, Merisant informed McNeil that it would grant such an extension. (*See* Exh. 3.)

use of the NAD when it disputes one of its competitor's advertising (Compl. ¶ 39), McNeil chose to impose the burden of hearing this dispute on the public and the courts, but not even the federal court where McNeil is based or where the actions at issue took place.

### Merisant Files a Affirmative Complaint In Pennsylvania Because Neither McNeil, Merisant, Nor the Witnesses, Events and Evidence At Issue, Are Located In or Occurred In Puerto Rico.

After receiving notice of McNeil's declaratory judgment action, the NAD informed Merisant of McNeil's gambit, and that the NAD would indeed be bound to close the investigation by to the NAD's own rules.  Left with no other recourse to contest McNeil's false and misleading claims, Merisant was therefore forced filed its own complaint in the United States District Court for the Eastern District of Pennsylvania on November 26, 2004 – *just two business days* after McNeil served Merisant with its declaratory judgment complaint from this Court.  As opposed to McNeil's premature declaratory judgment action dealing only with the "logo" and "slogan" on Splenda's advertising and packaging (*see* Compl. at 13, Prayer (1)), Merisant's complaint in Pennsylvania consists of five claims, including contests to the carefully-crafted implied representations that McNeil's Splenda product is "natural" and contains real sugar.  Merisant's affirmative complaint in Pennsylvania also charges McNeil with violating Pennsylvania common law of unfair competition.

The Eastern District of Pennsylvania was and is the logical forum for this dispute because *McNeil has its principal place of business in Fort Washington, Pennsylvania*, less than 15 miles from the Eastern District Courthouse.  In addition, the Splenda advertising campaign and packaging at issue were conceived of and developed *in Pennsylvania*, the witnesses that Merisant will subpoena for deposition and trial from McNeil and third parties are *in Pennsylvania* and therefore subject to compulsory process in that jurisdiction, the documents and other evidence that relate to the creation of the Splenda advertising campaign *are in Pennsylvania*, and *Pennsylvania law will apply* to Merisant's common law unfair competition claim.  In addition, the vast majority of the broadcast, print, and radio advertising that provides the context and support for McNeil's misleading messaging is used by McNeil exclusively in the

7

continental United States, and not Puerto Rico.  Finally, Merisant is not based in Puerto Rico, but has its principal offices in Illinois, far closer to Pennsylvania that Puerto Rico.  (Compl. ¶ 8.)  In short, while McNeil may wish to take advantage of this Court and have the widespread false advertising for one of its leading products determined far from its home and the majority of its consumers, litigation in the Eastern District of Pennsylvania – McNeil's own home base – would be more economical, convenient, and cost-efficient for the parties, witnesses, and other discovery.

**ARGUMENT**

McNeil's anticipatory attempt to have Merisant's dispute determined in a Puerto Rico forum is improper and its complaint should be dismissed.  ***First***, under Article III of the Constitution, federal courts only have jurisdiction to hear declaratory judgment claims that are ripe for judicial intervention.  The pendency of Merisant's NAD challenge prior to the filing of McNeil's declaratory judgment suit meant that there was no prospect of a judicial action by Merisant, and, thus, no "imminent" harm that McNeil had standing to challenge.  ***Second***, McNeil's speculative declaratory judgment action bears little connection to this forum, and is instead a dispute involving a Pennsylvania and Illinois company over an advertising campaign designed and implemented in the Eastern District of Pennsylvania.  As a result, it can be litigated far more efficiently in Pennsylvania, and the burdening of this Court with a non-Puerto Rican dispute can be avoided.  Thus, this case should be dismissed in favor of the affirmative or 'coercive action' pending in McNeil's home district.  ***Third***, at a minimum, this case should be transferred to the Eastern District of Pennsylvania.  All of the relevant factors – including the convenience of both the parties and potential witnesses – weigh heavily in favor of litigating this matter there.

**I.    The Federal Courts Lack Jurisdiction Over McNeil's Speculative and Unripe Claim for Declaratory Judgment and McNeil Was Without Standing to Assert this Purely Speculative Claim.**

"Federal courts are confined by Article III of the Constitution to deciding only actual cases or controversies."  *McInnis-Misenor v. Maine Med. Ctr.*, 319 F.3d 63, 67 (1st Cir.

2003)(citing *Allen v. Wright*, 468 U.S. 737 (1984)).  Therefore, in order to bring a claim in federal court, a plaintiff must establish standing to sue, and that the claims it wishes to assert are ripe for adjudication; these are separate "inquiries [that] overlap." *Id.* at 69.  "The party invoking federal jurisdiction bears the burden of establishing these elements."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  Moreover, "[t]his court has subject matter jurisdiction over plaintiff's declaratory judgment action **only** if a case or controversy existed between the parties **at the time the complaint was filed**."  *Davox Corp. v. Digital Sys. Int'l, Inc.*, 846 F. Supp. 144, 147 (D. Mass. 1993).  Because McNeil did not establish these essential elements in its complaint, this action must be dismissed.

As the First Circuit has made clear, the Declaratory Judgment Act "does not itself confer subject matter jurisdiction."  *Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 534 (1st Cir. 1995).  Rather, Article III standing requires a "threatened injury [that] is impeding and concrete … [t]here must be some **immediacy** or imminence to the threatened injury."  *McInnis-Misenor*, 319 F.3d at 68.  In addition, the courts must consider "prudential concerns focusing on the policy of judicial restraint from unnecessary decisions."  *Id.* at 70.

Here, McNeil sneaked to the courthouse in Puerto Rico and filed a federal declaratory judgment action against Merisant although there were no "reasonable grounds" to believe McNeil was about to be subjected to litigation or harm by Merisant.  *Id.* at 69.  "[D]eclaratory relief is appropriate when and only when one or both parties have pursued a course of conduct that will result **in imminent and inevitable litigation** unless the issue is resolved by declaratory relief."  12 *Moore's Federal Practice*, § 57.22(2)(c) (Matthew Bender 3d. ed.); *see also Davox Corp.*, 846 F. Supp. at 147 (there must be "an objectively reasonable apprehension **of litigation** on the part of the" person to be subjected to declaratory judgment).  Merisant's filing of a claim with the Better Business Bureaus' NAD proved precisely the contrary – there was no "imminent" or "inevitable" threat of litigation because Merisant had chosen the NAD as an express alternative to litigation knowing that litigation would result in the closure of Merisant's own NAD complaint.  NAD Rule 2.2.B.(i)(b).  Stated another way,

9

Merisant's complaint to the NAD was mutually exclusive of litigation – there was no threat of litigation by Merisant or any harm to McNeil.

The lack of any "impending and concrete" injury to McNeil from Merisant is readily apparent from the face of McNeil's complaint. McNeil said it "*believes*" that Merisant *might* commence an action "*if*" McNeil elected not to participate in NAD review of its claims. (Compl. ¶ 44.) But that hypothetical injury is a red herring. McNeil did *not* elect not to participate in the NAD process – even though that is what it told this Court – which *might* have subjected it to an FTC investigation had McNeil pursued that course of action. NAD Rule 2.2.E. McNeil instead filed this complaint against Merisant while the NAD's proceedings were still pending and *while there was no "impending and concrete" threat of any harm from Merisant*. *McInnis-Misenor*, 319 F.3d at 68. In short, McNeil faced no prospect of harm from Merisant "at the time the complaint was filed," and, thus, lacked standing to sue. *Davox Corp.*, 846 F. Supp. at 147.

These points also underscore a further jurisdictional frailty: McNeil's declaratory judgment claim was not ripe for federal adjudication. The ripeness inquiry consists of two considerations: the fitness of the issues for judicial review and the hardship to the parties of withholding review. *Ernst & Young*, 45 F.3d at 535. A "claim is unripe" where it "depends on serendipitous events that may not occur as anticipated – or may not occur at all." *Id.* at 538. That was precisely the case here. So long as Merisant's NAD challenge was pending, there was no threat of any litigation or harm to McNeil by Merisant. It was only McNeil's own action of filing this *unripe* claim, and McNeil's own subsequent demand to the NAD that its proceeding be closed as a result of this jurisdictionally-improper complaint (Exh. 4), that McNeil faced any prospect of litigation or harm. But McNeil's self-made "harm" from filing a federal lawsuit cannot, itself, establish a ripe claim and create federal jurisdiction. Such reasoning is entirely circular. Rather, because McNeil lacked standing to pursue its unripe claims "at the time the complaint was filed," McNeil's declaratory judgment claims must be dismissed for want of federal subject matter jurisdiction. *Davox Corp.*, 846 F. Supp. at 147.

**II.   McNeil's Anticipatory Declaratory Judgment Action Is a Classic Instance of Bad-Faith Forum Shopping Which Should Be Dismissed.**

Even if McNeil's harm had been sufficiently concrete and ripe at the time McNeil filed its complaint, the "Declaratory Judgment Act confers a discretion on the courts rather than an absolute right upon the litigants, so courts have ***broad discretion to decline to hear*** or enter a declaratory judgment." *Nortek, Inc. v. Molnar*, 36 F. Supp. 2d 63, 69 (D.R.I. 1999). The Act "neither imposes an unflagging duty upon the courts to decide declaratory judgment actions nor grants an entitlement to litigants to demand declaratory remedies." *Ernst & Young*, 45 F.3d at 534 (internal quotations omitted). Here, where McNeil concedes "Merisant [first] filed a lengthy challenge to McNeil's advertising and packaging" in the NAD's alternative forum (Compl. ¶ 31); where the equities of convenience and efficiency weigh strongly in favor of Pennsylvania; where an action is pending in Pennsylvania that is an actual, so-called "coercive action"[6] (as opposed to a merely speculative declaratory judgment matter) with more comprehensive claims and allegations; and where McNeil has plainly forum shopped through bad-faith and duplicitous conduct, the "balance of equities tips decidedly in favor of dismissing this action in favor of the [Pennsylvania] action." *EMC Corp. v. Roland*, 916 F. Supp. 51, 54 (D. Mass. 1996).

"***First***, the present dispute bears a relatively minimal connection to [Puerto Rico] as compared with [Pennsylvania]." *Id.* at 53. In *EMC*, that court considered whether, under First Circuit precedent, a declaratory judgment action in Massachusetts should be dismissed in favor of litigation in the forum where the "coercive action" was filed. *Id.* at 54. The court in *EMC* held that the declaratory action was not proper and should be dismissed because, among other reasons, "it appear[ed] that most of the ***events*** relevant to the [claim] occurred in Georgia." *Id.* at 53. Here, not only did "most of the relevant events" occur in Pennsylvania, but the actual plaintiff, Merisant, chose to bring its own action in Pennsylvania, which is also home to

---

[6]     The term "coercive action" in these situations has been used by other courts to refer to an affirmative, concrete suit for judicial relief as opposed to a merely "declaratory" action of the sort filed by McNeil. *See*, *e.g.*, *G. Heileman Brewing Co. v. Anheuser-Busch, Inc.*, 873 F.2d 985, 989 (7th Cir. 1989)("The controversy has ripened to a point there one of the parties could invoke a coercive remedy (***i.e. a suit for damages or an injunction***) but has not done so").

McNeil's headquarters, employees, and principal place of business.  *See also Nortek, Inc.*, 36 F. Supp. 2d at 70 (dismissing a declaratory action in favor of the forum of choice of the actual plaintiff).

In fact, in a decision scarcely a month old, the Eastern District of Pennsylvania recently denied *another* attempt by McNeil to avoid its home forum.  There, the court considered an abundance of evidence regarding McNeil's operations, and concluded that McNeil's operations, including "a majority (51%) of its roughly 3,410 employees," real estate of "$124,577,784 and … tangible property" of "$217,803,693," and the production capacity of "approximately 59% of the net sales," are located in Pennsylvania, making Fort Washington its principal place of business.  *Dunson v. McNeil-PPC, Inc.*, No. Civ.A. 04-2020, 2004 WL 2600631, at *3 (E.D. Pa. Nov. 16, 2004)(Exh. 10).  McNeil admits this very fact in its complaint. (Compl. ¶ 6.)  In contrast to Pennsylvania, Puerto Rico has "minimal connection" to "the present dispute," and should therefore be spared the obligation of expending its judicial resources on McNeil's claim. *EMC Corp.*, 916 F. Supp. at 54.[7]

*Second*, a declaratory judgment action should give way to an actual, concrete "coercive action" on the same issues.  As McNeil admits, *Merisant acted first*, and "filed a lengthy challenge" with the Better Business Bureaus' well-respected NAD forum long before this declaratory judgment action.  (Compl. ¶ 31.)  Thus, Merisant was the first to file a complaint relating to Splenda's advertising.  Nonetheless, to the extent that McNeil was the first party to

---

[7]     Indeed, McNeil's purported basis for filing this suit in Puerto Rico is that McNeil earlier challenged the trade dress of a *Merisant* artificial sweetener product sold by a corporate entity not even a party to McNeil's declaratory judgment suit – Merisant's Puerto Rico subsidiary. That product, which was sold in limited quantities exclusively in Puerto Rico (and not at all in the mainland United States) is not at issue in this case.  As McNeil is well-aware, the facts and circumstances surrounding this dispute over *McNeil's* crafting of a false advertising campaign in the United States have no connection to the facts and circumstances of another case relating to Merisant's packaging for a Puerto Rico-specific product.  Demonstrating the weakness of McNeil's purported basis for filing this action here, it is telling that McNeil *did not name either McNeil's or Merisant's Puerto Rico subsidiaries* (who were both named by McNeil in the lawsuit over Merisant's Puerto Rico product packaging) *as parties in its declaratory judgment complaint* – but instead named only the parent companies located outside of Puerto Rico.

covertly 'race to the courthouse' and burden the courts and public with the cost of hearing this dispute (notwithstanding that McNeil "frequently participates in NAD proceedings" when it challenges other's advertising, Compl. ¶ 39), McNeil's claim is purely one for declaratory relief based on speculation that Merisant might initiate litigation after the NAD.  (Compl. ¶ 44.)

It is a "'misuse of the Declaratory Judgment Act to gain procedural advantage and preempt the forum choice of the plaintiff in the coercive action[, and this] militates in favor of dismissing the declaratory judgment action.'" *EMC Corp.*, 916 F. Supp. at 54 (quoting *Federal Ins. Co. v. May Dep't Stores Co.*, 808 F. Supp. 347, 350 (S.D.N.Y. 1992)).  "Where, as here, the declaratory judgment action is filed in anticipation of [a coercive] action, the [coercive] action should proceed, even if filed four days later."  *See Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749 (7th Cir. 1987).  As such, district courts **routinely** dismiss first-filed declaratory judgment actions in favor of the so-called "coercive action" by the "real" plaintiff, in both false advertising and other cases.  *See, e.g., FPC Corp. v. Uniplast Inc.*, 964 F. Supp. 1212 (N.D. Ill. 1997)(dismissing first filed action seeking declaration that party did not engage in false advertising in favor of coercive action filed eight days later); *Mill Creek Press Inc. v. The Thomas Kinkade Co.*, No. CIVA.03:-CV-1213-G, 2004 WL 2607987, *9 (N.D. Tex. Nov. 16, 2004)(dismissing first filed action seeking declaration that party did not engage in false advertising in favor of later-filed coercive action where "plaintiffs filed this … action for the improper purpose of subverting the real plaintiff's advantage by filing this suit in a forum of their choosing.")(internal quotations omitted) [8]

---

[8]     *See also Institute for Studies Abroad, Inc. v. International Studies Abroad Inc.*, 263 F. Supp. 2d 1154, 1159 (S.D. Ind. 2001)(dismissing first filed declaratory judgment action in favor of coercive suit where "[Defendant in declaratory action] is the natural plaintiff to prosecute the violations of the Agreement which it alleges have occurred"); *Great Am. Ins. Co. v. Houston Gen. Ins. Co.*, 735 F. Supp. 581, 586 (S.D.N.Y. 1990)(dismissing first filed declaratory judgment action where "[t]here is a pending coercive action … that will provide plaintiff in the instant action with every opportunity to protect the rights it sought adjudicated in the instant action"); *Crown Cork & Seal Co. v. Borden, Inc.*, 779 F. Supp. 33, 34 (E.D. Pa. 1991)(dismissing first filed declaratory judgment action in favor of coercive suit where declaratory judgment complaint was "nothing more than an attempt by [plaintiff] to forum-shop its way out of liability")(internal quotations omitted); *Alphatronix, Inc. v. Pinnacle Micro, Inc.*, 814 F. Supp. 455, 456 (M.D.N.C.

Moreover, McNeil's pretending to participate in the NAD process – negotiating an extension of time to respond and for exchanges of consumer data on the misleading impact of the Splenda advertising – only further counsels against allowing McNeil's declaratory judgment action to stand.  McNeil's diversions and sneaking to the courthouse is a clear "misuse of the Declaratory Judgment Act to gain procedural advantage and preempt the forum choice of the plaintiff in the coercive action."  *Id.* at *8 (quoting *Great Am. Ins. Co. v. Houston Gen. Ins. Co.*, 735 F. Supp. 581, 586 (S.D.N.Y. 1990)).  Such inequitable conduct and obvious bad-faith forum shopping "militates ***in favor of dismissing the declaratory judgment*** action."  *Id.*; *see also Nortek*, 36 F. Supp. 2d at 70 (noting such facts constitute the "special circumstances that convince [courts] to disregard the first-filed rule and thus decline jurisdiction over [a] declaratory judgment action"); *S & S Candies, Inc. v. Hershey Foods Corp.*, No. 00 Civ 5243 (DLC), 2000 WL 1425092, *2 (S.D.N.Y. Sept. 26 2000)(dismissing first filed declaratory judgment action filed on deadline for plaintiff to respond to cease and desist later where allowing otherwise "would condone [plaintiff's] race to the courthouse"); *NSI Corp. v. Showco, Inc.*, 843 F. Supp. 642, 645 (D. Or. 1994)(dismissing first filed declaratory judgment action in trademark dispute where "[defendant], having been led to believe that settlement negotiations were in progress, did not know that the race to the courthouse had begun"); *Solna Web Inc. v. Printed Media Servs., Inc.*, No. 90-0433-cv-W-6, 1990 WL 357918, *3 (W.D. Mo. Aug. 31, 1990)(dismissing first filed declaratory judgment action where it was clear that "[w]hen plaintiff requested additional time to make a settlement offer, it also wanted the time in order to secretly prepare its declaratory judgment action.").

Indeed, dismissal is particularly appropriate here, where McNeil's request for declaratory relief does not specifically address all of the competitor and consumer concerns raised by Merisant's Pennsylvania suit – including that McNeil's advertising leads people to

---

1993)(dismissing first filed declaratory judgment action in favor of coercive suit where "[t]he unmistakable inference [was] that Alphatronix filed this action in anticipation of coercive litigation").

believe that Splenda is "natural" and contains real sugar.  (Compl. at 13, Prayer (1).)  The "courts look with disfavor on piecemeal litigation of the matters in controversy and may refuse declaratory relief on those grounds."  10B James Alan Wright, *et al.*, *Federal Practice and Procedure: Civil 3d* § 2757, at 476-77 (noting *Alphatronix, Inc. v. Pinnacle Micro, Inc.*, 814 F. Supp. 455 (D.N.C. 1993), where an "[a]ction for declaratory judgment that advertisement was not misleading would not settle entire controversy between competitors and was improper use of the procedure since it anticipated coercive litigation by the competitor.").

   ***Third***, as evidenced by the fact that this forum bears minimal connection to McNeil's claim, it is plain that McNeil's filing of this action is a bad-faith attempt at forum shopping.  12 Moore, *supra*, § 57.42(3)("a declaratory relief plaintiff may not rush to file in federal court solely to evade the forum choice of the plaintiff in the coercive action (the declaratory judgment defendant).  ***When the case has limited connection to the declaratory relief forum, it is likely that the suit was filed as a preemptive measure***."); *see also EMC Corp.*, 916 F. Supp. at 53 ("it is a fair inference that EMC filed its suit in the hope of preempting Roland's expected choice of forum").  Indeed, McNeil's complaint admits as much.  (Compl. ¶ 44.)  Nonetheless, the "Declaratory Judgment Act 'was not designed to countenance such procedural manipulation of forums and actions'" as McNeil attempts here.  *EMC Corp.*, 916 F. Supp. at 54 (quoting *Great Am. Ins. Co. v. Houston Gen. Ins. Co.*, 735 F. Supp. 581, 586 (S.D.N.Y. 1990)).[9]

---

[9] McNeil's allegation that Merisant's NAD challenge was somehow "retaliatory" is without any basis in fact and is nothing more than a façade to attempt to both justify its forum shopping and prejudice Merisant.  McNeil's allegations of retaliation are not only undermined by the fact that the experienced personnel at the NAD found McNeil's advertising sufficiently troubling to warrant the Better Business Bureaus' investigation, but also by the fact that Merisant is not the only one accusing McNeil of running a false and misleading advertising campaign for Splenda.  Both a class of concerned consumers in California and other competitors such as the producers of sugar are likewise challenging Splenda's misleading advertising.  *See Patton v. McNeil Nutritionals, LLC*, No. 1-04-cv-031807 (Cal. Super. Ct. Santa Clara filed Dec. 6, 2004)(consumer class action complaint) (Exh. 9); *The Sugar Ass'n, Inc. v. McNeil-PPC, Inc.*, No. CV 04-10077 DJF (C.D. Cal. filed Dec. 10, 2004)(competitor suit)(Exh. 8).  Consumer advocates are also concerned.  Ethical Corporation Magazine was one of the few to see through

**Fourth**, to advance the important "policy of judicial restraint from unnecessary decisions," a dismissal is particularly appropriate here.  *McInnis-Misenor*, 319 F.3d at 70.  As McNeil concedes, "McNeil frequently participates in NAD proceedings, both as an advertiser and a challenger, and [claims to be] ***a strong supporter of the NAD*** self-regulatory process." (Compl. ¶ 39.)  Nonetheless, McNeil's filing of a declaratory judgment action was obviously an effort to ***evade*** the NAD's self-regulatory process.  Therefore, in weighing the prudential considerations, this Court should strongly consider the negative implications of encouraging McNeil's (and others who may follow) abuse of the declaratory judgment process – as an end-run around efficient self-regulation and alternative dispute resolution – and the additional burdens McNeil's conduct has placed and will continue to place on the judiciary and the public. "This court [should] not exercise its discretionary jurisdiction over this action because it would be inappropriate to reward – and indeed abet – conduct which is inconsistent with the sound policy of promoting extrajudicial dispute resolution, and conservation of judicial resources." *Davox Corp.*, 846 F. Supp. at 148.

In light of these factors, the "balance of equities tips decidedly in favor of dismissing this action in favor of the [Pennsylvania] action." *EMC Corp.*, 916 F. Supp. at 54. As the court in *Nortek* held, "Dismissal, rather than transfer or stay, is the correct remedy because keeping this action active merely duplicates litigation expenses." 36 F. Supp. 2d at 71. Here, like in *Nortek*, both parties to this case are parties to the Pennsylvania action, "which presents all the issues that need to be resolved." *Id.*

---

McNeil's "sleight-of-hand marketing" and call McNeil to task for "encourag[ing] perceived misconceptions about Splenda's naturalness" by "playing the natural card" in its advertising and marketing campaign.  *See* Exh. 15.

For McNeil to now suggest that Merisant's original NAD challenge and its Pennsylvania lawsuit – as well as the lawsuits of consumers and other competitors alike – are 'retaliatory' is just another step in McNeil's campaign to avoid scrutiny of its campaign to mislead consumers for its financial benefit.

**III.    At a Minimum, Transfer of this Action to the Eastern District of Pennsylvania Is Appropriate.**

At a minimum, if not dismissed, this action should be transferred to the Eastern District of Pennsylvania under 28 U.S.C. § 1404(a).  Section 1404(a) allows a district court to "transfer any civil action to any other district where it might have been brought."  28 U.S.C. § 1404(a).  The decision to transfer should be made on an "individualized, case-by-case consideration of convenience and fairness … ***This burden is lightened when a plaintiff has not brought suit on his 'home turf' or at the site of the activities at issue in the law suit***."  *McEvily v. Sunbeam-Oster Co.*, 878 F. Supp. 337, 344 (D.R.I. 1994); *see also Outek Caribbean Distribs., Inc. v. Echo, Inc.*, 206 F. Supp. 2d 263, 266-67 (D.P.R. 2002).  Appropriate factors for consideration "include judicial and litigant economy, the just and effective disposition of disputes, the possible absence of jurisdiction over all necessary and desirable parties, as well as a balancing of conveniences that may favor the second forum." *Dupont Pharms. Co. v. Sonus Pharms., Inc.*, 122 F. Supp. 2d 230, 231 (D. Mass 2000).  Courts also consider the public interest factors under the heading of "the interests of justice."  *Aviles v. Cantieri Di Baia-Mericraft S.P.A.*, 943 F. Supp. 154, 156 (D.P.R. 1996)(granting transfer).  Here, these factors weigh heavily in favor of transfer.

There can be little debate that litigation in the Eastern District of Pennsylvania will be far more economical and less expensive for ***both*** parties.  As discussed above, McNeil is not a Puerto Rico company, but has its ***principal place of business in Fort Washington, Pennsylvania***, less than 15 miles from the court to which Merisant seeks transfer.  *See Dunson*, 2004 WL 2600631, at *3 (Ex. 10).  In addition, Merisant has its headquarters in Illinois, far closer to Pennsylvania than Puerto Rico – "and [Merisant's] inconvenience must be considered as well."  *Federal Ins. Co. v. May Dep't Stores Co.*, 808 F. Supp. 347, 351 (S.D.N.Y. 1992).  Tellingly, neither of the two corporate parties named in this action have offices in Puerto Rico, and neither corporate entity is directly responsible for the advertising or product distribution for the Puerto Rico market.  Instead, both of the parties' Puerto Rico subsidiaries (Merisant Puerto

Rico, Inc. and Johnson & Johnson Hemisferica, S.A.) were left off of the complaint by McNeil for good reason – they have nothing to do with this dispute.

More importantly, the false and misleading Splenda advertising campaign at issue was conceived of and implemented by McNeil marketing employees working in Fort Washington, Pennsylvania. "In such circumstances, *the plaintiff's choice of forum is not entitled to the weight* it would otherwise be accorded if the operative facts occurred either in whole or in part in" the venue of the declaratory judgment. *Subaru of New England, Inc. v. Subaru of Augusta, Inc.*, 121 F.R.D. 1, 2 (D. Mass. 1988); *Elbalah v. Republic Ins. Co.*, 879 F. Supp. 3, 5 (D.R.I. 1995)("the weight accorded to [plaintiffs'] choice is diminished when the forum selected is not one where the events underlying the suit occurred."). Again, on these facts, district courts *routinely* transfer cases to the more convenient forum having greater contacts with parties, witnesses, and evidence in the dispute.[10]

Transfer to the Eastern District of Pennsylvania will also allow both the parties and the court easier access to the witnesses, as well as any evidence. Only in the Eastern District of Pennsylvania will McNeil's employees and many third-party witnesses be directly "subject to the subpoena power," weighing in favor of that forum. *Elbalah*, 879 F. Supp. at 5. Indeed, the

---

[10]     *See F.A.I. Elecs. Corp. v. Chambers*, 944 F. Supp. 77, 81 (D. Mass. 1996)(transferring first filed action from Massachusetts to Texas where "most of FAI's personnel with knowledge of the events that gave rise to this action are located in Texas and … FAI maintains an office in Texas"); *Recoton Corp. v. Allsop, Inc.*, 999 F. Supp 574, 577 (S.D.N.Y. 1998)(transferring first filed action to Washington where "[t]he majority, if not all, of Allsop's officers, employees and inventors who can be called as witnesses are located in Washington, as are its business records"); *Ricoh Co., v. Aeroflex Inc.*, 279 F. Supp. 2d 554, 558 (D. Del. 2003)(transferring first filed action from Delaware to California because "no party maintains any facilities, personnel or documents in Delaware … no acts of alleged infringement have taken place in Delaware … [and] no relevant third-party witnesses … reside in Delaware"); *Bayer Bioscience N.V. v. Monsanto Co.*, No. C.A. 03-023 GMS, 2003 WL 1565864, *2 (D. Del. Mar. 25, 2003)(transferring first filed action to Missouri where "there is little connection between Delaware and this action or the parties … [and] no party maintains operations in Delaware"); *Riviera Trading Corp. v. Oakley, Inc.*, 944 F. Supp. 1150, 1159 (S.D.N.Y. 1996)(transferring first filed action to California where the "balance of convenience tips in favor of California, particularly in light of the centrality of evidence regarding Oakley's patents – which evidence is located exclusively in California – to the litigation of this dispute").

"convenience of the witnesses is probably *the most important factor* and the factor most frequently mentioned." *Atari v. United Parcel Serv., Inc.*, 211 F. Supp. 2d 360, 362 (D. Mass. 2002)(quotation omitted).   "The location, transportation and storage of a large quantity of documents is [also] a factor that can militate in favor of transfer." *McEvily*, 878 F. Supp. at 348. Indeed, the proximity to witnesses and documents is particularly important in this case, where McNeil's complaint signals McNeil's intent to engage in far-reaching and expensive discovery of witnesses, experts, and documents – in addition to a desire to avoid the merits of Merisant's claims with time-consuming pretrial motions.  (*See* Compl. ¶¶ 33, 35, 40.)  Given that McNeil's desire to withhold the evidence about its true intent and recognition of the consumer confusion, discovery may require frequent refereeing by the court, and because this case will focus on testimony from scientific experts in biochemistry and molecular biology, as well as commercial survey experts (Compl. ¶ 36), who are located outside of Puerto Rico, the most economical and cost-effective forum for this litigation is in the same district as where McNeil has its headquarters.

Numerous other factors also weigh in favor of transferring this case.  The Eastern District of Pennsylvania has a less congested docket than this District, with fewer pending cases per judgeship.[11]  The Eastern District of Pennsylvania is also more familiar with Pennsylvania law.  This is significant because Merisant's coercive complaint in Pennsylvania charges McNeil with violating Pennsylvania's common law of unfair competition.  *See Subaru of New England*, 121 F.R.D. at 2 (transferring action involving Maine law to Maine because "there is an interest in having state laws interpreted by Federal Courts sitting in that state").  A transfer to Pennsylvania

---

[11]     Notwithstanding this Court's reputation for effective case management, as the "Judicial Caseload Profiles" in the *Federal Court Management Statistics* demonstrate, this Court already has more than enough disputes legitimately relating to Puerto Rico on its docket.  Since 1998, the Judges in this district have had to contend with more pending cases per judgeship (*e.g.*, 330 in 2003) than the E.D. Pa. (*e.g.*, 292 in 2003).  *See* http:// www.uscourts.gov/ cgi-bin/ cmsd2003.pl. The workload asked of judges in this District relative to the Eastern District of Pennsylvania has only been increased in recent months, as four new district court judges were confirmed in the Eastern District of Pennsylvania in 2004.  *See* http: //www.uscourts.gov/ cfapps/ webnovada/ CF_FB_301/ index.cfm?fuseaction=Reports.ViewConfirmations.

further serves the interests of justice of Pennsylvania – McNeil's principal place of business and home of most of its employees – which has "a local interest in having localized controversies decided at home." *Elbalah*, 879 F. Supp. at 5.  Puerto Rico has no such strong "local interest" in policing McNeil's business operations back in Pennsylvania.  McNeil's attempt to race to this courthouse also suggests that McNeil would prefer that its false advertising campaign not be dealt with in McNeil's hometown, where the misleading acts themselves took place, yet where it purports to be a model corporate citizen – instead filing some 1500 miles away where no one back home will notice the extent of its misconduct.

As discussed above, numerous precedents reject the notion that this forum should hear this complaint simply because McNeil won the 'race to the courthouse.'  "While the first-filed rule may ordinarily be a prudent one, it is so only because it is sometimes more important that there be a rule than that the rule be particularly sound." *Nortek, Inc.*, 36 F. Supp. 2d at 69. Here, the application of that rule would not be sound.

First, as McNeil concedes, ***Merisant filed the first complaint*** regarding Splenda's advertising (Compl. ¶ 31) – selecting the same alternative dispute resolution forum for advertising in which "McNeil frequently participates." (Compl. ¶ 39.)  Merisant should not be penalized for initially sparing the judiciary and public the cost of hearing this dispute.  A plaintiff's choice of forum is also not determinative "when none of the operative facts in a case have any connection with the plaintiff's choice of forum."  *Atari*, 211 F. Supp. 2d at 363 (internal quotations omitted); *see also EMC Corp.*, 916 F. Supp. at 53.  None of the operative facts regarding McNeil's false and misleading Splenda advertising campaign occurred in Puerto Rico.  Tellingly, no part of McNeil's declaratory judgment complaint states otherwise.

Moreover, courts are particularly inclined to dismiss or transfer actions to the venue of any subsequently-filed 'coercive action' by the true plaintiff where – as here – the declaratory judgment action was a procedural maneuver for forum shopping.  *See*, *e.g.*, *EMC Corp.*, 916 F. Supp. at 53-54 (applying First Circuit precedent, the court noted that the relation between the parties and the location of the witnesses and evidence provided "a fair inference"

that the declaratory judgment action was an attempt at forum shopping); *Unique Indus., Inc. v. Lisa Frank, Inc.*, No. 93 Civ. 8037 (LAP), 1994 WL 525041, *3 (S.D.N.Y. Sept. 23, 1994)(noting, where Unique suddenly broke off efforts to resolve the dispute out of court and filed suit without any notice, the court had no choice but to "infer that Unique's filing was motivated by a desire to determine the forum for litigation," thus warranting transfer).  McNeil should not now be permitted to benefit from its attempt "to gain procedural advantage and preempt the forum choice of the plaintiff."  *EMC Corp.*, 916 F. Supp. at 54; *see also Continental Ins. Co. v. Wickes Co.*, No-Civ 8215 (KMW), 1991 WL 183771, *5 (S.D.N.Y. Sept. 6, 1991)(finding that "the filing of an anticipatory declaratory judgment action" would require transfer "[e]ven if the balance of convenience did not favor [the second filed forum]" because of "the interest of the judicial system in discouraging forum shopping").

## CONCLUSION

For the reasons set forth above, Merisant respectfully requests that the Court grant Merisant's Motion to Dismiss.  McNeil's anticipatory and premature declaratory judgment action fails to satisfy this Court's jurisdictional requirements and the balance of equities and hardships strongly counsel in favor dismissal of this case in favor of already-pending litigation brought by the true plaintiff at interest, Merisant, at McNeil's principal place of business in the Eastern District of Pennsylvania.  In the alternative, Merisant respectfully requests this Court order a transfer of this action to the Eastern District of Pennsylvania, for consolidation with the more-numerous claims already pending in that forum.


Dated:  December 13, 2004                    Respectfully submitted,



                                   ___s/ Jorge Roig-Colón_____
                                   Salvador Antonetti-Zequeira
                                   USDC-PR No.  113910
                                   Heriberto J. Burgos-Pérez
                                   USDC-PR No. 204809
                                   Jorge Roig-Colón
                                   USDC-PR No. 220706
                                   FIDDLER, GONZÁLEZ & RODRÍGUEZ, P.S.C.
                                   254 Muñoz Rivera Avenue, 6th Floor
                                   Hato Rey, Puerto Rico 00918
                                   Telephone:  (787) 759-3176
                                   Facsimile:  (787) 759-3109

                                   Of Counsel:

                                   Gregg F. LoCascio
                                   *Pro Hac Vice Admission Request Pending*
                                   KIRKLAND & ELLIS LLP
                                   655 Fifteenth Street, N.W.
                                   Washington, D.C.  20005
                                   Telephone:  (202) 879-5000
                                   Facsimile:   (202) 879-5200

                                   ***Attorneys for Defendant***
                                   ***Merisant Company***