# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **MCNEIL NUTRITIONALS, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | Civil Action No.: 04-2291 (JP) |
| **v.** ) | |
| ) | |
| **MERISANT COMPANY,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## MERISANT'S OPPOSITION TO McNEIL'S MOTION TO TRANSFER

Salvador Antonetti-Zequeira
USDC-PR No. 113910
Heriberto J. Burgos-Pérez
USDC-PR No. 204809
Jorge Roig-Colón
USDC-PR No. 220706
FIDDLER, GONZÁLEZ & RODRÍGUEZ, P.S.C.
254 Muñoz Rivera Avenue, 6th Floor
Hato Rey, Puerto Rico 00918
Telephone:  (787) 759-3150
Facsimile:  (787) 759-3109

Gregg F. LoCascio, *Pro Hac Vice*
KIRKLAND & ELLIS LLP
655 15th Street, NW
Washington, DC 20005
Telephone:  (202) 879-5290
Facsimile:  (202) 879-5200

***Attorneys for Defendant***
***Merisant Company***

## <u>TABLE OF CONTENTS</u>

BACKGROUND ....................................................................................................................2

ARGUMENT........................................................................................................................8

I.   McNeil Has Failed to Prove Any of the Elements of a Related Case................................8

II.  McNeil's Assertions of "Retaliation" and "Unclean Hands" Are Spurious and Irrelevant to the Proper Inquiry for Determining a "Related Case." ...............................12

CONCLUSION...................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agee v. Paramount Communications, Inc.*,
  853 F. Supp. 778 (S.D.N.Y.1994),
  *rev'd on other grounds*, 59 F.3d 317 (1995)................................................... 11

*American Home Prods. Corp. v. Johnson & Johnson, McNeilab, Inc.*,
  654 F. Supp. 568 (S.D.N.Y. 1987) .................................................................. 14

*Bacher v. McNeil Nutrionals LLC*,
  No. BC326265 (Cal. Super. Ct. Los Angeles filed Dec. 21, 2004) ................................ 13

*Bell v. Steelwide Records LTD*,
  761 F.2d 67 (1st Cir. 1985)............................................................................. 14

*Board of Sch. Dir. v. Wisconsin*,
  102 F.R.D. 596 (E.D. Wis. 1984) .................................................................... 12

*Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*,
  284 F.3d 302 (1st Cir. 2001)........................................................................... 5

*Clark v. Ins. Car Rentals, Inc.*,
  42 F. Supp. 2d 846 (N.D. Ill. 1999) ................................................................. 11

*College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*,
  948 F. Supp. 400 (D.N.J. 1996) ...................................................................... 10

*Dale v. Executive Office of the President*,
  121 F. Supp. 2d 35 (D.D.C. 2000).................................................................. 8, 9

*Patton v. McNeil Nutritionals, LLC*,
  No. 1-04-cv-031807 (Cal. Super. Ct. Santa Clara filed Dec. 6, 2004) ........................... 12

*The Sugar Ass'n, Inc. v. McNeil-PPC, Inc.*,
  No. CV 04-10077 DJF (C.D. Cal. filed Dec. 10, 2004).................................................. 13

*Thomas v. Nat'l Football League Players Ass'n*,
  1992 WL 43121 (D.D.C. Feb. 18, 1992) ........................................................... 9

**Other Authorities**

L.Cv.R. 26(a) .................................................................................................. 6, 8

L.Cv.R. 3.2...................................................................................................... 8

L.Cv.R. 3.2(d) ........................................................................................... 9, 11, 12, 15

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF PUERTO RICO

|  |  |  |
|---|---|---|
| **MCNEIL NUTRITIONALS, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | Civil Action No.: 04-2291 (JP) |
| **v.** | ) | |
| | ) | |
| **MERISANT COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MERISANT'S OPPOSITION TO McNEIL'S
## MOTION TO TRANSFER

McNeil began this litigation by forum-shopping and filing this dispute over its deceptive Splenda® marketing and advertising more than 1500 miles from its conduct in Pennsylvania. Now, with its present motion to transfer, McNeil goes an extraordinary step further: "Judge-shopping." Hoping to avoid having its deceptive Splenda® ad campaign and the jurisdictional defects of its Puerto Rico complaint promptly addressed by Your Honor, McNeil asks this Court to ignore the safeguards of random judicial selection and give this case to a judge who McNeil hopes will view its deceptive conduct more favorably.

Although McNeil tries to suggest otherwise, in fact, there is no connection between this false advertising case and an earlier, dormant trade dress case before Judge García-Gregory. That case had nothing to do with McNeil's intentionally false and deceptive Splenda® advertising campaign. Indeed, McNeil's color photo of a product that is no longer sold by Merisant Puerto Rico, Inc. – a defendant in the earlier trade dress dispute and, tellingly, ***not*** named in this litigation – bears no connection to this case. Instead, that photo is an improper attempt by McNeil to prejudice Merisant so McNeil might avoid scrutiny for its wrongful acts. What is at issue in ***this*** case is what McNeil doesn't show the Court – that its advertising and packaging misrepresent the truth about Splenda®:

# Splenda's Misleading Labeling



| Large "SUGAR" Claim on Front | But, NO SUGAR actually in Splenda |
|---|---|

Despite McNeil's misleading proclamations in its Sugar Logo (shown above left) and Tagline ("Made from sugar so it tastes like sugar"), McNeil's own fine-print ingredient panel (shown above right) illustrates the falsity of McNeil's advertising campaign.[1]  On the central question of this dispute, the undeniable answer is that Splenda® does not contain any sugar at all and is sweetened with an artificial sweetener.  Yet, McNeil continues to mislead consumers to believe that Splenda® contains sugar and is natural – issues neither raised by the parties nor considered by the Court in the earlier trade dress dispute.  Rather, the only "connection" the earlier case has to this case is McNeil's desire to have a Judge it believes will view its evasive tactics and delay more favorably than Your Honor, an exercise in Judge-shopping that should be denied.

## BACKGROUND

### McNeil's Splenda® Advertising Campaign Is False and Resulting In Widespread Consumer Deception

On October 22, 2004, in response to McNeil Nutritionals LLC and McNeil-PPC Inc.'s (collectively, "McNeil") false and misleading advertising campaign for its Splenda® brand artificial sweetener (detailed in Merisant's Memorandum In Support of Motion to Dismiss, docket no. 6), Merisant "filed a lengthy challenge to McNeil's advertising and package for Splenda® with the National Advertising Division of the Council of Better Business Bureaus

---

[1]      That same informational panel further undermines its forum arguments; the panel shows Splenda® is marketed and distributed by McNeil in Fort Washington, Pennsylvania, the site of Merisant's pending affirmative suit against McNeil.

("NAD")." (Compl. ¶ 31.)[2]  Merisant brought the NAD challenge because McNeil's false and misleading Splenda® advertising campaign, the subject of this action, is succeeding.  Consumers have been and continue to be deceived into believing that Splenda® "tastes like sugar" because it is "made from sugar"; that Splenda® contains real sugar; and that Splenda® is natural.  In fact, Splenda® does not contain sugar and is far from natural, but is made using a patented, chemical sweetening agent synthesized through the use of the poisonous, industrial chemical phosgene.[3]

Evidence abounds that McNeil's false Splenda® advertising is injuring both consumers and competitors alike.  Indeed, the damage from McNeil's deceptive messaging now extends far beyond consumers, and is powerful enough to mislead doctors, nutritionists, and health professionals.  For example:

- In a 2004 Philadelphia Inquirer article, Dr. Mitchell Hecht, a physician specializing in internal medicine, advised a mother that she should consider giving her daughter "*the natural low-calorie sweetener* Splenda."  (Docket No. 6, Exh. 1, NAD Ex. 9.)[4]

- In an online question and answer session with Dr. Arthur Agatston, the well-known cardiologist and author of the South Beach Diet, a consumer posed the question "I'm a little concerned about Splenda because other 'no sugar' sweeteners ended up having a chemical that was not good, does Splenda have anything that would be harmful?"  Dr. Agaston replied that "*Splenda is natural.*"  (Docket No. 6, Exh. 1, NAD Ex. 12.)

- In an August 6, 2004 Internet Broadcasting Systems article entitled "Is Sugar Substitute Right for You?  Splenda May be Healthiest Substitute Choice" that was published online and broadcast on local television stations across the country, Debra Hayes, a dietician at the University Hospital in Cleveland, claimed that Splenda® is considered better because it is *more natural* than other sweeteners, which are made of artificial chemicals.  (Docket No. 6, Exh. 1, NAD Ex. 5.)

---

[2]     Hereinafter, all emphasis in quotations is added unless otherwise noted.

[3]     This process is detailed in McNeil and its associates' patent filings (*see, e.g.,* United States Patent No. 4,980,463) and confirmed by filings McNeil is required to make with the EPA under federal law due to its use of the toxic chemical phosgene during its Splenda manufacturing process.   *See*, *e.g.*, http://oaspub.epa.gov/enviro/tris_control.tris_print?tris_id=36553MCNLSINDUS; http://www.bt.cdc.gov/agent/phosgene/basics/facts.asp (Centers for Disease Control facts about Phosgene).

[4]     Except where otherwise noted below, the exhibits cited herein were filed on December 13, 2004, in Docket No. 6.  These exhibits were attached to the December 10, 2004 Declaration of Jonathan D. Brightbill in Support of Merisant Company's Motion to Dismiss Anticipatory Declaratory Judgment Action.

- A June 2004 report analyzing the sugar and sweetener industry by Mintel – a respected supplier of competitive media, product and consumer intelligence – characterized Splenda® as a "natural product" belonging in its own unique class of sweeteners.  Mintel recognized actual confusion in the trade, and then added some of its own: "Sucralose, *a form of sugar* that does not get digested, has surpassed all other non-sugar sweeteners in popularity, in part because the product is *perceived as healthier than artificial sweeteners*" and "Splenda… [is] a *natural alternative* to artificial sweeteners."  (Docket No. 6, Exh. 1, NAD Ex. 13.)

Given the massive advertising effort McNeil puts behind this misleading 'sugar' messaging, it is not surprising that even health and medical professionals now mistakenly believe that Splenda® contains sugar and is natural.  In fact, in McNeil brochures targeting health care professionals and on its website, McNeil itself uses the word "natural" to misleadingly describe the process by which McNeil synthesizes sucralose for Splenda®, thereby reinforcing its phony sugar association.  (Docket No. 6, Exh. 1, NAD Exs. 19 & 21.)  McNeil's references to "natural" elements and additives are disingenuous, to say the least, and are part of its calculated effort to support the "natural" misimpressions surrounding Splenda®.

Besides consumers and health professionals, McNeil's false and misleading claims also damage competitors such as Merisant – which suffer lost and wrongfully diverted customer sales due to McNeil's deceptive Splenda® campaign.  Again, as Mintel noted in the same June 2004 report (discussed above), because "non-sugar sweeteners … are chemically derived … public perception may have created a climate that aids the rapid growth in popularity of sucralose, *which is touted as being ... 'natural' ... .*"  Moreover, "the increase in sugar and sucralose usage and the decline in non-sugar sweetener usages indicate that respondents [to the Simmons NCS survey] *are turning away from artificial products and are using 'real' sweeteners (either sugar or sucralose*, which is made from sugar.)."  (Docket No. 6, Exh. 1, NAD Ex. 13.)

### To Delay Consideration of Merisant's Complaints, McNeil Filed This Jurisdictionally-Improper Declaratory Judgment Action

On November 18, 2004, while the alternative dispute resolution process before the National Advertising Division was still pending, McNeil filed (but declined to serve on Merisant for five days) a jurisdictionally-improper Complaint in this Court.  As McNeil itself then framed the central legal and factual issues in dispute, it seeks a "declaratory judgment that

McNeil's packaging and advertising for its best selling no-calorie sweetener Splenda® *is neither 'false' nor 'misleading'* to consumers."   (Compl. ¶ 1.)   Specifically, this action concerns whether the advertising claims that Splenda® is "made from sugar" and "'made from sugar, so it tastes like sugar' – are literally false and misleading to consumers." (Compl. ¶ 2.)  To stymie Merisant's own false advertising complaints against McNeil, as well as three other false advertising suits by consumers and other competitors relating to Splenda®, McNeil seeks a declaration that its "advertising and packaging claims … do not mislead consumers" – *i.e.*, are true.  (Compl. ¶ 5.)  But McNeil would rather not have Your Honor promptly address the merits of that issue, because:

- Splenda® is not "made from sugar," and contains no natural sugar at all – as Splenda's FDA "Ingredients" panel states in the fine print;

- Splenda® does not "taste like sugar" because it is "made from sugar" – instead, it is a unique synthetic taste that comes from the chemical structure of the artificial sweetening agent in Splenda;

- Splenda's advertising misleads consumers into believing that Splenda® contains real sugar – which it does not; and

- Splenda's advertising misleads consumers into believing that Splenda® is a natural product – as opposed to the synthetic chemical product that it really is.

After having the opportunity to obtain and review McNeil's marketing documents and depose its executives and agents – primarily from McNeil's Fort Washington, Pennsylvania headquarters where its marketing operations are located – the evidence will show that McNeil has knowingly and intentionally deceived consumers and the trade.  As First Circuit case law makes clear, McNeil's intentional effort to deceive consumers with its misleading advertising will be an important and unique legal and factual issue to this dispute.[5]

---

[5]   As the First and other Circuits have held, where an advertiser intentionally misleads consumers – as McNeil has done here – there is a ***presumption*** that the advertising claims in question are misleading and damaging to consumers.  *Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 317 (1st Cir. 2001).

**Seeking to Delay Justice and Continue Deceiving Consumers,
McNeil Seeks to Transfer this Suit to a Judge other than Your Honor**

Apparently pleased with the preliminary result in the "trade dress" case pending before Judge García-Gregory,[6] McNeil now seeks to have this unrelated advertising action before him.  Thus, on December 9, 2004, McNeil filed its "Motion to Transfer Related Case to Judge García-Gregory" – thereby seeking to have Your Honor off this case before McNeil must reveal any documents or witnesses through Your Honor's proactive ISC process.  Indeed, perhaps hoping to have this Court act before Merisant could respond, McNeil did not serve that motion on Merisant's counsel (despite expressly naming Merisant's Puerto Rico counsel on the Civil Cover Sheet for this action).  Instead, McNeil used regular U.S. Mail to send the motion to Merisant's registered agent in Delaware.[7]  Upon learning of this motion, Merisant sought and obtained leave to file this opposition to McNeil's improper attempt to have this case taken off of Your Honor's docket and away from the prompt scrutiny of the ISC process.

In reality, this case has nothing to do with the dormant Trade Dress Case before Judge García-Gregory.  Rather, as McNeil itself summarizes this dispute, it is "between McNeil and Merisant *regarding the literal truthfulness and messages conveyed by McNeil's advertising* and packaging for Splenda." (Compl. ¶ 9.)  Critically, however, at no point does McNeil's complaint state that this action has anything to do with a similarity between Splenda's packaging and the physical appearance of defunct packaging for Merisant's Puerto Rico Same® with Sugar product.  On the contrary, as McNeil admits, the Trade Dress Case did not involve the truth of

---

[6]      There is currently a dormant case pending before Judge García-Gregory over the appearance of the box formerly used by Merisant's Puerto Rico subsidiary for an artificial sweetener product sold only in Puerto Rico (called Same® with Sugar).  No discovery was ever conducted in that case, nor did McNeil ever provide its Initial Disclosures as required by Rule 26(a), but a preliminary injunction was issued (with respect to the former package's appearance) six months after the parties had a hearing on the similarity of the physical appearance of the packages.  That case is hereinafter referred to as the "Trade Dress Case."

[7]      Somehow, McNeil's mailing did not actually arrive at Merisant's registered agent until December 22, 2004, thirteen days after it was filed.  While not fully explaining the almost two-week delay, the postmark of that service copy revealed that McNeil's Puerto Rico counsel did not mail the motion as claimed on the Certificate of Service on December 9th, but instead sometime the next day.

Splenda's advertising, but only whether a product of Merisant's Puerto Rico subsidiary – a company not even a party to this litigation – was previously sold "in packaging confusingly similar [in appearance] to that of Splenda."  (Compl. ¶ 11.)  Simply put, the Trade Dress Case about the physical appearance of the Same® with Sugar box has nothing to do with this Complaint about the meaning and truthfulness of Splenda's advertising claims.

That these cases are unrelated is apparent from McNeil's failure to identify any findings from the Trade Dress Case that are relevant to deciding the factual and legal issues here. McNeil **cannot** do so because there is no meaningful relation between these cases:

| Factual or Legal Issues McNeil Asserts to be Relevant to this Dispute | Findings from the "Trade Dress Case" Resolving this Issue |
|---|---|
| Whether Splenda's advertising statement "made from sugar" is literally true. (Compl. ¶ 2; *see also id.* ¶ 9.) | None |
| Whether Splenda's advertising statement "made from sugar, so it tastes like sugar" is literally true. (Compl. ¶ 2; *see also id.* ¶ 9.) | None |
| Whether Splenda "derives its sugar-like taste from the remarkable structural similarity between (sugar) and sucralose, the sweetening ingredient in Splenda." (Compl. ¶ 2.) | None |
| Whether McNeil's Splenda "advertising and packaging claims … mislead consumers." (Compl. ¶ 5.) | None |
| Whether "McNeil's packaging and advertising for Splenda are 'misleading' because, even if they are literally true, they falsely imply that … Splenda contains real sugar." (Comp. ¶ 37) | None |
| Whether "McNeil's packaging and advertising for Splenda are 'misleading' because, even if they are literally true, they falsely imply that … Splenda is a 'natural' product." (Comp. ¶ 37) | None |

In fact, in arguing for the "truthfulness" of its advertising, at no point does McNeil draw on the preliminary findings or record from the Trade Dress Case.  Instead, McNeil pleads entirely new factual material stating self-serving and self-funded "junk science" completely outside the bounds of the prior Trade Dress Case.  (*See* Compl. ¶¶ 27-30 (concerning whether "The Made From Sugar/Tastes Like Sugar Logo and Related Advertising Claims Are True").)

Notwithstanding that the legal and factual issues in the Trade Dress Case have no relation or overlap with issues in this false advertising suit, McNeil contends that the current action is "related" because Judge García-Gregory has allegedly acquired "familiarity" with sugar substitutes sold in Puerto Rico by the subsidiaries of the parties to this suit.  McNeil's real goal, however, is obvious and its rationale transparent.  McNeil would rather have this case heard by Judge García-Gregory because it does not wish to have its deceptive Splenda® advertising subjected to prompt inquiry under Your Honor's ISC process, just as it did not wish for the experts at the NAD to promptly review its Splenda® advertising campaign.[8]

### ARGUMENT

McNeil's attempt to take this case away from Your Honor and have it considered by Judge García-Gregory – avoiding the protections afforded by random judicial assignment – should be carefully scrutinized.  The "party who seeks to avoid random []assignment **bears the burden** of showing that the cases are related."  *Dale v. Executive Office of the President*, 121 F. Supp. 2d 35, 37 (D.D.C. 2000)(rejecting plaintiffs' claim that cases were related because of overlapping background facts).  The rationale for imposing this burden on McNeil in these circumstances is straightforward:

> The fundamental rationale for the general rule requiring random assignment of cases is to ensure greater public confidence in the integrity of the judicial process.  The rule guarantees fair and equal distribution of cases to all judges, avoids public perception or appearance of favoritism in assignments and reduces opportunities for judge-shopping.

*Id.*

### I.   McNeil Has Failed to Prove Any of the Elements of a Related Case.

Despite the important protections that courts have sought to advance through the policy of random case assignment, McNeil contends that Local Rule 3.2 provides authority for its motion to transfer.  It does no such thing.  Indeed, McNeil fails to even cite to the

---

[8]   McNeil's reluctance to reveal information about its Splenda® campaign is also demonstrated by its refusal in Merisant's Pennsylvania suit to provide initial disclosures as required under Rule 26(a).

"relatedness" criteria set forth in Local Rule 3.2(d), much less present facts or arguments showing how those criteria are met in this case.  Local Rule 3.2(d) identifies three requirements that must be proven for the transfer McNeil seeks:

(1)   "both actions involve the same parties **and** are based on the same or a similar claim";  or

(2)   "both actions involve the **same** property, transaction, or event";

(3)   "both actions involve similar questions of fact and the same question of law **and** their assignment to the same judge is likely to effectuate a substantial saving of judicial effort."

L.Cv.R. 3.2(d).  McNeil fails to prove any of these elements, let alone all of them.

**First**, the Trade Dress Case did not involve the same "claim" as this false advertising dispute.  This action concerns McNeil's false, misleading and unfair TV, radio, Internet, print, and packaging **advertising** statements, made primarily in the continental United States (where McNeil does the bulk of its advertising).  As the June 2004 Mintel Report noted (Docket No. 6, Exh. 1, NAD Ex. 13), these deceptive statements are causing consumers to buy Splenda® instead of Merisant's Equal® and NutraSweet® products, as well as the artificial sweeteners and sugar products of other competitors.  By contrast, the Trade Dress Case concerns the **physical appearance** (or "trade dress") of a product box that was sold by Merisant's Puerto Rico subsidiary **solely** in Puerto Rico (that box has since been changed) – an entirely different claim relying on entirely different evidence, witnesses and testimony.

Furthermore, the Trade Dress Case did not involve the same parties.  For related cases, there is "a **strict** position that 'the same parties' means **identical** parties, not parties in interest."  *Dale v. Exec. Office of the Pres.*, 121 F. Supp. 2d 35, 37 (D.D.C.)(quoting *Thomas v. Nat'l Football League Players Ass'n*, 1992 WL 43121, *1 (D.D.C. Feb. 18, 1992)).  The present litigation is solely between McNeil, a Pennsylvania company, and Merisant, an Illinois company.  By contrast, the Trade Dress Case concerned alleged conduct that occurred exclusively in Puerto Rico, and therefore concerned Merisant's Puerto Rico subsidiary and McNeil's Puerto Rico distributor, Johnson & Johnson Hemisferica S.A. – neither of which are parties to this false

advertising case.   The omission of those Puerto Rico entities from McNeil's anticipatory declaratory complaint here is not only an important difference between the two suits, but underscores that this false advertising dispute has no connection to and does not belong in Puerto Rico in the first place.

**Second**, the Trade Dress Case did not involve the same property, transaction, or event as this dispute.   The specific "event" at issue here is McNeil's intentional creation and continued use of a deceptive advertising campaign by its marketing executives in Fort Washington, Pennsylvania.   The "transactions" at issue are deceived consumers' decisions to purchase Splenda® instead of other competitive products as a result of that campaign across the country.   By contrast, the "transactions" and "events" at issue in the Trade Dress Case are whether Puerto Rico consumers were confused into buying Same® with Sugar in place of Splenda® because of visual similarities in those boxes.   Thus, the relevant purchasing transactions and events in these cases are not the same.

**Third**, the cases do not involve common questions of fact or the same question of law.   Rather, the relevant factual questions in dispute in each case are different.   In this case, the witnesses and evidence will focus on **McNeil's** intentionally deceitful advertising campaign created and implemented in Fort Washington, Pennsylvania.   Moreover, the expert testimony on the literal falsity of Splenda's claims in this false advertising case will come from scientific experts on chemical and taste reception (*see*, *e.g.*, Compl. ¶¶ 27-30) – both critical issues totally unrelated to the earlier Trade Dress Case focused exclusively on the appearance of a Puerto Rico product box.

Further, despite McNeil's half-hearted suggestion to the contrary, the questions of law in the two cases are dramatically different.   As McNeil knows (but attempts to muddy in its motion), the "false advertising prong of the Lanham Act **is separate and distinct** from the trademark infringement prong" at issue in the Trade Dress Case.   *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 948 F. Supp. 400, 426 n.25 (D.N.J. 1996); *see also Stanfield v. Osborne Indus., Inc.*, 52 F.3d 867, 873 (10th Cir.)(finding "two distinct bases of

liability under [15 U.S.C.] section 1125"). Thus, rather than presenting "the same question of law" considered in the Trade Dress Case (as required for transfer under as Local Rule 3.2(d)), this false advertising action is based on a "distinct cause of action" which will turn on different case law. *Agee v. Paramount Communications, Inc.*, 853 F. Supp. 778, 790 (S.D.N.Y.1994) (noting that "section 43(a) [of the Lanham Act] provides two ***distinct*** causes of action"), *rev'd on other grounds*, 59 F.3d 317 (1995). Judge García-Gregory did not deal with false advertising in the Trade Dress Case at all, and has no more experience than Your Honor on false advertising law.

In addition, consolidating these cases before a single judge will not "effectuate a ***substantial*** saving of judicial effort," as required by Local Rule 3.2(d) before denying Merisant the protections of random selection. McNeil's judicial efficiency argument boils down to this: because Judge García-Gregory has previously seen the Splenda® box showing the ***existence*** of the phrase "made from sugar so it taste like sugar," mere "background facts" make this action somehow related to the Trade Dress Case. (Compl. ¶ 14.) As a matter of law, McNeil is wrong. No evidence was presented (much less findings made) about the ***truth*** of McNeil's Splenda's advertising, nor about McNeil's intentional efforts to create consumer confusion. Moreover, the prior case did not concern false advertising case law, presumptions or principles. Where, as here, "there are few common issues involved in [the] cases; the number and complexity of the issues unique to each case predominates over the common issues" and transfer is improper. *Clark v. Ins. Car Rentals, Inc.*, 42 F. Supp. 2d 846, 848 (N.D. Ill. 1999)(finding "no showing that the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort"). Similarly, transfer is improper where (1) discovery in this action will not concern the same witnesses, evidence, or experts (which for this action are all outside of Puerto Rico); (2) there are no "substantive motions that would be able to be filed or decided jointly"; and (3) each case concerns "unique issues of fact and law." *Id.* at 848-49. Given these facts, "this new case is not sufficiently related to the [previous] case to foster judicial economy."

*Board of Sch. Dir. v. Wisconsin*, 102 F.R.D. 596, 598 (E.D. Wis. 1984)(holding case not related even though it concerned some of the same parties and background facts).

In sum, McNeil cannot establish the relatedness factors required as a threshold for transfer under Local Rule 3.2(d).  Instead, McNeil's attempt at transfer is a transparent effort to avoid prompt scrutiny of its deceptive ad campaign by Your Honor.

## II.    McNeil's Assertions of "Retaliation" and "Unclean Hands" Are Spurious and Irrelevant to the Proper Inquiry for Determining a "Related Case."

Because McNeil cannot establish the transfer criteria in Local Rule 3.2(d), McNeil instead attempts to prejudice the Court against Merisant and distract attention from Splenda's misleading advertising.  To that end, McNeil asserts that Merisant's complaint to the NAD and its lawsuit in Pennsylvania are nothing more than "retaliation" for the Trade Dress Case.   In addition to being legally irrelevant under Rule 3.2(d), McNeil's suggestion is demonstrably incorrect.  McNeil's "retaliation" allegations are impossible to square with the fact that consumers and health professionals throughout the United States are, in fact, confused by Splenda's advertising and mistakenly believe that Splenda® contains sugar and is natural. Indeed, as one objective commentator reports, McNeil is ***intentionally*** deceiving consumers and ***intentionally*** profiting from it:

> Sucralose is no more natural or safer than any other artificial sweetener. … In the case of Splenda, both the synthetic process to make it and the end product are straight from the laboratory.
>
> Equally disturbing, J&J [through its subsidiary McNeil] has encouraged perceived misconceptions about Splenda's naturalness to percolate among natural devotees, the fast growing sector in the food industry. "We had the Net buzz and chat-room stuff going," says Anne Rewey, Splenda marketing director for McNeil, J&J's Pennsylvania-based chemical division that developed the product.
>
> The public misconception about Splenda's naturalness has helped propel it past Equal to capture 30 percent of the lucrative tabletop sweetener market.

(Docket No. 6, Exh. 15.)  For this reason, Splenda's false advertising is now subject to ***multiple*** challenges and lawsuits for misleading the public by both ***consumers*** and ***multiple*** competitors. *See Patton v. McNeil Nutritionals, LLC*, No. 1-04-cv-031807, at ¶ 44 (Cal. Super. Ct. Santa Clara filed Dec. 6, 2004)(consumer class action)(docket no. 6, exh. 9); *Bacher v. McNeil*

*Nutrionals LLC*, No. BC326265 (Cal. Super. Ct. Los Angeles filed Dec. 21, 2004)(consumer class action); *The Sugar Ass'n, Inc. v. McNeil-PPC, Inc.*, No. CV 04-10077 DJF, at ¶ 11 (C.D. Cal. filed Dec. 10, 2004)(competitors' complaint)(docket no. 6, exh. 8).

   In addition to these pending lawsuits over Splenda's advertising, other organizations have recognized the misleading nature of McNeil's advertising:

- After receiving Merisant's challenge in October 2004, the advertising experts at the National Advertising Division opened an investigation into Splenda's advertising – which was underway until McNeil stymied it with this suit;

- Ethical Corporation magazine has cited McNeil for "sleight-of-hand marketing" and "encourag[ing] perceived misconceptions about Splenda's naturalness."

- The Women's Health Access Project recently accused the makers of Splenda with being deceptively ingenious by designing a marketing campaign to lead consumers to the false conclusion that Splenda is natural, when it is not.

In light of these numerous independent complaints, McNeil's "retaliation" claim is hollow, and should not stifle the public interest in stopping Splenda's deceptive advertising campaign.

   McNeil also makes unfounded allegations of "unclean hands," pretending to be concerned that the Puerto Rico product in the Trade Dress Case, Same® with Sugar, states "Made With Sugar" on its package.  But McNeil seeks to confuse the Court – because unlike Splenda's advertising, Merisant's Same® with Sugar statement is not false (nor does that product have anything to do with this dispute).  Merisant's Same® with Sugar product ***actually contains natural sugar*** – indeed, is "made with" 97% natural sugar (*i.e.*, sucrose) – just as its packaging states.  Splenda®, however, contains ***no*** sugar.  Moreover, McNeil's digression into natural sugar's "benefits" and use in Same® with Sugar is particularly unusual because the packaging of Same® with Sugar includes a specific explanation that, while Same® with Sugar is "Made with Sugar", it is "Sweetened with Low Calorie Sweeteners."

   McNeil's criticisms are particularly baffling because McNeil recently ***copied*** Merisant's Same® with Sugar innovation, and now sells its own variety of 'Splenda® with Sugar'

(marketed as "Splenda[®] Sugar Blend") (Exh. A)[9].  Unlike Same[®] with Sugar and McNeil's new Splenda[®] Sugar Blend (products that actually contain natural sugar), the advertising for the *original* Splenda[®] at issue in this case is false and misleading **because original Splenda contains absolutely no sugar**.

Moreover, McNeil knows that its "unclean hands" defense is without merit in the false advertising context.  Indeed, McNeil and its New York law firm have successfully argued against such defenses because there "is a strong public interest in the prevention of misleading advertisements, … a defense of unclean hands can only be established by clear, **unequivocal** and convincing evidence." *American Home Prods. Corp. v. Johnson & Johnson, McNeilab, Inc.*, 654 F. Supp. 568, 590 (S.D.N.Y. 1987)(rejecting an unclean hands defense to a claim of false advertising by McNeil); *see also Bell v. Steelwide Records LTD*, 761 F.2d 67, 76 (1st Cir. 1985)(rejecting the unclean hands defense in Lanham Act litigation as insufficient "to justify continuation of public confusion")(panel majority writing in concurring opinion).[10]

In sum, McNeil's "retaliation" and "unclean hands" arguments are a mere smokescreen designed to distract this Court from the relevant facts and transfer inquiry:  that the events, witnesses, and evidence relevant to **this** false advertising action are unrelated to any prior case in Puerto Rico and that this is a "distinct cause of action" involving separate questions of fact and law.

---

[9]    Indeed, McNeil differentiates its new 'Splenda[®] Sugar Blend' from 'Splenda[®]' and the advertising at issue in this case by stating that Splenda[®] Sugar Blend actually contains "pure sugar," just like Same[®] with Sugar.

[10]    For the same reasons, McNeil's contention that it should be able to continue to mislead the public because of an alleged laches defense is also mistaken.  *See American Home Prods.*, 654 F. Supp. at 590-91 ("Because of this keen public interest, … the defense of laches should be **sparingly** applied" in false advertising cases.)

## CONCLUSION

For the reasons set forth above, McNeil has not satisfied Local Rule 3.2(d) and fails to meet its burden of demonstrating that this case is related to the Trade Dress Case or that any proper reason exists to override random judicial selection.  As a result, Your Honor should not accept McNeil's invitation to delay this case and transfer it to McNeil's preferred Judge – instead, McNeil's Motion to Transfer should be denied.

Indeed, given the true nature of this dispute in Pennsylvania (and not Puerto Rico) – which will come clear through McNeil's initial disclosures and discovery of its advertising and marketing personnel, documents, and evidence located in Fort Washington, Pennsylvania – this jurisdictionally-improper declaratory judgment action should be dismissed or transferred to the Eastern District of Pennsylvania, as requested by Merisant's Motion to Dismiss filed December 13, 2004.

Dated:  December 27, 2004          Respectfully submitted,

                            /s/ Jorge Roig-Colón
                           Salvador Antonetti-Zequeira  (No. 113910)
Heriberto J. Burgos-Pérez  (No. 204809)
Jorge Roig-Colón (No. 220706)
FIDDLER, GONZÁLEZ & RODRÍGUEZ, P.S.C.
254 Muñoz Rivera Avenue, 6th Floor
Hato Rey, Puerto Rico 00918
Telephone:  (787) 759-3176
Facsimile:  (787) 759-3109

Gregg F. LoCascio, *Pro Hac Vice*
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C.  20005
Telephone:  (202) 879-5000
Facsimile:  (202) 879-5200

***Attorneys for Defendant***
***Merisant Company***

# EXHIBIT A

Splenda



- Privacy Policy
- Legal Notice

**HOME**   |   **PRODUCT INFORMATION**   |   **CUSTOMER SERVICE**   |   **LIFESTYLE ARTICLES**   |   search   **GO ▶**

- **About SPLENDA®** NO CALORIE SWEETENER
- **SPLENDA® Recipes**
- **Cooking & Baking Tips**
- **Diabetes & SPLENDA®** NO CALORIE SWEETENER
- **Healthcare Professionals**
- **SPLENDA® Press Room**
- **Buy SPLENDA® Products**

 SPLENDA® at Foodservice

SPLENDA® For Food & Beverage Manufacturers

SPLENDA® Canada



## Part SPLENDA®, Part Sugar,
# Pure Magic™!

New SPLENDA® Sugar Blend for Baking brings your favorite recipes to delectable new heights, because it makes your baked goods rise, spread, and brown - with a taste like pure sugar!  Imagine chewy cookies, fluffy meringues, moist cakes - with all the sweet, satisfying flavor and only half the sugar!



Just a half-cup of SPLENDA® Sugar Blend for Baking replaces a full cup of pure sugar. It's that easy! **Tell Me More! >>**

### Featured Sugar Blend for Baking Recipe: **Angel Food Cake**

**Have a question?** Visit our SPLENDA® Sugar Blend for Baking **FAQs** for answers!



## Sign up for the FREE SPLENDA® Recipe Club e-newsletter!

Be the first to get exclusive recipes from SPLENDA® No Calorie Sweetener by joining the SPLENDA® Recipe Club e-mail newsletter.   **JOIN NOW!**

**Featured SPLENDA® Sweetened Product**
**Kool-Aid® Jammers 10**



©McNeil Nutritionals LLC, 2004 Ft. Washington PA, USA.
All rights reserved. This site and its contents are intended for USA audiences only.
Questions or comments? Call **1-800-7-SPLENDA** or click here for **Customer Service**.

Splenda



• Privacy Policy
• Legal Notice

**HOME**  |  **PRODUCT INFORMATION**  |  **CUSTOMER SERVICE**  |  **LIFESTYLE ARTICLES**  |  search  |  **GO ▶**

▸ About SPLENDA®
  NO CALORIE SWEETENER
▸ SPLENDA® Recipes
▸ Cooking & Baking Tips
▸ Diabetes & SPLENDA®
  NO CALORIE SWEETENER
▸ Healthcare Professionals
▸ SPLENDA® Press Room
▸ Buy SPLENDA® Products



**Featured Recipe**
**Angel Food Cake >>**



Starring SPLENDA®
**Sugar Blend for Baking**


SPLENDA® at Foodservice


SPLENDA® For Food & Beverage Manufacturers


## SPLENDA® Sugar Blend for Baking



### SPLENDA® Sugar Blend for Baking is a unique mix of SPLENDA® Brand Sweetener and pure sugar.

It helps you reduce the sugar in your home baking, while keeping the great sugar taste your family loves!

- SPLENDA® Sugar Blend for Baking gives you the sweetness, volume, texture and moistness you expect in your baking – but with just half of the sugar you would usually use.

- **A half-cup** of SPLENDA® Sugar Blend for Baking **replaces a full cup of pure sugar.**

- SPLENDA® Sugar Blend for Baking is available in a two-pound bag that contains the same sweetness as in four pounds of pure sugar.

|  | SPLENDA® Sugar Blend for Baking | Sugar |
|---|---|---|
| **For recipe sweetening:** | 1/2 cup | 1 cup |
| Calories | 384 | 768 |
| Carbohydrate | 96 grams | 192 grams |
| **Per serving:** | 1/2 tsp. | 1 tsp. |
| Calories | 8 | 16 |
| Carbohydrate | 2 grams | 4 grams |

**? Have a question?**  Visit our SPLENDA® Sugar Blend for Baking FAQs for answers!

©McNeil Nutritionals LLC, 2004 Ft. Washington PA, USA.
All rights reserved. This site and its contents are intended for USA audiences only.
Questions or comments? Call **1-800-7-SPLENDA** or click here for **Customer Service**.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| **MCNEIL NUTRITIONALS, LLC** | ) |
| | ) |
| **Plaintiff,** | )    Civil Action No.: 04-2291 (JP) |
| **v.** | ) |
| | ) |
| **MERISANT COMPANY,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of December, 2004, a true and correct copy of Merisant's Opposition to McNeil's Motion to Transfer was served, via CM/ECF, upon the following:

VIA CM/ECF

Dora M. Peñagarícano
dmp@mcvpr.com
McConnell Valdés
270 Muñoz Rivera Avenue, 9th Floor
San Juan, Puerto Rico  00936


_/s/ Jorge Roig-Colón_____
Jorge Roig-Colón
USDC-PR No. 220706
FIDDLER, GONZÁLEZ & RODRÍGUEZ, P.S.C.
254 Muñoz Rivera Avenue, 6th Floor
Hato Rey, Puerto Rico 00918
Telephone:  (787) 759-3176
Facsimile:   (787) 759-3109