IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

_____
                                       )
McNEIL NUTRITIONALS, LLC,              )
                                       )
                    Plaintiff,         )          Civil Action No. 04-2291 (JP)
                                       )
          v.                           )
                                       )
MERISANT COMPANY,                      )
                                       )
                    Defendant.         )
_____)

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS OR TRANSFER**

TO THE HONORABLE COURT:

COMES NOW, plaintiff McNeil Nutritionals, LLC ("McNeil"), through its undersigned counsel, and very respectfully submits this memorandum of law in opposition to the motion by defendant Merisant Company ("Merisant") to dismiss this action or, in the alternative, to transfer it to another court:

McNeil filed this action for declaratory judgment in the good faith belief that legal action by Merisant against McNeil was imminent. McNeil's apprehension of suit was reasonable under the circumstances, and has proved to be correct. Within days after this action was filed, Merisant commenced suit against McNeil in another forum, asserting the same claims as to which McNeil seeks declaratory relief. Merisant now asks this Court to decline jurisdiction over this first-filed action so that its second-filed case can go forward. There is no merit to Merisant's position, and its motion should be denied.

## STATEMENT OF FACTS

Merisant's statement of "facts" is comprised almost entirely of unsupported accusations and *ad hominem* attacks on McNeil and its counsel.  Rather than respond to each of Merisant's inflammatory charges, we set forth briefly below the pertinent background facts, as documented in judicial records and previously adjudicated by this Court.

McNeil markets Splenda®, the leading no-calorie sweetener in Puerto Rico and in the United States. Merisant markets several competing no-calories sweeteners, including Equal®, NutraSweet® and Same®.

### A.      The Trade Dress Action

In December 2003, Merisant introduced for sale in Puerto Rico a new no-calorie sweetener in packaging that was shockingly similar to the packaging for McNeil's Splenda.  A side-by-side photograph of the two products appears below.



In February 2004, McNeil sued Merisant in this Court for trade dress infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). McNeil's complaint sought an injunction to stop Merisant from marketing its new sweetener

in the above package, or any packaging likely to cause consumer confusion between Merisant's product and McNeil's.  McNeil's action, styled *McNeil-PPC, Inc. and Johnson & Johnson Hemisferica, S.A. v. Merisant Company and Merisant Puerto Rico, Inc.*, No. 04-1090 (JG) (the "Trade Dress Action"), was assigned to and is currently pending before the Hon. Jay A. García-Gregory.  A copy of McNeil's Complaint in the Trade Dress Action is attached hereto as Exhibit A.

On February 26, February 27, and March 2, 2004, Judge García-Gregory conducted an evidentiary hearing on McNeil's motion for a preliminary injunction in the Trade Dress Action.  During the hearing, the parties introduced extensive testimony and documentary evidence concerning, *inter alia*, the market for no-calorie sweeteners, the marketing history of Splenda, the design and appearance of the Splenda package, and consumer perceptions of the Splenda package.  On March 3, 2004, counsel presented oral argument in support of and in opposition to the motion.  A transcript of the evidentiary hearing and oral arguments is attached hereto as Exhibit B.

McNeil's motion was granted.  On July 29, 2004, Judge García-Gregory entered an Order for Preliminary Injunction ("Order") restraining Merisant from "manufacturing, distributing, importing, advertising, marketing or selling a no-calorie sweetener in packaging that is confusingly similar to any packaging used by plaintiffs for their Splenda product . . . ."  The Order further required that Merisant "immediately recall from distribution" and "remove . . . from store shelves in Puerto Rico" the infringing products.  A copy of Judge García-Gregory's Order for Preliminary Injunction is attached hereto as Exhibit C.

In addition to this Order, Judge García-Gregory issued the same day a thorough, 66-page opinion entitled Memorandum, Findings of Fact and Conclusions of Law Granting Preliminary Relief ("Opinion").  A copy of the Opinion is attached hereto as Exhibit D.  The Opinion described in detail the market for no-calorie sweeteners in the United States, including the major products, their ingredients, and the packaging in which they are sold.  *See* Exh. D ¶¶ 1-7.  Among other things, Judge García-Gregory found that Merisant had deliberately copied the Splenda trade dress in order to confuse consumers and increase sales of its competing product.  *See id.* ¶¶ 81-86.

The Order and Opinion forced Merisant to expend considerable resources to recall its infringing products from stores in Puerto Rico and to reintroduce "Same" to consumers in new, revised packaging.  Merisant then sought revenge.

**B.      Merisant's NAD Challenge**

On or about October 22, 2004, Merisant filed a sweeping challenge to McNeil's packaging and advertising for Splenda with the National Advertising Division of the Council of Better Business Bureaus ("NAD").  Founded in 1971, NAD is a voluntary industry self-regulatory body whose "mission is to review national advertising for truthfulness and accuracy and foster public confidence in the credibility of advertising." NAD bills itself as a "low-cost alternative to litigation" that "adheres to a strict timetable, providing a written decision within 60 days" after a challenge is commenced.  *See* NAD website at www.nadreview.org.

Merisant's NAD challenge took issue with the "made from sugar, tastes like sugar" logo that prominently appears on every Splenda package, and the related advertising slogan, "made from sugar so it tastes like sugar," that appears in every Splenda ad.  Merisant alleged that these claims are literally false and/or mislead consumers to believe that Splenda

actually contains real sugar (as opposed to a no-calorie sweetener, as the package clearly states), or that Splenda is a "natural" product.

The timing of Merisant's NAD challenge was noteworthy, to say the least. The "made from sugar, tastes like sugar" logo and related claims have been a fixture on all Splenda packaging and advertising since the product was introduced to the U.S. market in 2000. Yet Merisant took no action to challenge these claims during the *four-year* period that followed. Moreover, the Splenda package – including the "made from sugar, tastes like sugar" logo – had been scrutinized with a fine tooth comb during the proceedings in the Trade Dress Action on McNeil's motion for a preliminary injunction. *See, e.g.,* Exh. D, ¶¶ 10, 17 (Opinion of Judge García-Gregory, describing Splenda package and noting "made from sugar, tastes like sugar" logo and similar "made with sugar" banner on "Same" package). Merisant did not voice any objection to the logo at the preliminary injunction hearing or at any other time during the Trade Dress Action.

Merisant's timing strongly suggested to McNeil that Merisant's NAD challenge was filed in retaliation for the preliminary injunction and product recall that McNeil had obtained, and was an abuse of the NAD process. Typically, an NAD challenge concerns a *new* claim for a product that appears in a *new* television commercial or print advertisement. If NAD deems the claim unsubstantiated, the advertiser generally can revise or discontinue the claim without major repercussions for its business. Merisant's NAD challenge, by contrast, was directed at packaging and advertising claims that have helped define the Splenda brand since its introduction. An adverse ruling by NAD could have required McNeil promptly to alter its longstanding claims, potentially disrupting McNeil's business and damaging McNeil's thriving Splenda franchise.

McNeil frequently participates in NAD proceedings, both as a challenger and as an advertiser, and is a strong supporter of the NAD process.[1]  However, McNeil believed that Merisant's challenge – coming as it did on the heels of McNeil's procurement of a preliminary injunction and product recall against Merisant – was retaliatory in nature. Moreover, McNeil concluded that it was unwilling to forego the procedural and substantive protections accorded to parties in Lanham Act litigation[2] on a claim that, because it was raised so late, posed a significant threat to McNeil's business.  Accordingly, after careful consideration, McNeil decided that it was unwilling to subject its Splenda packaging and promotional claims to voluntary NAD review.

Contrary to Merisant's insinuation, McNeil at no time represented to Merisant or NAD that it had decided to participate in the NAD process.  While undersigned counsel did briefly engage in discussions with counsel for Merisant about a possible timetable for NAD submissions, these discussions ended more than a week before McNeil brought suit for declaratory judgment.  *See* Declaration of Steven A. Zalesin and exhibits thereto attached hereto as Exhibit K.

---

[1]    Throughout its brief, Merisant misleadingly suggests that McNeil chooses to participate in NAD proceedings only when it is the challenger, but refuses to do so when McNeil is the party whose advertising is under scrutiny.  For example, Merisant states that the NAD forum is one that "McNeil itself 'frequently' uses as 'a challenger' to ***other*** company's [sic] advertising."  Br. at 2 (citing Complaint ¶ 39) (emphasis in original).  The sentence in the Complaint to which Merisant refers actually reads as follows:  "McNeil frequently participates in NAD proceedings, *both as an advertiser and as a challenger*, and is a strong supporter of the NAD self-regulatory process."  Exh. E (Complaint) ¶ 39 (emphasis added).

[2]    NAD rules allow for no discovery, no evidentiary hearing and no confrontation or cross-examination of opposing witnesses.  *See* NAD Rules, attached hereto as Exhibit F. Equitable defenses generally available to litigants in court, such as laches and unclean hands, are not recognized in NAD proceedings.

**C.      McNeil's Declaratory Judgment Action**

As McNeil recognized at the time, its decision to decline to participate in the NAD proceeding did not extinguish Merisant's false advertising claims.  To the contrary, McNeil predicted – correctly, as it turned out – that Merisant would simply retool its NAD complaint and commence suit against McNeil in federal court, alleging that McNeil had violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  Rather than wait for Merisant to act, on November 18, 2004, McNeil commenced a declaratory judgment action against Merisant pursuant to 28 U.S.C. § 2201, seeking a declaration that McNeil's packaging and advertising for Splenda are neither false nor misleading, and do not violate the Lanham Act.  McNeil brought its action (the "Declaratory Judgment Action") in this Court because the parties were already litigating a closely related Lanham Act dispute – the Trade Dress Action – here.  A copy of McNeil's Complaint for Declaratory Judgment is attached hereto as Exhibit E.  McNeil thereafter requested that NAD close Merisant's challenge on an administrative basis, as required by NAD rules, and NAD obliged.  *See* McNeil's request letter to NAD, attached hereto as Exhibit G, and NAD's dismissal, attached as Exhibit H.[3]

As required by the Local Rules of this Court, McNeil indicated on the civil cover sheet that accompanied its Complaint that the Declaratory Judgment Action is related to the Trade Dress Action pending before Judge García-Gregory.  The Declaratory Judgment Action was randomly assigned to Your Honor, but McNeil has moved that it be transferred to Judge García-Gregory.  In its motion, McNeil explained that, by virtue of his extensive involvement in the Trade Dress Action, Judge García-Gregory has acquired substantial

---

[3]      Contrary to Merisant's assertion, the fact that NAD initially forwarded Merisant's challenge to McNeil and requested a response in no way indicates that NAD found merit in Merisant's allegations.  NAD opens an "investigation" in response to essentially every complaint it receives, and refuses to do so only in very limited circumstances.  *See* Exh. F, NAD Rule 2.2(B)(i).

familiarity with the parties, their products and the no-calorie sweetener category in which they compete.  Indeed, Judge García-Gregory has carefully scrutinized the packaging in which the products are sold, including the Splenda package on which the "made from sugar, tastes like sugar" logo appears.  Accordingly, both the parties' interest in efficiency and the judiciary's interest in economy are served by allowing Judge García-Gregory to adjudicate McNeil's declaratory judgment claims.  A copy of McNeil's brief in support of its motion to reassign the Declaratory Judgment Action to Judge García-Gregory is attached as Exhibit I.

In addition, Judge García-Gregory is in the best position to rule on whether Merisant's claims against McNeil are barred in whole or part by the equitable doctrine of unclean hands.  *See, e.g., Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 174 (3d Cir. 2001) (doctrine of unclean hands is applicable in Lanham Act cases).  McNeil believes that Merisant's egregious copying of the Splenda trade dress in violation of the Lanham Act, as found by Judge García-Gregory, precludes Merisant from seeking equitable relief against McNeil's claims on the Splenda package.  Judge García-Gregory has already heard and considered the evidence upon which the finding against Merisant of purposeful trade dress infringement was based.  Judge García-Gregory is therefore best positioned to determine whether Merisant is barred from pursuing the claims it now wishes to press against McNeil.

In fact, the testimony presented to Judge García-Gregory at the hearing on McNeil's motion for a preliminary injunction goes directly to the *bona fides* of Merisant's Lanham Act claims.  The "Same" product at issue in the Trade Dress Action bore a logo similar to the Splenda "made from sugar, tastes like sugar" logo:  "MADE WITH SUGAR." "Same" contains an artificial sweetener (the one found in Equal and many other products) but is "bulked" with real sugar, as opposed to dextrose and maltodextrine, ingredients that are

commonly used as bulking agents for artificial sweeteners. The sugar in "Same" offers no benefit – consumers cannot taste the sugar because its flavor is overwhelmed by the powerful artificial sweetener in the product. Nevertheless, Merisant promotes the fact that the product is made with real sugar.

At the evidentiary hearing on McNeil's motion for a preliminary injunction, Merisant's witness laid bare the reason why Merisant chose to include sugar in its "Same" product. Francisco Javier Cuervo-Escalona, vice president and general manager for Merisant Latin America, testified that Merisant used real sugar so that consumers would believe that "Same" was more "natural" than other artificial sweeteners. Mr. Cuervo-Escalona explained that, by including real sugar, Merisant hoped to create "an image of more naturalness." *See* Exh. B (Transcript of March 2, 2004 Hearing) at 17:25; *see also id*. at 15:3-5, 16:5-7,18:1-7, 20:8-14, 27:13-17, 51:10-22. In other words, Merisant has *admitted* the very offense of which it now claims McNeil is guilty: misleading consumers to think that its artificial sweetener is "natural." Having purposefully (and admittedly) deceived consumers in this fashion, Merisant should not be heard to complain about an implied claim of "naturalness" in McNeil's packaging and advertising. As noted above, Judge García-Gregory, who heard and is already familiar with this testimony, is best situated to assess its impact on Merisant's current false advertising claims.

**D.      Merisant's Second-Filed Action**

Unhappy with the prospect of litigating its Lanham Act case before a Court already familiar with its shenanigans, Merisant filed an affirmative action against McNeil (the "Second-Filed Action") on November 26, 2004 – more than a week ***after*** McNeil's Declaratory Judgment Action was filed. Merisant's complaint in the Second-Filed Action, brought in the Eastern District of Pennsylvania – a court that has never had occasion to

consider any issue relating to the packaging or promotion of Splenda – asserts the very same Lanham Act claims that are the subject of McNeil's Declaratory Judgment Action.[4]  A copy of Merisant's complaint in the Second-Filed Action is attached as Exhibit J.

Merisant then filed the instant motion to dismiss.  By bringing the Second-Filed Action and opposing McNeil's Declaratory Judgment Action (rather than bringing its affirmative claims before this Court), Merisant has ensured that *no* Court will reach the merits of its claims for *months*.  Instead, two United States District Courts must now devote considerable resources to resolving an unnecessary and time-consuming venue dispute.

## SUMMARY OF ARGUMENT

Merisant seeks dismissal on the grounds that, at the time McNeil filed this Declaratory Judgment Action, it had no reasonable apprehension of imminent suit by Merisant.  That is incorrect.  At the time it brought suit, McNeil *knew* that (1) Merisant had committed substantial resources to challenging the Splenda "made from sugar, tastes like sugar" logo and related advertising claims; and (2) Merisant's NAD challenge was about to be dismissed due to McNeil's decision to decline to proceed in that voluntary forum.  Having made that choice, McNeil asked itself what Merisant would do next:  would Merisant simply give up on its challenge, or would it take its case to court?  McNeil concluded that Merisant would promptly pursue the latter course.

As it turned out, McNeil's prediction of imminent litigation was not only "reasonable," but 100 percent correct:  Merisant filed a Lanham Act suit against McNeil within days after the NAD proceeding was dismissed.  (By that time, however, McNeil had

---

[4]    Merisant's complaint also includes an unfair competition claim under Pennsylvania common law that is based on the same facts as its Lanham Act claim.

already initiated this Declaratory Judgment Action.)  Merisant's argument that McNeil lacked an reasonable apprehension of imminent suit is without foundation.  (Point I)

Alternatively, Merisant urges this Court to exercise its inherent discretion to refuse jurisdiction over McNeil's properly filed Declaratory Judgment Action.  In this regard, Merisant accuses McNeil of all manner of wrongdoing, alleging that this case bears no connection to this District and that McNeil's decision to bring it here evinces manifest bad faith.  This argument, too, rings hollow.  McNeil brought its Declaratory Judgment Action in this District for the simple reason that the parties were already engaged in other Lanham Act litigation before this Court that is closely related to the issues raised here.  It would be inefficient and wasteful of the parties' resources – to say nothing of the scarce resources of the judiciary – to start from scratch before a new United States District Judge, and to require that court to rehear the evidence and assess the impact of Merisant's adjudicated misconduct on its current Lanham Act claims.  While Merisant's desire to avoid further scrutiny by this Court is understandable, it provides no basis for a discretionary decline of declaratory judgment jurisdiction.  (Point II)

Finally, Merisant's request that this case be transferred to the Eastern District of Pennsylvania for convenience reasons under 28 U.S.C. § 1404(a) is without merit.  The only party arguably inconvenienced by litigating in Puerto Rico instead of Pennsylvania is McNeil.  That minor difficulty, however, is more than offset by the efficiency of having all the pending Lanham Act claims between these parties heard by a single United States District Judge who is already familiar with the facts and issues.  (Point III)

## I.      This Court Has Subject Matter Jurisdiction Over This Action

The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that in "a case of actual controversy within its jurisdiction . . . upon the filing of an appropriate pleading, [a

court] may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a); *see also* U.S. Const. Art. III, § 2. "The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270 (1941). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.*

More specific tests for determining the existence of an actual case or controversy have been developed for specific types of declaratory judgment actions. *See, e.g.,* 17-111 JAMES WM. MOORE ET AL, MOORE'S FEDERAL PRACTICE § 57.22[8]. In the context of a suit for declaratory judgment under the Lanham Act, the inquiry has two prongs: (1) has the declaratory judgment defendant's conduct created a real and reasonable apprehension of liability on the part of the declaratory judgment plaintiff? and (2) has the declaratory plaintiff engaged in a course of conduct that has brought it into adversarial contact with the defendant? *Starter Corp. v. Converse, Inc.,* 84 F.3d 592, 595 (2d Cir. 1996); *accord, Sallen v. Corinthians Licenciamentos LIDA*, 273 F.3d 14, 25 (1st Cir. 2001); *PHC, Inc. v. Pioneer Healthcare, Inc.*, 75 F.3d 75, 79 (1st Cir. 1996); *Mueller Co. and Mueller Int'l, Inc. v. U.S. Pipe and Foundry Co.*, No. Civ. 03-170, 2004 WL 102491 at *3 & n.3 (D.N.H. Jan. 22, 2004).[5]

---

[5]     This test has most often been applied in Lanham Act cases involving allegations of trademark infringement and false designation of origin, but should govern in Lanham Act

Here, there is no dispute that second prong of the test is satisfied.  McNeil has engaged in the disputed conduct – marketing Splenda in packaging with a "made from sugar, tastes like sugar" logo – since the product's introduction in 2000.  Now that Merisant has decided to protest this logo and McNeil's related "made from sugar so it tastes like sugar" slogan, these claims have "brought [McNeil] into adversarial contact with" Merisant.

Merisant focuses instead upon the first prong of the test, and asserts that, at the time it filed its Declaratory Judgment Action, McNeil lacked a reasonable apprehension that Merisant would soon take legal action against McNeil.  According to Merisant, by bringing its challenge at NAD instead of in court, Merisant signaled to McNeil that it *did not* intend to initiate litigation.

The flaw in this argument is that it ignores the critical events that followed.  Merisant's NAD challenge invited McNeil's participation in an expedited review of the packaging and promotional claims for Splenda, in which McNeil would have been required to respond to Merisant's stale arguments in a matter of weeks, and to defend its position without the benefit of discovery, cross-examination or affirmative defenses.  In many instances, this truncated procedure is an acceptable alternative to full-blown Lanham Act litigation, but in this case McNeil concluded it was not.  Accordingly, McNeil decided not to subject its Splenda packaging and advertising claims to voluntary NAD review.

---

false advertising cases as well.  Claims for false advertising arise under Section 43(a) of the Lanham Act, the same statutory provision upon which claims for false designation of origin are based.  In addition, claims for trademark infringement (or false designation of origin) and false advertising are, in many ways, quite similar:  they are typically brought by one competitor against another, and involve the effect of one party's allegedly deceptive packaging or advertising on the other.  Merisant's reliance upon an unrelated line of First Circuit cases (*e.g.*, *Ernst & Young v. Depositors Economic Protection Corp.*, 45 F.3d 530 (1st Cir. 1995); *Mcinnis-Misenor v. Maine Medical Center*, 319 F.3d 63 (1st Cir. 2003)), which involved the separate issue of declaratory judgment jurisdiction to hear challenges to statutes and regulations, is misplaced.

This choice to opt out of the NAD process was crucial to McNeil's decision to seek a declaratory judgment.  McNeil recognized that it could not make Merisant's charges of false advertising go away simply by refusing to participate in the NAD proceeding.  Filing an NAD challenge does not divest the challenger of its right to seek judicial relief; to the contrary, even when the advertiser *agrees* to cooperate in the NAD process, litigation often ensues.  *See, e.g., Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 493 (5th Cir. 2000) (Lanham Act suit followed unsuccessful NAD challenge); *Warner-Lambert Co. v. Breathasure, Inc.*, 204 F.3d 87, 89-90 (3d Cir. 2000) (Lanham Act suit for injunctive relief followed successful NAD challenge).  McNeil therefore assessed whether its decision to forego NAD review would spur Merisant to initiate Lanham Act litigation against McNeil.

For a number of reasons, McNeil concluded – quite correctly as it turned out – that it would.  As detailed in McNeil's Complaint for Declaratory Judgment (Exh. E ¶¶ 36, 42-43), Merisant's NAD challenge had all the hallmarks of a Lanham Act suit in the making.  Merisant's NAD submission was voluminous and included two consumer perception surveys, a detailed statement by a scientific expert, and a letter brief, replete with citations to Lanham Act cases, signed by Merisant's counsel – the same experienced Lanham Act attorneys who represent Merisant here.  *See, e.g., PHC,* 75 F.3d at 79 (declaratory judgment plaintiff had a "reasonable apprehension" of litigation where letter from declaratory defendant used "language typical of a claim under section 43(a)").  It was apparent to McNeil that Merisant had devoted substantial resources to the preparation of its challenge, and would not simply "abandon ship" upon learning of McNeil's unwillingness to participate in that forum.  Rather, as alleged in McNeil's Complaint, "[b]ased upon the totality of circumstances, McNeil believe[d] that Merisant [would] commence suit against McNeil for

false advertising under Section 43(a) of the Lanham Act" as soon as Merisant learned that its

NAD challenge would not go forward.  Exh. E ¶ 44.  That, of course, is precisely what

Merisant did.

Based upon this complete set of circumstances, McNeil indisputably had a

"real and reasonable apprehension" that Merisant was about to commence suit against it at

the time it brought this Declaratory Judgment Action.  The fact that Merisant never made an

overt threat of litigation is of no consequence.  As the First Circuit has explained,

> In all events, the question under the case law on declaratory
> judgments is not whether [one party] made a specific threat to
> bring a section 43(a) claim *or even had such a claim in mind*.
> The federal declaratory judgment statute aims at resolving
> potential disputes, often commercial in character, that can
> reasonably be feared by a potential target in light of the other
> side's conduct.  No competent lawyer advising [the declaratory
> plaintiff] could fail to tell it that, based on the threatening
> letters and the surrounding circumstances, a section 43(a) suit
> was a likely outcome.

*PHC,* 75 F.3d at 79 (emphasis added) (citation omitted); *see also, e.g., Goodkind Pen*

*Company v. Bic Corporation*, No. 01-71, 2001 WL 1159748 at *3-4 (D. Me. Oct. 2, 2001);

*Tactical Software, LLC v. Digi Int'l, Inc.,* No. 03-166, 2003 WL 22401783 at *3 (D.N.H.

Oct. 16, 2003) (citing *Vanguard Research, Inc. v. PEAT, Inc.*, 304 F.3d 1249, 1254-55 (Fed.

Cir. 2002) (whether declaratory plaintiff had a "reasonable" apprehension of suit must be

judged by "totality of circumstances").  Particularly in light of Merisant's prompt filing of a

Lanham Act action against McNeil in another district, it can hardly be said that McNeil's

apprehension of suit here was not "reasonable."

## II.   There Are No Grounds For a Discretionary Refusal of Jurisdiction

Merisant next argues that, even if the Court finds that there is an actual case or

controversy such that it may assert declaratory judgment jurisdiction, it should nonetheless

exercise its discretion to decline to do so, and instead should defer to the court in Pennsylvania where Merisant has initiated a Second-Filed Action. Only under very limited circumstances, none of which are present here, may a court in a first-filed action cede jurisdiction to a court in a second-filed action.

### A.    The First-Filed Rule

The rule that the first-filed case normally takes precedence over all subsequently filed actions is a veritable cornerstone of American jurisprudence. Nearly two centuries ago, the U.S. Supreme Court opined that "[i]n all cases of concurrent jurisdiction, the Court which first has possession of the subject matter must decide it". *Smith v. McIver*, 22 U.S. 532, 535 (1824). The First Circuit has often affirmed this principle. In *TPM Holdings, Inc. v. Intra-Gold Industries, Inc.,* 91 F.3d 1 (1st Cir. 1996), for example, the Court of Appeals explained that

> Obvious concerns arise when actions involving the same parties and similar subject matter are pending in different federal district courts: wasted resources because of piecemeal litigation, the possibility of conflicting judgments, and a general concern that the courts may unduly interfere with each other's affairs. . . .Where the overlap between the two suits is nearly complete, the usual practice is for the court that first had jurisdiction to resolve the issues and the other court to defer.

91 F.3d at 1. *See also, e.g., Coady v. Ashcraft & Gerel*, 223 F.3d 1, 11 (1st Cir. 2000) ("Where identical actions are proceeding concurrently in two federal courts . . . the first filed action is generally preferred in a choice-of-venue decision"); *Cianbro Corp. v. Curran-Lavoie, Inc.*, 814 F.2d 7, 11 (1st Cir. 1987) (same); *Aguakem Caribe, Inc. v. Kemron Atlantic, Inc.*, 218 F. Supp. 2d 199, 203 (D.P.R. 2002) ("case law strongly favor[s] the forum where suit was first-filed").

Indeed, the first-filed "rule favors the forum of the first-filed action, *whether or not it is a declaratory* action . . . ."  GSI *Lumonics, Inc. v. BioDiscovery, Inc.*, 112 F.Supp.2d 99, 105 (D. Mass. 2000) (quoting *Genentech, Inc. v. Eli Lilly*, 998 F.2d 931, 937-38 (Fed.Cir.1993)).  *See also, e.g., Reebok Int'l Ltd. v. Dunkadelic, Inc.*, No. 03-11471, 2004 WL 413266 at *4 (D. Mass. March 2, 2004) ("In intellectual property cases, the fact that plaintiff's action is for declaratory relief does not bar the application of the first-filed presumption") (quotation omitted).  Accordingly, courts (including courts within this Circuit) have frequently retained jurisdiction over declaratory judgment actions where, as here, a mirror image affirmative action was later brought elsewhere.  *See, e.g., Reebok*, 2004 WL 413266 at *5 (retaining jurisdiction over action seeking declaration of trademark non-infringement despite subsequent commencement of affirmative infringement suit in another district); *GSI Lumonics*, 112 F. Supp. 2d at 105 (retaining jurisdiction over action seeking declaration of copyright non-infringement notwithstanding filing of affirmative infringement suit elsewhere)*; Biogen, Inc. v. Schering* AG, 954 F. Supp. 391, 398 (D. Mass. 1996) (retaining jurisdiction over action seeking a declaration of patent non-infringement despite filing of affirmative infringement in another forum).

**B.      No Exception To the First-Filed Rule Applies**

To justify a departure from the first-filed rule, there must be a showing of "sound reasons that would make it unjust or inefficient to continue the first-filed action." *GSI Lumonics*, 112 F.Supp.2d at 105.  There is no such reason to depart from the rule here.

**1.      This Case Has a Strong Connection to Puerto Rico**

Merisant argues that this Declaratory Judgment Action should give way to Merisant's Second-Filed Action because "the dispute bears a relatively minimal connection"

to Puerto Rico.  Br. 11.  That is untrue.  The issues in this case make Puerto Rico the most logical and efficient forum in which to adjudicate the parties' dispute.

First, as detailed above, McNeil and Merisant are already litigating another Lanham Act case about the Splenda package before a judge in this District, Judge García-Gregory, who is already familiar with the parties, the products, and the market in which they compete.  Indeed, Judge García-Gregory has already heard evidence and entered findings and conclusions concerning conduct by Merisant that supports an affirmative defense of unclean hands.  The fact that the Trade Dress Action is already pending in this Court makes the District of Puerto Rico the most sensible and obvious forum in which to adjudicate Merisant's new Lanham Act claims.

Second, contrary to Merisant's erroneous assertions, the packaging and promotional claims at issue in this action are widely disseminated throughout Puerto Rico. As found by Judge García-Gregory in his recent Opinion on McNeil's motion for a preliminary injunction, sales of Splenda in the Commonwealth of Puerto Rico exceeded $5 million in 2003 alone, and McNeil has spent more than $3 million to advertise Splenda to Puerto Rico consumers.  Exh. D ¶¶ 7, 11.  All Splenda packaging in Puerto Rico bears the "made from sugar, tastes like sugar" logo contested by Merisant.  *Id.* ¶ 10.  In short, there is more than a sufficient connection between Puerto Rico and the issues in this case to justify application of the first-filed rule.

## 2.    McNeil Has Not Engaged In Improper "Forum Shopping"

McNeil filed this case in Puerto Rico because a closely related Lanham Act case between the same parties – the Trade Dress Action – was already pending here.  For the reasons already described, McNeil's selection of Puerto Rico as the forum for this

Declaratory Judgment Action was logical and arrived at in good faith, taking into account the interests of both the parties and the federal judiciary.  Nevertheless, on almost every page of its brief, Merisant accuses McNeil of "blatant forum shopping."  In this regard, Merisant argues that McNeil filed this suit for declaratory relief in "anticipation" of an affirmative action by Merisant, and did so for the purpose of depriving Merisant of its preferred forum – the NAD or, failing that, the Eastern District of Pennsylvania.

This self-serving bluster is no reason to depart from the first-filed rule.  *Every* viable declaratory judgment action is filed in "anticipation" of an affirmative action; otherwise, there can be no exercise of declaratory jurisdiction.  Just like the plaintiff in any other case, a declaratory judgment plaintiff has the option where to bring suit.  That is not "forum shopping"; it is simply an exercise of the right of every plaintiff to select the forum it believes is most appropriate for its case.

In fact, the only party guilty of "forum shopping" here is Merisant.  After all, it is Merisant that (i) filed a reciprocal action in another district *after* being served with McNeil's declaratory judgment complaint, and (ii) is now engaged in intense procedural wrangling in an effort to wrest this case from this Court and relocate it to Pennsylvania.  Merisant has even gone so far as to file a petition before the Judicial Panel on Multidistrict Litigation, requesting that the "two" (mirror image) false advertising cases between McNeil and Merisant be consolidated for pretrial purposes with one other similar case pending in another federal court, and that all pretrial proceedings in these actions take place in Pennsylvania.  If that is not forum shopping, what is?

Merisant relies extensively on two cases, both of which are inapposite and readily distinguishable on their facts.  In *Nortek, Inc. v. Molnar*, 36 F.Supp.2d 63 (D.R.I.

1999), the declaratory judgment plaintiff brought suit in Rhode Island because that district was more convenient for it, and because the Rhode Island court was likely to apply favorable Rhode Island law.  Puerto Rico is not an especially "convenient" forum for McNeil, and the law in the First Circuit is no more favorable to McNeil's position than the law in other circuits.  McNeil's reason for bringing suit in Puerto Rico was not take exploit such potential advantages, but to reap the efficiency benefits of having its claims heard by a Court already familiar with the issues.  That is a far cry from the situation in *Nortek*.  Moreover, in *Nortek*, the parties were engaged in ongoing *settlement* discussions when the plaintiff prematurely filed its declaratory judgment action.  Here, the only "negotiations" between the parties concerned the timetable for NAD submissions.  Thus, the policy considerations cited by the court in *Nortek* are not present here.

Similarly, in *EMC Corp. v. Roland*, 916 F. Supp. 51 (D. Mass. 1996), the declaratory plaintiff brought suit in its home district of Massachusetts, even though the declaratory defendant – an employee who had received a "right to sue" letter from the EEOC – resided in Georgia, where the events that gave rise to the dispute had occurred.  Here, McNeil did not initiate litigation in its home district, but rather in a location that is equally accessible to both parties.  Ironically, it is Merisant that now seeks to have this case transferred to the district in which McNeil is headquartered.

### 3.     Filing an NAD Challenge Did Not Make Merisant the "First Filer"

Merisant also suggests that it is the true "first filer" here because it commenced an NAD challenge to the packaging and advertising for Splenda before McNeil brought suit for declaratory judgment.  The first-filed rule promotes comity among federal

courts of equal rank. The NAD is a voluntary, non-judicial forum with no power to compel participation in its proceedings. It is not a forum analogous to a United States District Court.

Merisant could have invoked the compulsory process of this Court and brought suit against McNeil in the first instance, but it did not do so. Instead it waited *four years* to challenge the Splenda packaging and related claims, and then attempted to have its claims heard on an expedited basis by NAD, affording McNeil no opportunity for discovery and depriving McNeil of important substantive defenses such as laches and unclean hands. Indeed, Merisant went to NAD to try to obtain a speedy ruling that, in view of its unconscionable delay, it knew it could never achieve in court. By doing so, Merisant took a calculated risk that McNeil would bring a declaratory judgment action, and forfeited the opportunity to be the "first filer" and select the judicial forum for this dispute.

Moreover, as noted above, the fact that McNeil initially discussed with Merisant a possible timetable for NAD submissions while considering its options does not establish the type of "bad faith" necessary to justify a discretionary refusal of declaratory judgment jurisdiction. *All* of the cases cited by Merisant involved *substantive* discussions between the parties about a possible compromise or settlement of their dispute. *See, e.g., Reebok*, 2004 WL 413266 at *4; *Kim v. Kim*, 324 F. Supp. 2d 628, 636-37 (E.D. Pa. 2004); *Nortek*, 36 F.Supp.2d at 70 ("second filer reasonably held off filing suit . . . because he thought the parties were still negotiating. Where this Court has discretion, it will not reward conduct that undermines the sound policy of promoting settlements and negotiations outside the courthouse"). Here the only "negotiations" between the parties concerned procedural issues such as the schedule for NAD submissions and production by Merisant of survey questionnaires (materials that Merisant, in violation of NAD rules, initially failed to provide).

*See also PHC*, 75 F.3d at 79 (nothing that it was "quite likely [that the declaratory judgment plaintiff] had tactical advantages in mind in bringing the declaratory judgment action.  But, absent a showing of bad faith so substantial as to foreclose equitable relief, its subjective aims do not matter").

### 4.      This Action Is Coextensive With Merisant's

Finally, Merisant urges this Court to decline jurisdiction over this action because it supposedly does not address all of the issues raised by Merisant in its Second-Filed Action.  This assertion is simply inaccurate.  McNeil's complaint asks this Court to issue a broad declaration that "McNeil's advertising for Splenda, including the 'Made from Sugar, Tastes Like Sugar' logo on all Splenda packaging and the related 'made from sugar so it tastes like sugar' advertising slogan, is neither false nor misleading within the meaning of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a)."  Exh. E at 13 (Prayer for Relief). This expansive request encompasses all of Merisant's specific allegations of false advertising, including its assertion that these claims imply that Splenda is "natural." Merisant's insistence that permitting this case to go forward will result in "piecemeal litigation" is altogether unfounded.

### III.    Merisant's Transfer Motion Should Be Denied

Merisant's final argument is that, even if it decides to exercise jurisdiction, this Court should transfer this case to the Eastern District of Pennsylvania for reasons of convenience.  In this regard, Merisant relies upon 28 U.S.C. § 1404(a), which provides that a court may transfer a civil action to any other district where it could have been brought "[f]or the convenience of parties and witnesses, in the interest of justice."

The factors routinely considered by courts in ruling on § 1404(a) motions counsel against transfer here.  First and foremost, there is a strong presumption in favor of the plaintiff's choice of forum.  *Coady*, 223 F.3d at 11; *Pujols v. Ser-Jobs for Progress Nat., Inc*, No. 98-1348, 1999 WL 223507, at *2-3 (D.P.R. 1999).  "Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Villalobos v. North Carolina Growers Ass'n, Inc.,* 42 F. Supp. 2d 131, 142 (D.P.R. 1999); *Generadora de Electricidad del Caribe v. Foster Wheeler Corp.*, 30 F.Supp.2d 196, 203 (D.P.R. 1998).

Second, as detailed above, there is a related case pending in this District and the interests of judicial economy will best be served if this Court retains this action and allows Judge García-Gregory to hear it.  *See* 17-111 JAMES WM. MOORE ET AL, MOORE'S FEDERAL PRACTICE § 111.13[1][o][i] ("fact that an action presenting the same or similar legal and factual issues is pending in the district where the action was originally brought militates against transfer of the second action to a different district").

Third, McNeil's Declaratory Judgment Action was filed before Merisant's Second-Filed Action.  Courts routinely deny applications to transfer a first-filed action to a court in which a subsequent, mirror image action has been filed.  *See, e.g., Coady*, 223 F.3d at 11; *Cianbro Corp.*, 814 F.2d at 11; *Aguakem Caribe*, 218 F. Supp. 2d at 203; *Bayer AG v. Biovail Labs, Inc.*, 35 F. Supp. 2d 192, 194 (D.P.R. 1999) (considering the order in which the suit before it and the suit later filed in another district court were filed "first and foremost" in deciding not to transfer the suit before it).

Finally, while it is true that the majority of potential witnesses for this case reside outside Puerto Rico, Merisant's "convenience" arguments are significantly overstated.

Merisant's Lanham Act claims will turn largely on testimony of expert witnesses who (i) will have their depositions taken in a mutually convenient location and (ii) will have to travel regardless of where the trial is held.  The same is true of Merisant's witnesses, who are located in Illinois, and of potential third party witnesses.  The only party who will suffer any noticeable inconvenience is McNeil, who will have to transport its witnesses from Pennsylvania to Puerto Rico for trial.  Any inconvenience associated with such travel is more than offset by the important benefit of having all the current packaging and advertising disputes between these parties adjudicated by a single United States District Judge – Judge García-Gregory of this Court – who is already familiar with the issues.

## CONCLUSION

For the foregoing reasons, McNeil respectfully requests that Merisant's motion be, in all respects, denied.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 27th day of December, 2004.

**PATTERSON, BELKNAP,**
**WEBB & TYLER LLP**
Steven A. Zalesin
Richard J. McCormick
Jennifer L. Higgins
1133 Avenue of the Americas
New York, New York  10036-6710
Tel.: (212) 336-2000
**McCONNELL VALDÉS**
P.O. Box 364225
San Juan, PR  00936-4225
Telephone  (787) 250-5657
Fax (787) 759-2798
dmp@mcvpr.com

By:  S/ Dora M. Peñagarícano
Dora M. Peñagarícano
USDC-PR No. 203202

Of Counsel:

Donna Malin, Esq.
Johnson & Johnson


## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this same date, I electronically filed the foregoing motion with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following attorneys: Heriberto J. Burgos-Pérez, Esq. (<u>hburgos@fgrlaw.com</u>), Jorge R. Roig-Colón (<u>jroig@fgrlaw.com</u>) and Gregg F. LoCascio (<u>glocascio@kirland.com</u>).


<u>S/ Dora M. Peñagarícano</u>
Dora M. Peñagarícano

f:\atty\lit\dmp\j&j\splenda 2\oppositiondismissal.doc