IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

McNEIL-PPC, INC. and JOHNSON &
JOHNSON HEMISFERICA S.A.,

    Plaintiffs,

    v.

MERISANT COMPANY and MERISANT
PUERTO RICO, INC.,

    Defendants.

Civil Action No. 04- 1090 (JAG)

15400 -986A

| SERIAL NO. | l | |
| SERVED | | |
| RECEIVED | | |
| FILED | | |

## COMPLAINT

TO THE HONORABLE COURT:

    COME NOW,  Plaintiffs McNeil-PPC, Inc. and Johnson & Johnson Hemisférica S.A., through their undersigned counsel, and for their Complaint against defendants Merisant Company and Merisant Puerto Rico, Inc., respectfully allege as follows:

### Introduction

    1.    This is an action for preliminary and permanent injunctive relief, a product recall, damages, and attorneys' fees for defendants' false designation of origin of goods in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125; false and misleading promotion of goods in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125; common law trademark infringement; violation of Articles 3 and 25 of the Puerto Rico Trademarks Act, 10 L.P.R.A. § 171a and w; and defendants' violation of the unfair competition doctrines of Puerto Rico under Article 1802 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 5141.

2.      Defendants have recently begun to market a no-calorie sweetener in Puerto Rico called "Same®" in packaging that is virtually identical to that used by plaintiffs for their brand of no-calorie sweetener, Splenda®.  As a result of this striking similarity in packaging, consumers are likely to confuse the products, or to mistakenly believe that Same contains the same sweetening ingredient as Splenda.  Plaintiffs seek an injunction, a product recall and damages to remedy defendants' wanton violation of their intellectual property rights.

### Jurisdiction and Venue

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a) and (b) and 1367.

4.      Venue in this District is proper pursuant to 28 U.S.C. §§ 1391(b) and (c).

### The Parties

5.      Plaintiff McNeil-PPC, Inc. is a wholly-owned subsidiary of Johnson & Johnson.  McNeil-PPC is a New Jersey corporation with its principal place of business in Skillman, New Jersey.  McNeil-PPC is engaged in the business of manufacturing and selling over-the-counter medications, personal care products and innovative nutritional products. McNeil-PPC's nutritional products are marketed through a division of McNeil-PPC known as McNeil Nutritionals.  McNeil Nutritionals' products include the no-calorie sweetener sucralose, which it markets under the name Splenda.  Plaintiff Johnson & Johnson Hemisférica S.A., another wholly-owned subsidiary of Johnson & Johnson, markets and distributes Splenda in Puerto Rico.  McNeil-PPC, its divisions and J&J Hemisférica S.A. are collectively referred to herein as "McNeil."

6.      Upon information and belief, defendant Merisant Company is a Delaware corporation with offices in Illinois and Missouri.  Merisant is a manufacturer and worldwide

2

leader in sales of no-calorie sweeteners. Upon information and belief, Merisant Puerto Rico, Inc. is a related company of Merisant Company with a place of business at Metro Office Park in Guaynabo, Puerto Rico. Upon information and belief, Merisant Puerto Rico, Inc. imports and distributes Merisant's sweetener products in Puerto Rico. Merisant and its related companies are collectively referred to herein as "Merisant."

<strong>Background – The No-Calorie Sweetener Market</strong>

7.      No-calorie sweeteners are a common sight in restaurants, offices and homes. They are typically distributed in small, single-serving packets for easy use in sweetening coffee, hot and iced tea, lemonade, cereal, fresh fruit and other foods and beverages. In the U.S. market, the leading no-calorie sweeteners are McNeil's Splenda, Merisant's Equal® and Cumberland Packing Corp.'s Sweet'N Low®. These three brands account for more than 80% of all U.S. retail sales.

8.      Until recently, the market for no-calorie sweeteners was dominated by products that contain one of two main ingredients – saccharin and aspartame. Sweet'N Low, which contains saccharin, has been sold in the U.S. since about 1957. Sweet'N Low packets are pink and come in a distinctive pink and white box. The well-known Sweet'N Low trade dress is shown below.




9.      Equal, which contains aspartame and is also marketed as NutraSweet®, has been available since 1982. Equal packets are blue and come in a blue-colored box. The Equal brand name appears in white letters and the lower portion of the front panel shows a giant red strawberry being sprinkled by a packet of Equal. The famous Equal trade dress appears below.




10.     In 2000 McNeil introduced Splenda, a no-calorie sweetener that contains a different ingredient called sucralose. Sucralose is made by a patented process that starts with cane sugar and converts it to a no-calorie, non-carbohydrate sweetener.

11.     Prior to introducing Splenda to the U.S. market, McNeil devoted significant time and expense to develop packaging that would be distinctive, aesthetically pleasing and memorable to consumers. McNeil purposefully crafted its Splenda trade dress to distinguish itself from the market leaders of the time – Sweet'N Low (pink) and Equal (blue). Splenda packets are yellow and are sold in a predominantly yellow box. The color scheme, artwork, labeling and layout of the Splenda package all contribute to an overall appearance that

is distinctive in a category dominated by pink and blue packages. The Splenda trade dress is depicted below; an original Splenda box is attached hereto as Exhibit A.

    

12.     In addition to single-serving packets, Splenda is marketed to consumers in granular form for use in cooking and baking. As shown below, the package for granular Splenda incorporates the same distinctive design and yellow color scheme as the box for Splenda packets.



13.     Prior to the recent introduction of new Same, the only no-calorie sweetener in the United States aside from Splenda that featured the color yellow as part of its trade dress was a minor saccharin product called Sugar Twin®. The Sugar Twin box has a bright yellow and white background that gives it an overall look and feel that is very different from the pastel yellow Splenda package. Moreover, although it has been on the market for many years, Sugar Twin is a very minor brand. When Splenda was launched in 2000, the U.S. dollar share for Sugar Twin was roughly 2%. Currently, it stands at 1.4%. The product is not advertised nationally and is not available in many stores. In Puerto Rico, Sugar Twin is even less of a

factor.  Its current market share is only 0.1%, and Sugar Twin engages in no local advertising.  In fact, most stores in Puerto Rico do not even carry Sugar Twin.

14.     Splenda has been an enormous commercial success.  Sales of Splenda have grown from about $32 million in 2001 to over $200 million in 2003.  Within a year of its introduction in the U.S., Splenda captured 14% of the no-calorie sweetener market (based on dollar share).  That share has steadily increased over the last two years, to the point that Splenda is now the market leader with a 37% share of the category, compared to 26% for Equal and 18% for Sweet'N Low.

15.     The Puerto Rico market has responded similarly.  McNeil introduced Splenda in Puerto Rico in November 2000.  In 2001, Splenda captured an 18% dollar share of the local no-calorie sweetener market.  Today, that figure stands at 35.1%, making Splenda the market leader.  Since its introduction in Puerto Rico in late 2000, annual dollar sales for Splenda have increased from $1.7 million to almost $5 million, and its unit sales have risen from fewer than 40,000 cases to more than 200,000 cases.

16.     Plaintiffs have invested large sums of money publicizing the yellow Splenda package so consumers will readily recognize Splenda on store shelves.  The Splenda package is prominently featured in print and television advertising.  Since its U.S. launch in September 2000, McNeil has spent over $96 million advertising and promoting the Splenda brand to consumers.  And McNeil has invested roughly $3 million in advertising and promotion directed specifically at the Puerto Rico market.

17.     As a result of McNeil's extensive advertising and promotional efforts, as well as the inherent distinctiveness of the Splenda packaging, the Splenda trade dress has acquired invaluable goodwill, recognition and secondary meaning among consumers.

## Merisant's Same Brand

18.     Merisant's sole business is to manufacture and market low-calorie sweeteners.  It has approximately 19 brands that are sold in more than 100 countries.  The principal sweetening ingredient in most of Merisant's products is aspartame.

19.     Until recently, Merisant dominated the market for no-calorie sweeteners in Puerto Rico, where it offers three separate brands:  Equal, NutraSweet and Same.  All of these products contain aspartame.  Equal is positioned as a flagship brand, whereas NutraSweet and Same are positioned as value brands.

20.     The Same brand has been sold in Puerto Rico since late 1994.  Like Equal, Same has always been sold in blue boxes and blue packets (see Exhibit B).

21.     Since the launch of Splenda in Puerto Rico, the market shares of both Equal and Same have declined.  Between 2000 and 2003, Equal's share decreased from 39% to 32%, and Same's share decreased from 33% to 27%.

## Merisant Copies the Splenda Trade Dress

22.     Although its introduction was not officially announced until January 14, 2004, in late December, 2003 a new Same package began to appear on store shelves in Puerto Rico.  This new Same packaging has a yellow background and blue letters and is completely different from the blue packaging previously used for the product.  Merisant's yellow Same box is depicted below; an original box is attached hereto as Exhibit C.

7



23.     Merisant's new Same box features the same combination of yellow, white and blue found on the Splenda box, and is practically identical in size, shape and overall design to the Splenda package.  In fact, Merisant's new Same product mimics all of the essential elements of the Splenda trade dress:

> ➢ pastel yellow-colored background

> ➢ gradually lighter, blue lettering

> ➢ white cloud surrounding the brand name

> ➢ photo of steaming hot white coffee cup on the right side of the front panel

> ➢ photo of packets resting on coffee cup saucer

> ➢ yellow packets with blue lettering

> ➢ a glass of cold beverage in the foreground on the left side of the package's front panel as well as a depiction of fruit

> ➢ informational banner in lower left corner claiming "made with [or from] sugar"

While some of these elements appear on other packages in the category (such as a coffee cup with a packet of sweetener on the saucer), Merisant has copied the entire design of the Splenda package.  A side-by-side comparison of the two packages follows:

8



24.     Not only is the new yellow Same package strikingly similar to Splenda, it differs in numerous respects from the blue packaging that Merisant historically has used for Same. First, the shape of the blue Same box, like the Equal box, stands vertical. The yellow Same box lies horizontal, like Splenda.

25.     Second, the colors of the letters of the name "Same" on the blue box are white and light blue, while the letters on the yellow box are lighter to darker blue – just like the lettering on the Splenda package.

26.     Third, the images on the blue Same box – a white coffee cup with blue trim and a spoon resting in the saucer on the front of the package, and a bowl of cereal on the back – are absent from the new yellow package. Instead the yellow Same package features images that are closely similar to those used by Splenda.

27.     Fourth, the front panel of the new Same package makes a "made with sugar" ("hecho con azucar") claim that is very similar to the Splenda claim, "made from sugar, tastes like sugar." Although new Same contains sugar, its sweeteners are aspartame and acesulfame potassium, not sugar. This is apparent from the fact that the product contains "0

calories." Indeed, it appears that Merisant's primary purpose for including sugar in its new Same product was to facilitate a "made with sugar" claim reminiscent of Splenda.

28.     Finally, the yellow Same brand has been priced to compete specifically with Splenda. Whereas Same has historically been positioned as a value brand and sold at a discount to Equal, Merisant has priced its new Same product essentially at parity with Equal, but at a discount to Splenda. Merisant is promoting new Same to retailers on the basis that it is more economical than its "competidor" -- Splenda.

### Likelihood of Confusion

29.     Merisant's copying of the well-known Splenda trade dress is likely to cause widespread confusion among consumers. Both products are no-calorie sweeteners sold in the same market, in the same stores, and displayed near or next to each other. As shown in the photograph attached as Exhibit D, in some stores in Puerto Rico, Merisant's yellow Same product is being placed on the shelf immediately next to Splenda.

30.     Merisant can offer no functional necessity for copying the Splenda trade dress. Its product already existed using a blue trade dress and had 27% of the sweetener market in Puerto Rico. Upon information and belief, the only purpose served by Merisant's copying of the Splenda package is to trade on the goodwill surrounding McNeil's brand.

31.     Merisant's mimicry of the color, layout, artwork, labeling and other design elements of the Splenda package is likely to cause confusion among consumers as to the source or sponsorship of Merisant's goods. This confusion will take the form of (i) actual confusion as to whether Merisant's product is Splenda; (ii) confusion as to the source, origin or sponsorship of Merisant's products; and/or (iii) subliminal confusion in that the close similarity of Merisant's

966315v1

packaging to McNeil's packaging is what draws consumers' attention to Merisant's products in the first place and, accordingly, leads to the ultimate sale of Merisant's product to consumers.

32.     In addition to causing confusion as to origin, the Same package is likely to communicate a false message to consumers that Same has the same ingredients as Splenda. Puerto Rico consumers are familiar with the blue Same product as a value-priced version of Equal.  If they notice the Same name on defendants' yellow package, they may mistakenly believe that yellow Same, likewise, is a version of Splenda.  In fact, there are significant differences between the aspartame blend used in Same and the sucralose in Splenda.  Among other things, aspartame and sucralose have different taste profiles, sucralose is far more heat-stable than aspartame, and sucralose is targeted to the general population whereas aspartame cannot be used by phenylketonurics (people with a rare, but serious inherited disease).

**Injury to Plaintiffs and the Public**

33.     Merisant's trade dress infringement and misleading positioning of Same as equivalent to Splenda are causing several distinct forms of injury to McNeil.

34.     First, McNeil will lose sales to the extent that consumers purchase Same under the mistaken belief that they are buying Splenda or are buying a product with the same ingredients as Splenda.  In addition, because Merisant engages in relatively little consumer advertising and promotion for its Same brand, its product unfairly gains recognition and sales at McNeil's expense by borrowing from the reputation, goodwill and recognition factor embodied and conveyed by McNeil's trade dress.

35.     A second form of injury to McNeil is loss of control over its brand's reputation.  Merisant's unauthorized copying of McNeil's trade dress causes McNeil's brand to be associated with a product over which it has no control.  This involuntary association could

11

injure McNeil if consumers are dissatisfied with Merisant's products for any reason (*e.g.*, ingredients, taste, appearance, packaging, etc.) and consequently develop a less favorable opinion of Splenda.

36.     In addition, there is a potential health risk for some consumers if the products are confused.  All aspartame products, including new Same, contain phenylalanine, which can cause adverse health consequences among individuals with phenylketonuria.  The United States Food and Drug Administration ("FDA") thus requires all products with phenylalanine to contain a special, prominent disclosure of the presence of phenylalanine. Splenda does not contain phenylalanine.  Phenylketonurics who mistakenly purchase the Same product believing it is Splenda, or is the same as Splenda, are unlikely to re-read the label of what they believe is a familiar product that does not contain phenylalanine.  These consumers will not receive the notice required by the FDA and may be put at risk due to the confusing nature of the Same package.

37.     McNeil promptly protested Merisant's infringement of McNeil's trade dress rights.  Merisant has declined to remedy McNeil's concerns.  As a result, McNeil is suffering and will continue to suffer irreparable injury for which it has no adequate remedy at law.

### First Claim For Relief

38.     McNeil repeats and realleges the allegations set forth in paragraphs 1 through 37 with the same force and effect as if set forth herein.

39.     Merisant's manufacture, distribution, marketing and sale of Same in the package shown in Exhibit C hereto constitutes false designation of origin in violation of § 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125.

966315v1

### Second Claim For Relief

40.     McNeil repeats and realleges the allegations set forth in paragraphs 1 through 37 with the same force and effect as if set forth herein.

41.     Merisant's manufacture, distribution, marketing and sale of Same in the package shown in Exhibit C hereto constitutes false and misleading promotion of goods in violation of § 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125.

### Third Claim For Relief

42.     McNeil repeats and realleges the allegations set forth in paragraphs 1 through 37 with the same force and effect as if set forth herein.

43.     Merisant's manufacture, distribution, marketing and sale of Same in the package shown in Exhibit C hereto constitutes common law trademark infringement and a violation of Articles 3 and 25 of the Puerto Rico Trademarks Act, 10 L.P.R.A. § 171a and w.

### Fourth Claim For Relief

44.     McNeil repeats and realleges the allegations set forth in paragraphs 1 through 37 with the same force and effect as if set forth herein.

45.     Merisant's manufacture, distribution, marketing and sale of Same in the package shown in Exhibit C hereto constitutes an unfair method of competition under Article 1802 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 5141.

WHEREFORE, McNeil demands judgment against defendants as follows:

(1)     For preliminary injunctive relief (a) enjoining Merisant, their employees, officers or agents, and all others acting in concert with or for them from continued sale or distribution of the Same package shown in Exhibit C, (b) requiring Merisant, their employees, officers or agents, and all others acting in concert with or for them to remove all such

13

packaging from store shelves, and (c) enjoining Merisant from using or distributing any Same advertising or sales materials depicting such packaging;

(2)     For preliminary and permanent injunctive relief enjoining Merisant, their employees, officers or agents, and all others acting in concert with or for them from manufacturing, distributing, importing, marketing or selling a no-calorie sweetener with packaging that is confusingly similar in appearance to any packaging utilized by plaintiffs for its Splenda product, including without limitation the Same package depicted in Exhibit C hereto;

(3)     For permanent injunctive relief directing Merisant to recall and destroy all packaging, and all sales material depicting packaging for the Same product shown in Exhibit C;

(4)     For a declaration pursuant to 15 U.S.C. § 1117 that Merisant's misconduct is deliberate and willful, making this an "exceptional case;"

(5)     For costs and disbursements of this action, together with an award of reasonable attorneys' fees; and

(6)     For such other, further and different relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED.

966315v1

In San Juan, Puerto Rico, this 6th day of February, 2004.

**PATTERSON, BELKNAP,**
**WEBB & TYLER LLP**
Steven A. Zalesin
Karla G. Sanchez
1133 Avenue of the Americas
New York, New York  10036-6710
Tel.:  (212) 336-2000

-and-

**McCONNELL VALDÉS**
P.O. Box 364225
San Juan, Puerto Rico  00936-4225
Telephone  (787) 250-5657
Fax (787) 759-2798
www.mcvpr.com
dmp@mcvpr.com

By: _____

Dora M. Peñagaricano
USDC-PR No. 203202

Of Counsel:

       Donna Malin, Esq.
       Johnson & Johnson

F:\ATTY\LIT\DMP\J&J\COMPLAINT-FINAL.DOC

966315v1

A

EXHIBIT A



B







C

EXHIBIT C



D

